ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
SEP 23 2005
U.S. COURT OF
FEDERAL CLAIMS

ESTATE OF RANKIN M. SMITH, Sr., SUNTRUST BANK, TAYLOR W. SMITH, and RANKIN M. SMITH, JR., Co-Executors,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 05-1028T

## COMPLAINT

Plaintiff, the Estate of Rankin M. Smith, Sr., Deceased, brings its Complaint against the United States of America for the recovery of estate taxes and related interest erroneously assessed and illegally collected by the Internal Revenue Service (the "Service"). As grounds for this Complaint, Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff is the Estate of Rankin Smith, Sr., Deceased, by SunTrust Bank, Taylor W. Smith, and Rankin M. Smith, Jr., the duly qualified and acting Co-Executors ("Plaintiff" or the "Estate"). Rankin M. Smith, Sr. ("Mr. Smith" or "Decedent") died on October 26, 1997, a resident of Atlanta, Georgia. The Estate's Taxpayer Identification Number is 58-6354904. The Co-Executors' address is c/o SunTrust Bank, attention: Allen Venet, Vice-President, 25 Park Place, Mail Code 213, Atlanta, Georgia 30303.

2. Defendant is the United States of America.

**JURISDICTION AND VENUE**

3. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1346(a)(1) for the recovery of internal revenue tax erroneously and illegally assessed and collected by the Service.

**FACTS COMMON TO ALL COUNTS**

4. In this action, the Estate challenges the following erroneous determinations by the Service:

(a) The Service erroneously determined the fair market value of shares held by Decedent at the time of his death in The Five Smiths, Inc. (the "Company") (the "Shares"), a closely-held Georgia corporation that owned the Atlanta Falcons National Football League ("NFL") franchise ("the Atlanta Falcons");

(b) The Service erroneously determined the fair market value of real property owned by Falcons Nest I, Ltd. ("Falcons Nest"), a Georgia limited partnership, and used by the Atlanta Falcons football team as its training facility, thereby incorrectly reducing the amount of Decedent's indebtedness as a general partner in Falcons Nest; and

(c) The Service erroneously disallowed deductions for administration expenses paid or incurred by the Estate.

As a result of the errors stated above, the Service erroneously increased Decedent's taxable estate, and improperly and unlawfully assessed and collected taxes and deficiency interest against the Estate in the amount of at least $17,000,000 plus interest thereon.

5. Section 2001(a) of the Internal Revenue Code, 26 U.S.C. § 2001(a) (the "Code"), provides for a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States at the time of his or her death. Under Section 2031(a) of the Code,

the amount of the tax is determined by reference to the fair market value of the property subject to the tax at the time of the decedent's death. In that regard, Section 20.2031-1(b) of the Treasury Regulations provides that "fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Finally, Section 2051 of the Code provides that a decedent's gross taxable estate is determined by deducting certain items, including estate administration expenses, from the gross estate.

6. On January 26, 1999, the Co-Executors timely filed the Estate's Form 706, United States Estate (and Generation Skipping Transfer) Tax Return (the "Original Return"), with the Internal Revenue Service Center, Atlanta, Georgia, on which it reported a taxable estate of $23,516,235, and a tax liability of $9,750,765. A copy of the Original Return is attached hereto as Exhibit A.

7. The Estate elected under Section 6166 of the Code to pay its estate tax obligation in ten equal annual installments. Between July 26, 1998 and July 26, 2001, the Estate made payments to the Service totaling $2,682,639. Pursuant to the deferred payment election under Section 6166, $1,979,042 of these payments were designated as interest. The remaining $703,597 was tax paid on July 26, 1998, the due date of the Original Return (without regard to extensions).

8. On July 26, 1999, the Estate filed an Amended Form 706 (the "Amended Return"), to reflect a special allocation of a portion of Decedent's unallocated generation-skipping tax exemption, which resulted in changes solely to Schedule R of the Original Return. A copy of the relevant portion of the Amended Return is attached hereto as Exhibit B.

9. On January 25, 2002, the Estate filed a claim for refund on Form 843 in the amount of $5,478,849.74, plus interest allowable by law (the "First Refund Claim"), claiming a $12,730,733.23 reduction in the taxable estate based on (a) a $5,369,999.95 reduction in the previously reported fair market value of the Estate's Shares in the Company, and (b) an additional $7,360,733 deduction for administration expenses paid or incurred or reasonably estimated to be paid or incurred prior to the termination of the Estate since filing the Original Return. A copy of the First Refund Claim is attached hereto as Exhibit C.

10. On January 25, 2002, the Service issued a Notice of Deficiency asserting a deficiency in tax of $13,644,400, plus interest from the due date of the Original Return. A copy of the Notice of Deficiency is attached hereto as Exhibit D. As grounds for the deficiency, the Service erroneously determined that, as of the date of Decedent's death, the fair market value of the Estate's Shares in the Company was $48,685,020, rather than $25,370,000 as reported on the Original Return, resulting in a $23,315,000 increase in the taxable estate. The Service also erroneously determined that, as of the date of death, Decedent's personal liability as a general partner of Falcons Nest was $2,578,312, rather than $4,071,312 as reported on the Original Return, thereby increasing the taxable estate by $1,493,000. These erroneous determinations and adjustments by the Service resulted in an asserted increase in the taxable estate from $23,516,235 reported on the Original Return to $48,324,235, and an asserted increase in tax from $9,750,765 to $23,395,165.

11. On March 1, 2002, the Estate paid the Service a total of $19,290,867, consisting of $16,159,613 in tax, and $3,131,254 in deficiency interest.

12. On September 13, 2002, the Estate filed a second claim for refund on Form 843 (the "Second Refund Claim"), a copy of which is attached hereto as Exhibit E. At that time, the

Service had not acted on the Estate's First Refund Claim, and the Estate incorporated that claim into its Second Refund Claim. In the Second Refund Claim, the Estate claimed that it was entitled to a refund in the amount of $15,722,549, consisting of $12,591,295 in overpaid tax and $3,131,254 of deficiency interest, together with interest as provided by law, plus such other amounts as may be legally refundable to the Estate.

13. By letter dated March 23, 2005, the Service issued a Notice of Claim Disallowance in which the First and Second Refund Claims were "jointly and separately" disallowed. A copy of the March 23, 2005 Notice of Claim Disallowance is attached hereto as Exhibit F.

14. Except for the matters set forth in this Complaint, and adjustments previously agreed to, the Original Return as amended is correct as filed.

**CLAIM FOR RELIEF**

**COUNT I**

**CLAIM FOR TAX REFUND RELATED TO THE VALUE OF PROPERTY INCLUDED IN DECEDENT'S TAXABLE ESTATE**

15. The Estate repeats and realleges each and every allegation contained in paragraphs 1 through 14 of the Complaint as if fully set forth herein.

16. In determining the amount of Decedent's taxable estate, the Service incorrectly valued (a) the Shares in the Company held by Decedent at the time of his death, and (b) the Training Facility Property owned by Falcons Nest, thereby erroneously increasing the taxable estate to $48,324,235 and the tax due thereon to $23,395,195. As a result of these erroneous determinations, the Estate is entitled to a refund in estate taxes and deficiency interest improperly and unlawfully assessed and collected, together with interest on the total overpayment, as set forth below.

**The Five Smiths, Inc.**

17. The Estate's principal asset was 12,424 shares of Class B Common Stock (the "Shares") in the Company, a closely-held family corporation that owned and operated the Atlanta Falcons.

18. The NFL awarded the Atlanta Falcons franchise to Mr. Smith on June 30, 1965, for $8.5 million. The Company was organized in 1965 under the laws of the State of Georgia, concurrent with the NFL's June 30 award of the franchise to Mr. Smith. The Company owned and operated the Falcon's franchise from that date until the sale in 2002 of the assets of the Company to a third party.

19. From the Company's inception in 1965 until Mr. Smith's death in 1997, Mr. Smith was responsible for the management and oversight of the Atlanta Falcons football team and the Company. On the date of his death, Mr. Smith was Chairman of the Board and Chief Executive Officer of the Company.

20. Immediately prior to Decedent's death, the Company had 13,050 shares of Class A Common Stock ("Class A Stock") and 25,000 shares of Class B Common Stock ("Class B Stock") issued and outstanding. Immediately prior to his death, Decedent owned 12,424 shares, or 95.2%, of the Class A Stock, with the remaining Class A stock held by family members or trusts for family members. Immediately prior to Decedent's death, the Class B Stock was owned 81.74% by Decedent's family members and 18.26% by unrelated third parties.

21. The Class A and Class B Stock were identical in all respects other than voting power. Accordingly, Decedent's Class A Stock represented approximately 32.65% of the equity of the Company, with the remaining 67.35% of the equity held by family members and third parties. The Class A Stock was entitled to 11.64 votes per share (86% of the voting power),

while the Class B Stock was entitled to one vote per share (14% of the voting power), and the stock of the Company generally voted as a single class. The Company's Articles of Incorporation provided, however, that each class of stock would vote as a separate class in the case of (a) a merger, consolidation, sale, or other disposition of substantially all of the Company's assets, or (b) the Company's dissolution, in which case each class of stock would vote as a separate class. Under Sections 14-2-1003 and 14-2-1004 of the Official Code of Georgia, any amendments to this provision of the Company's Articles of Incorporation that would change these class voting rights also had to be approved by a majority vote of the affected class. This class voting provision remained in effect at the time of Decedent's death.

22. Additional rights of and limitations on the Class A Stock and Class B Stock also in effect at the time of Decedent's death came about as a result of further amendments to the Articles of Incorporation and the execution of a shareholders agreement in connection with the sales in 1991 of Class B Stock to third parties.

23. In 1990, certain of Decedent's children desired to sell a portion of their Class B Stock, representing approximately 12% to 18% of the Company's outstanding shares. John Imlay, a prominent Atlanta businessman who a few years earlier had approached Mr. Smith about buying the Falcons, expressed an interest in acquiring a portion of the offered interest. Tom Watson Brown, another prominent Atlanta businessman, also expressed an interest in acquiring a portion of the offered interest. Following extended negotiations among the parties beginning in December 1990, the board of directors and shareholders of the Company on March 25, 1991 executed Unanimous Consents approving Stock Purchase Agreements (a) among the Company, Mr. Imlay, and Rankin Smith, Jr. for the sale to Mr. Imlay of 2,283 shares of Class B Stock representing a 6% interest in the Company, and (b) among the Company, Mr. Brown, and

each of Rankin M. Smith, Jr., Carroll S. Walraven, and Dorothy A. Smith Knox, Decedent's children, for the combined sale to Mr. Brown of 2,283 shares of Class B Stock representing a 6% interest in the Company.

24. The sales of Class B Stock also were subject to review and approval by the NFL. By agreements dated March 27, 1991 and May 31, 1991 among the NFL, Mr. Imlay, and the Company and among the NFL, Mr. Brown, and the Company, respectively, the NFL approved the sales of Class B Stock subject to the conditions set forth in those agreements.

25. As set forth in the Stock Purchase Agreements and the Unanimous Consents of the board of directors and the shareholders of the Company, Mr. Imlay's and Mr. Brown's respective obligations to close on their purchases of the Class B Stock were conditioned on the Company amending Article VII of its Articles of Incorporation to provide for the automatic conversion of the Company's outstanding Class A Stock into shares of Class B Stock on a one-for-one basis upon either (i) the death of Mr. Smith, or (ii) a sale or transfer for consideration of any shares of Class A Stock during Mr. Smith's lifetime. The Company's Articles were so amended on March 27, 1991, and this automatic stock conversion provision remained in effect at the time of Decedent's death.

26. Also as set forth in the Stock Purchase Agreements, the obligations of Messrs. Imlay and Brown to close on their purchases of the Class B Stock were conditioned on the execution of a shareholders agreement among the Company and all of its shareholders (the "1991 Shareholders Agreement"), providing for certain restrictions on transfers of shares of the Company's stock and granting certain rights, as described below.

27. Under the 1991 Shareholders Agreement, Decedent and the other family shareholders agreed not to vote their shares in favor of amending the Company's Articles of

Incorporation to amend the provision relating to the automatic conversion of Class A Stock into Class B Stock upon the sale of such shares or upon the death of Mr. Smith.

28. Under the 1991 Shareholders Agreement, Decedent could give or bequeath his Class A Stock to his spouse, descendants, or family shareholders. Pursuant to Article VII of the Articles of Incorporation, however, all outstanding shares of Class A Stock, regardless of by whom held, automatically converted into shares of Class B Stock on a one-for-one basis upon Mr. Smith's death. Thus, other than Decedent, only his spouse or other family shareholders could hold Class A Stock, and then only during Decedent's lifetime.

29. At the time of his death, Decedent could sell his Class A Stock to a bona fide third party purchaser, subject to a right of first refusal in Messrs. Imlay and Brown, and then the Company, to purchase the shares on the same terms and conditions as contained in the third party offer. In the event of a sale, whether to a third party purchaser or to Messrs. Imlay and Brown, under Article VII of the Company's Articles of Incorporation, the shares would automatically convert into shares of Class B Stock on a one-for-one basis and the shares would remain subject to the terms and conditions of the 1991 Shareholders Agreement. Further, any sale of more than 10% of Decedent's Shares in a non-public offering was subject to co-sale rights, at the same price and on the same terms, held by the other shareholders of the Company.

30. Under another provision of the 1991 Shareholders Agreement, all shares of the Company's stock other than Decedent's Class A Stock were subject to a right of first refusal in favor of the Company and the other shareholders. Under this provision, a selling shareholder was required to offer first to the Company and then to the other shareholders the right to purchase the shares on the same terms and conditions as contained in the third party offer.

Again, the transferred shares would remain subject to the terms and conditions of the 1991 Shareholders Agreement.

31. Under the 1991 Shareholders Agreement, all shareholders had preemptive rights to purchase any additional shares issued by the Company in such proportion as to preserve their relative equity positions.

32. The 1991 Shareholders Agreement stipulated that it was subject to the Constitution and Bylaws of the National Football League and the NFL Management Council, as well as certain decisions, rulings, resolutions and actions of, and other matters addressed by, the NFL.

33. The 1991 Shareholders Agreement guaranteed Messrs. Imlay and Brown one seat each on the Company's board of directors. The Agreement also gave Messrs. Imlay and Brown certain ownership privileges, including (a) the right to travel with the team to and from regularly scheduled "away" football games; (b) the right to use and access the owner's suite at all football games; (c) the right to visit the training facilities at any reasonable time; and (d) five box suite tickets to each regularly scheduled home game.

34. The 1991 Shareholders Agreement provided that it could not be amended or modified without the consent of the holders of at least 95% of the outstanding common stock of the Company.

35. Upon Decedent's death on October 26, 1997, pursuant to Article VII of the Company's Articles of Incorporation, all of the 13,050 issued and outstanding shares of Class A Stock automatically converted into shares of Class B Stock on a one-for-one basis. Thus, upon Decedent's death, the Estate owned 12,424 shares of Class B Stock, subject to the restrictions in

the 1991 Shareholders Agreement. Ownership of the Company's stock upon Decedent's death was as follows:

| Shareholder | Class B Common Stock Shares | Class B Common Stock Percent |
|---|---|---|
| Estate of Rankin M. Smith, Sr. | 12,424 | 32.652% |
| Taylor W. Smith, his children and trusts for their benefit | 5,141 | 13.511% |
| Karen Smith Owen | 5,019 | 13.191% |
| Dorothy A. Smith Knox, her children and trusts for their benefit | 4,460 | 11.721% |
| Carroll S. Walraven, her children and trusts for their benefit | 4,380 | 11.511% |
| Rankin M. Smith, Jr., his children and trusts for their benefit | 2,060 | 5.414% |
| John Imlay | 2,283 | 6.000% |
| Tom Watson Brown | 2,283 | 6.000% |
| TOTAL | 38,050 | 100% |

36. Following Decedent's death, the Estate retained an independent appraiser, Houlihan Lokey Howard & Zukin ("Houlihan Lokey"), to determine the fair market value of Decedent's Shares for purposes of preparing the federal estate tax return. Houlihan Lokey concluded that the fair market value of Decedent's Shares as of October 26, 1997 was $25,370,000, and this value was reported on the Estate's Original Return.

37. The Service retained Willamette Management Associates ("Willamette") to appraise Decedent's Shares. Willamette concluded that the fair market value of Decedent's Shares was $48,685,020. The tax deficiency asserted by the Service is based in large part on Willamette's conclusion. In valuing the Shares, however, Willamette applied erroneous

comparisons and formulae, and committed numerous other errors, including, but not limited to, incorrectly valuing the Shares as if they were Class A Stock when the Estate held only Class B Stock and failing to apply appropriate discounts for the lack of control and lack of marketability inherent in the Shares.

38. The Estate subsequently retained a second independent expert, Standard & Poor's Corporate Value Consulting ("Standard & Poor's"), to review the appraisals of the Shares performed by both Houlihan Lokey and Willamette. Based on its review of and the information in those appraisals, Standard & Poor's preliminarily concluded that the fair market value of the Shares as of October 26, 1997 was approximately $20 million. The Estate's Second Claim for Refund seeking a further reduction in the value of the taxable estate of approximately $5.5 million was based on this preliminary conclusion.

39. Following disallowance of its Refund Claims, the Estate retained Standard & Poor's to perform its own independent valuation and to provide its expert opinion with respect to the fair market value of the Shares as of October 26, 1997. Standard & Poor's has informed the Estate that in its expert opinion the fair market value of the Shares as of October 26, 1997 was $18,100,000.

40. Accordingly, the amount of Decedent's taxable estate is properly determined based on the fair market value of the Shares of $18,100,000.

**Falcons Nest I, Ltd.**

41. At the time of his death, Decedent owned a 1% general partnership interest and a 70% limited partnership interest in Falcons Nest, a Georgia limited partnership formed on June 30, 1978. The Nest, Inc. ("TNI"), a Georgia corporation, was the other general partner, also owning a 1% general partnership interest. Decedent owned all of the outstanding shares of TNI,

and TNI's sole asset at the time of Decedent's death was its 1% general partnership interest in Falcons Nest. The remaining limited partnership interests were held by eight other limited partners, none of whom owned more than a 4% interest and four of whom were unrelated third-parties.

42. The principal assets of Falcons Nest as of Decedent's death were properties comprising the Atlanta Falcons training facility, including land, a motel and health club facilities, and an office building (the "Training Facility Property").

43. As of October 26, 1997, Falcons Nest had total liabilities of $11,543,811. These liabilities consisted of advances from the Company totaling $6,105,000, a demand note owed to SunTrust Bank for $2,820,000 that Decedent personally had guaranteed, and advances from limited partners totaling $2,618,811. These liabilities exceeded the value of Falcons Nest's assets.

44. Because the liabilities of Falcons Nest exceeded the value of its assets at the time of Decedent's death, Decedent's direct and indirect interests in Falcons Nest had no value. Rather, by virtue of Decedent's status as the only general partner with any assets, the liabilities of Falcons Nest were deductible as claims against the Estate to the extent they exceeded the value of Falcons Nest's assets. The extent to which Falcons Nest's liabilities exceeded its assets was dependent on the fair market value of its assets.

45. In a Report dated July 23, 1998, Childers Associates ("Childers"), an independent appraiser experienced in valuing Atlanta metropolitan area commercial real estate, concluded that the fair market value of the Training Facility Property as of October 26, 1997 was $6,710,000. Falcons Nest's remaining assets, consisting of accounts receivable, inventory, equipment, and cash, were valued at $762,499, resulting in a total asset value for Falcons Nest of

$7,472,499. Falcons Nest's liabilities totaled $11,542,008, so that, as of October 26, 1997, its liabilities exceeded its assets by $4,071,312 ($11,543,811 minus $7,472,499). This personal liability of the Decedent as a general partner of Falcons Nest was reported on the Original Return as a debt of Decedent, reducing the taxable value of the Estate by that amount.

46. The Service asserted that the fair market value of the Training Facility Property as of October 26, 1997 was $8,203,000. As a consequence, the Service asserted that the total asset value of Falcons Nest was $8,965,499 ($8,203,000 plus $762,499), and that, as of October 26, 1997, Falcons Nest's liabilities exceeded its assets by only $2,578,312 ($11,543,811 minus $8,965,499).

47. The Service's value of the Training Facility Property is not based on an independent expert appraisal, but simply on incorrect adjustments made by the Service to Childers' valuation, as set forth in an Engineering and Valuation Report, dated March 30, 2001. In making its adjustments, the Service committed numerous errors, including, but not limited to, failing to view or consider the poor interior quality of the facilities, valuation of the facilities based on use as office space without considering the need for extensive renovations to correct the lack of windows and poor quality of the facilities, consideration of sales of property not comparable to the Training Facility Property, failure to consider negative physical features of the land, and failure to consider relevant competitive market conditions.

48. As a result of its erroneous determination of the fair market value of the Training Facility Property and the resulting determination that Decedent's personal liability as a general partner of Falcons Nest was $2,578,312, rather than $4,071,312 as reported by the Estate, the Service incorrectly increased Decedent's taxable estate by $1,493,000 ($4,071,312 minus $2,578,312).

## COUNT II

## DEDUCTIONS FOR ADMINISTRATION EXPENSES

49. The Estate repeats and realleges each and every allegation contained in paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50. In computing the value of a taxable estate, Section 2053 of the Code permits an estate to deduct its administration expenses.

51. On the Original Return, the Estate claimed a deduction for funeral expenses and administration expenses totaling $2,976,820.89. These expenses included administration expenses paid or incurred at the time the Original Return was filed in January 1999 and preliminary estimates at that time of additional administration expenses to be paid or incurred in the future.

52. The Estate's Refund Claims claimed a deduction for administrative expenses of $7,360,733 in addition to the previously claimed $2,976,820.89, and also included a request that the amount of its final tax obligation be determined by allowing as deductions all administration expenses actually paid or incurred through the final winding up of the Estate. The additional amount in the Estate's Refund Claims consisted of $6,347,452 of administration expenses the Estate had paid or incurred since it filed the Original Return and $1,013,281 of administration expenses that the Estate at that time estimated would be paid or incurred through the time the Estate completed its administration and distributed all remaining assets to the Estate's beneficiaries. These administration expenses included additional interest expense (including interest on tax deferred under Section 6166 of the Code), additional attorneys' fees (including those related to a will contest), additional appraisal fees, additional accounting fees, and other expenses related to the administration of the Estate and preservation of its property.

53. The Service erroneously failed to allow the Estate's claimed deduction for administration expenses paid or incurred or reasonably estimated to be paid or incurred prior to the winding up of the Estate.

54. As of the date hereof, the Estate has paid or incurred administration expenses of at least $10,823,675, an amount in excess of the combined amounts previously claimed. The Estate will necessarily continue to incur additional administration expenses in connection with pursuing its Claims for Refund and this litigation. The Estate is entitled to deductions under Section 2053 with respect thereto and hereby claims allowance thereof.

WHEREFORE, the Service incorrectly valued the taxable estate, and thus incorrectly determined the amount of tax and deficiency interest owed by the Estate. The Service also incorrectly disallowed deductions for the total administration expenses paid or expected to be incurred by the Estate. The Estate is entitled to a refund of all overpayment of tax and deficiency interest (i) based on the correct valuation of its assets, and (ii) taking into account deductions for the total administration expenses paid or incurred by the Estate, together with interest on the overpayments, attorneys' fees and costs of suit, and such other amounts as are legally refundable.

**PRAYER FOR RELIEF**

WHEREFORE, the Estate of Rankin M. Smith, Sr. prays that this Court enter its Order:

1. Granting the Estate judgment against the United States of America in the amount of at least $17,000,000, constituting the Estate's overpayment of federal taxes and deficiency interest, or such greater amount as may be legally refundable, together with interest thereon as provided by law, and the costs, expenses and disbursements of this action;

2. Granting the Estate judgment against the United States of America for the as yet undetermined amount of overpayment of estate taxes and deficiency interest that will be

attributable to the additional estate tax deductions allowed for administration expenses paid or incurred by the Estate through the conclusion of this action; and

3. Directing payment of the Estate's costs, attorneys' fees and expenses, and such other and further relief to which the Estate may be entitled.

Respectfully submitted this 23rd day of September, 2005.

Judith A. Mather

Judith A. Mather (Attorney of Record)
Tel: (202) 776-2714
Fax: (202) 776-4714
Richard L. Braunstein
Bernard J. Long, Jr.
DOW, LOHNES & ALBERTSON, PLLC
Suite 800
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 776-2000
Fax: (202) 776-2222

COUNSEL FOR THE ESTATE

Form 706 (Rev. April 1997) Department of the Treasury Internal Revenue Service

# United States Estate (and Generation-Skipping Transfer) Tax Return

Estate of a citizen or resident of the United States (see separate instructions). To be filed for decedents dying after October 8, 1990. For Paperwork Reduction Act Notice, see page 1 of the separate instructions.

OMB No. 1545-0015

**Part 1. - Decedent and Executor**

| | | |
|---|---|---|
| 1a Decedent's first name and middle initial (and maiden name, if any): RANKIN M. | 1b Decedent's last name: SMITH, SR. | 2 Decedent's social security no.: 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 |
| 3a Legal residence (domicile) at time of death (county, state, and ZIP code, or foreign country): ATLANTA, FULTON COUNTY, GA. 30327 | 3b Year domicile established: 1925 / 4 Date of birth: 10/29/25 | 5 Date of death: 10-26-97 |
| 6a Name of executor (see page 2 of the instructions): SUNTRUST BANK, ATLANTA (SEE NEXT PG) | 6b Executor's address (number and street including apartment or suite no. or rural route; city, town, or post office; state; and ZIP code): P.O. BOX 4655, DEPT. 251 ATLANTA, GA. 30302 | |
| 6c Executor's social security number (see page 2 of the instructions): 58-0466330 | | |
| 7a Name and location of court where will was probated or estate administered: FULTON COUNTY PROBATE COURT, ATLANTA, GEORGIA | | 7b Case number: BK 162/ PG104 |

8 If decedent died testate, check here ▶ X and attach a certified copy of the will. 9 If Form 4768 is attached, check here ▶ X

10 If Schedule R-1 is attached, check here ▶

**Part 2. - Tax Computation**

| | | | |
|---|---|---|---|
| 1 Total gross estate (from Part 5, Recapitulation, page 3, item 10) | | 1 | 36,151,175.12 |
| 2 Total allowable deductions (from Part 5, Recapitulation, page 3, item 20) | | 2 | 13,462,799.09 |
| 3 Taxable estate (subtract line 2 from line 1) | | 3 | 22,688,376.03 |
| 4 Adjusted taxable gifts (total taxable gifts (within the meaning of section 2503) made by the decedent after December 31, 1976, other than gifts that are includible in decedent's gross estate (section 2001(b)) | | 4 | 827,859.00 |
| 5 Add lines 3 and 4 | | 5 | 23,516,235.03 |
| 6 Tentative tax on the amount on line 5 from Table A on page 10 of the instructions | | 6 | 12,574,729.27 |
| 7a If line 5 exceeds $10,000,000, enter the lesser of line 5 or $21,040,000. If line 5 is $10,000,000 or less, skip lines 7a and 7b and enter -0- on line 7c. | 7a 21,040,000.00 | | |
| b Subtract $10,000,000 from line 7a | 7b 11,040,000.00 | | |
| c Enter 5% (.05) of line 7b | | 7c | 552,000.00 |
| 8 Total tentative tax (add lines 6 and 7c) | | 8 | 13,126,729.27 |
| 9 Total gift tax payable with respect to gifts made by the decedent after December 31, 1976. Include gift taxes by the decedent's spouse for such spouse's share of split gifts (section 2513) only if the decedent was the donor of these gifts and they are includible in the decedent's gross estate (see instructions) | | 9 | 86,223.69 |
| 10 Gross estate tax (subtract line 9 from line 8) | | 10 | 13,040,505.58 |
| 11 Maximum unified credit against estate tax | 11 192,800.00 | | |
| 12 Adjustment to unified credit. (This adjustment may not exceed $6,000. See page 7 of the instructions.) | 12 0.00 | | |
| 13 Allowable unified credit (subtract line 12 from line 11) | | 13 | 192,800 |
| 14 Subtract line 13 from line 10 (but do not enter less than zero) | | 14 | 12,847,705.58 |
| 15 Credit for state death taxes. Do not enter more than line 14. Compute the credit by using the amount on line 3 less $60,000. See Table B in the instructions and attach credit evidence (see instructions) | | 15 | 3,096,940.16 |
| 16 Subtract line 15 from line 14 | | 16 | 9,750,765.42 |
| 17 Credit for Federal gift taxes on pre-1977 gifts (section 2012) (attach computation) | 17 0.00 | | |
| 18 Credit for foreign death taxes (from Schedule(s) P). (Attach Form(s) 706-CE.) | 18 0.00 | | |
| 19 Credit for tax on prior transfers (from Schedule Q) | 19 0.00 | | |
| 20 Total (add lines 17, 18, and 19) | | 20 | 0.00 |
| 21 Net estate tax (subtract line 20 from line 16) | | 21 | 9,750,765.42 |
| 22 Generation-skipping transfer taxes (from Schedule R, Part 2, line 10) | | 22 | 0.00 |
| 23 Section 4980A increased estate tax (from Schedule S, Part I, line 17) (see page 20 of the instructions) | | 23 | 0.00 |
| 24 Total transfer taxes (add lines 21, 22, and 23) | | 24 | 9,750,765.42 |
| 25 Prior payments. Explain in an attached statement | 25 703,597.00 | | |
| 26 United States Treasury bonds redeemed in payment of estate tax | 26 0.00 | | |
| 27 Total (add lines 25 and 26) | | 27 | 703,597.00 |
| 28 Balance due (or overpayment) (subtract line 27 from line 24) | | 28 | 9,047,168.42 |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer other than the executor is based on all information of which preparer has any knowledge.

SUNTRUST BANK, ATLANTA, CO-EX U/W
BY: [signature] & BY: [signature]
Signature(s) of executor(s) THOMAS A. SHANKS, JR. FIRST VICE-PRESIDENT — TAYLOR W. SMITH, CO-EXECUTOR U/W — Date 1/26/99
& BY: [signature]
RANKIN M. SMITH, JR. CO-EXECUTOR U/W

[signature] Signature of preparer other than executor David M. Langford — BOX 4655, ATLANTA, GA. 30302 Address (and ZIP code) — Date 1-26-99

JSA 7W9201 1 000

Estate of: RANKIN M. SMITH, SR. 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

EXECUTORS U/W RANKIN M. SMITH

SUNTRUST BANK, ATLANTA
TIN 58-0466330
BOX 4655, DEPT. 251
ATLANTA, GA 30302

TAYLOR W. SMITH
C/O SUNTRUST BANK, ATLANTA
BOX 4655, DEPT. 251
ATLANTA, GA 30302
S.S.N.: 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

RANKIN M. SMITH, JR.
C/O SUNTRUST BANK, ATLANTA
BOX 4655, DEPT. 251
ATLANTA, GA 30302
S.S.N.: 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

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## Part 3. -- Elections by the Executor

| Please check the "Yes" or "No" box for each question. (See instructions beginning on page 3.) | Yes | No |
|---|---|---|
| 1 Do you elect alternate valuation? | | X |
| 2 Do you elect special use valuation? If "Yes," you must complete and attach Schedule A-1. | | X |
| 3 Do you elect to pay the taxes in installments as described in section 6166? If "Yes," you must attach the additional information described on page 5 of the instructions. | X | |
| 4 Do you elect to postpone the part of the taxes attributable to a reversionary or remainder interest as described in section 6163? | | X |

## Part 4. -- General Information (Note: Please attach the necessary supplemental documents. You must attach the death certificate.)

(See instructions beginning on page 6.)

Authorization to receive confidential tax information under Regulations section 601.504(b)(2)(i), to act as the estate's representative before the Internal Revenue Service, and to make written or oral presentations on behalf of the estate if return prepared by an attorney, accountant, or enrolled agent for the executor:

| Name of representative (print or type) | State | Address (number, street, and room or suite no., city, state, and ZIP code) |
|---|---|---|
| | | |

I declare that I am ☐ attorney/ ☐ cert. public accountant/ ☐ enrolled agent (you must check the applicable box) for the executor & prepared this return for the executor. I am not under suspension or disbarment from practice before the IRS & am qualified to practice in the state shown above.

| Signature | CAF number | Date | Telephone number |
|---|---|---|---|
| | | | |

1 Death certificate number and issuing authority (attach a copy of the death certificate to this return).
NO. 008860--GA. DEPT. OF HUMAN RESOURCES/VITAL RECORDS SERVICE

2 Decedent's busn. or occupation. If retired, check here ▶ ☐ and state decedent's former business or occupation.
CORPORATE EXECUTIVE

3 Marital status of the decedent at time of death:
- ☒ Married
- ☐ Widow or widower -- Name, SSN, and date of death of deceased spouse ▶
- ☐ Single
- ☐ Legally separated
- ☐ Divorced -- Date divorce decree became final ▶

| 4a Surviving spouse's name | 4b Social security number | 4c Amount received (see page 6 of the instructions) |
|---|---|---|
| CHARLOTTE T. SMITH | 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 | 3,584,124.80 |

5 Individuals (other than surviving spouse), trusts, or other estates who receive benefits from the estate (do not include charitable beneficiaries shown in Schedule O) (see inst.). For Privacy Act Notice (applicable to individual beneficiaries only), see the Instructions for Form 1040.

| Name of individual, trust, or estate receiving $5,000 or more | Identifying number | Relationship to decedent | Amount (see inst.) |
|---|---|---|---|
| TAYLOR W. SMITH | 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 | SON | 3,048,826.76 |
| RANKIN M. SMITH, JR. | 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 | SON | 3,377,826.76 |
| CARROLL WALRAVEN | 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 | DAUGHTER | 3,047,721.76 |
| DOROTHY ANNE KNOX | 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 | DAUGHTER | 3,047,721.76 |
| KAREN S. OWEN | 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 | DAUGHTER | 3,279,521.76 |
| RANKIN M. SMITH, III | 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 | GRANDSON | 231,184.80 |
| REBECCA W. SMITH | 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 | GRANDDAUGHTER | 231,184.80 |
| KATHERINE C. SMITH | 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 | GRANDDAUGHTER | 57,176.43 |
| SARAH B. SMITH | 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 | GRANDDAUGHTER | 57,176.43 |
| VIRGIL R. WALRAVEN | 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 | GRANDSON | 57,176.43 |
| All unascertainable beneficiaries and those who receive less than $5,000 ▶ | | | 0.00 |
| Total | | | 16,435,517.69 |

(continued on next page)



CAA 7 70S2 NTF 9796A

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

## Part 4. -- General Information (continued)

| Please check the "Yes" or "No" box for each question. | Yes | No |
|---|---|---|
| 6 Does the gross estate contain any section 2044 property (qualified terminable interest property (QTIP) from a prior gift or estate) (see page 6 of the instructions)? | | X |
| 7a Have Federal gift tax returns ever been filed? | X | |
| If "Yes," please attach copies of the returns, if available, and furnish the following information: | | |
| 7b Period(s) covered: See Schedule attached — 7c Internal Revenue office(s) where filed | | |
| **If you answer "Yes" to any of questions 8-16, you must attach additional information as described in the instructions.** | | |
| 8a Was there any insurance on the decedent's life that is not included on the return as part of the gross estate? | X | |
| b Did the decedent own any insurance on the life of another that is not included in the gross estate? | | X |
| 9 Did the decedent at the time of death own any property as a joint tenant with right of survivorship in which (a) one or more of the other joint tenants was someone other than the decedent's spouse, and (b) less than the full value of the property is included on the return as part of the gross estate? If "Yes," you must complete and attach Schedule E | | X |
| 10 Did the decedent, at the time of death, own any interest in a partnership or unincorporated business or any stock in an inactive or closely held corporation? | X | |
| 11 Did the decedent make any transfer described in section 2035, 2036, 2037, or 2038 (see the instructions for Schedule G beginning on page 11 of the separate instructions)? If "Yes," you must complete and attach Schedule G | X | |
| 12 Were there in existence at the time of the decedent's death: | | |
| a Any trusts created by the decedent during his or her lifetime? | X | |
| b Any trusts not created by the decedent under which the decedent possessed any power, beneficial interest, or trusteeship? | | X |
| 13 Did the decedent ever possess, exercise, or release any general power of appointment? If "Yes," you must complete and attach Schedule H | | X |
| 14 Was marital deduction computed under transitional rule of Public Law 97-34, sec. 403 (e)(3) (Economic Recovery Tax Act of 1981)? If "Yes," attach a separate computation of the marital deduction, enter the amount on item 18 of the Recapitulation, and note on item 18 "computation attached." | | X |
| 15 Was the decedent, immediately before death, receiving an annuity described in the "General" paragraph of the instructions for Schedule I? If "Yes," you must complete and attach Schedule I | X | |
| 16 Did the decedent have a total "excess retirement accumulation" (as defined in section 4980A(d)) in qualified employer plans and individual retirement plans? If "Yes," you must complete and attach Schedule S | | X |

## Part 5. -- Recapitulation

| Item no. | Gross estate | Alternate value | Value at date of death |
|---|---|---|---|
| 1 | Schedule A -- Real Estate | | 1,086,410.00 |
| 2 | Schedule B -- Stocks and Bonds | | 27,322,580.55 |
| 3 | Schedule C -- Mortgages, Notes, and Cash | | 2,663.19 |
| 4 | Schedule D -- Insurance on the Decedent's Life (attach Form(s) 712) | | 255,000.00 |
| 5 | Schedule E -- Jointly Owned Property (attach Form(s) 712 for life insurance) | | 27,213.36 |
| 6 | Schedule F -- Other Miscellaneous Property (attach Form(s) 712 for life insurance) | | 4,885,753.58 |
| 7 | Schedule G -- Transfers During Decedent's Life (attach Form(s) 712 for life insurance) | | 2,159,173.13 |
| 8 | Schedule H -- Powers of Appointment | | 0.00 |
| 9 | Schedule I -- Annuities | | 412,381.31 |
| 10 | Total gross estate (add items 1 through 9). Enter here and on line 1 of the Tax Computation | | 36,151,175.12 |

| Item no. | Deductions | Amount |
|---|---|---|
| 11 | Schedule J -- Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims | 2,976,820.89 |
| 12 | Schedule K -- Debts of the Decedent | 5,226,010.20 |
| 13 | Schedule K -- Mortgages and Liens | 1,675,843.20 |
| 14 | Total of items 11 through 13 | 9,878,674.29 |
| 15 | Allowable amount of deductions from item 14 (see the instructions for item 15 of the Recapitulation) | 9,878,674.29 |
| 16 | Schedule L -- Net Losses During Administration | 0.00 |
| 17 | Schedule L -- Expenses Incurred in Administering Property Not Subject to Claims | 0.00 |
| 18 | Schedule M -- Bequests, etc., to Surviving Spouse | 3,584,124.80 |
| 19 | Schedule O -- Charitable, Public, and Similar Gifts and Bequests | 0.00 |
| 20 | Total allowable deductions (add items 15 through 19). Enter here and on line 2 of the Tax Computation | 13,462,799.09 |



CAA 7 7063 NTF 9593
Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE A -- Real Estate

- For jointly owned property that must be disclosed on Schedule E, see the instructions for Schedule E.
- Real estate that is part of a sole proprietorship should be shown on Schedule F.
- Real estate that is included in the gross estate under section 2035, 2036, 2037, or 2038 should be shown on Schedule G.
- Real estate that is included in the gross estate under section 2041 should be shown on Schedule H.
- If you elect section 2032A valuation, you must complete Schedule A and Schedule A-1.

| Item no. | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | PLANTATION HOME INCLUDING 10.283 ACRES, LOCATED IN THOMAS COUNTY, GEORGIA (SEE ATTACHED APPRAISAL REPORT BY ALMAND AND COMPANY) | | | 400,000.00 |
| 2 | CONDOMINIUM UNIT 297, LOCATED AT 1000 BEACH ROAD, VERO BEACH, FLORIDA (SEE ATTACHED APPRAISAL) | | | 610,000.00 |
| 3 | JOHN'S ISLAND, FLORIDA, CLUB EQUITY MEMBERSHIP (SEE ATTACHED APPRAISAL) | | | 76,410.00 |
| | Total from continuation schedules or additional sheets attached to this schedule . . . . . . . | | | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 1.) . . . . . . . . . . . . . . . . . . | | | 1,086,410.00 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 5.)



CAA 7 70SA1 NTF 9797A

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE B -- Stocks and Bonds

(For jointly owned property that must be disclosed on Schedule E, see the instructions for Schedule E.)

| Item no. | Description including face amount of bonds or number of shares and par value where needed for identification. Give 9-digit CUSIP number. | Unit value | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|---|
| | See Schedule attached | | | | |
| | Total from continuation schedules (or additional sheets) attached to this schedule .... | | | | 27,322,580.55 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 2.) .................. | | | | 27,322,580.55 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(The instructions to Schedule B are in the separate instructions.)



CAA 7 70SB1 NTF 9802

Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE B -- Stocks and Bonds

| Item No. | Description | Unit Value | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|---|
| | COMMON STOCKS | | | | |
| 1 | 36,784 SHS AARON RENTS, INC., COM | 16.906250 | | | 621,879.50 |
| 2 | 472 SHS AMERICAN BUSINESS PRODUCTS, INC., COM | 22.656250 | | | 10,693.75 |
| 3 | 500 SHS DIAL CORP. COM | 16.890625 | | | 8,445.31 |
| 4 | 252 SHS EDISON INTERNATIONAL COM | 26.2576984 | | | 6,616.94 |
| 5 | ACCRUED DIVIDEND ON ITEM 4 | | | | 63.00 |
| 6 | 4,500 SHS EURO DISNEYLAND SCA, SEDOL #4320878 | 1.32000000 | | | 5,940.00 |
| 7 | 1,000 EURO DISNEYLAND SCA WARRANTS EXPIRING 07-11-2004, SEDOL #4181611 | 0.12500000 | | | 125.00 |
| 8 | 250 SHS FINOVA GROUP COM | 43.859375 | | | 10,964.84 |
| 9 | 18,331 SHS SUNTRUST BANKS, INC., COM | 66.8906250 | | | 1,226,172.05 |
| 10 | 500 SHS VIAD CORP COM | 19.0937500 | | | 9,546.88 |
| | CLOSELY-HELD SECURITIES | | | | |
| 11 | 12,424 SHARES THE FIVE SMITHS, INC., CLASS A COMMON STOCK (SEE ATTACHED VALUATION REPORT) | 2042.01545 | | | 25,369,999.95 |
| 12 | 1,217.50 SHS MOUNT VERNON SURETY CO. COM--CONSIDERED WORTHLESS (SEE ATTACHED VALUATION MEMORANDUM) | | | | 0.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 27,270,447.22

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE B -- Stocks and Bonds

| Item No. | Description | Unit Value | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|---|
| 13 | 500 SHS THE NEST, INC., COM--CONSIDERED WORTHLESS: THE SOLE ASSET OF THE CORPORATION IS A ONE PERCENT GENERAL PARTNERSHIP INTEREST IN FALCONS NEST I, LTD., WHICH PARTNERSHIP IS INSOLVENT (SEE SCHEDULE F, ITEM 5 REGARDING THE ESTATE'S PARTNERSHIP INTERESTS IN FALCONS NEST I, LTD.) | | | | 0.00 |
| 14 | 500 SHS THE NEST, II, INC., COM (THE SOLE ASSET OF THE CORPORATION IS A ONE PERCENT GENERAL PARTNERSHIP INTEREST IN FALCONS NEST, II, LTD) (SEE ATTACHED VALUATION REPORT FOR THE PARTNERSHIP INTERESTS IN FALCONS NEST, II, LTD., RETURNED AT SCHEDULE F, ITEM 6) | 104.266667 | | | 52,133.33 |

TOTAL. (Carry forward to main schedule) . . . . . . 52,133.33

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE C -- Mortgages, Notes, and Cash

(For jointly owned property that must be disclosed on Schedule E, see the instructions for Schedule E.)

| Item no. | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | NATIONSBANK CHECKING ACCOUNT NO. 0144316081 | | | 701.41 |
| 2 | LOAN RECEIVABLE FROM THE FIVE SMITHS, INC. | | | 1,961.78 |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 0.00 |
| | TOTAL. (Also enter on Part 5, Recapitulation, page 3, at item 3.) | | | 2,663.19 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 14.)



CAA 7 70SC1 NTF 9803

Copyright Forms Software Only, 1997 Nelco, Inc

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE D -- Insurance on the Decedent's Life

You must list all policies on the life of the decedent and attach a Form 712 for each policy.

| Item no. | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | THE PROCEEDS OF THE FOLLOWING POLICIES OF INSURANCE ON THE LIFE OF THE DECEDENT WERE PAYABLE TO AND RECEIVED BY THE ESTATE: | | | |
| 1 | UNION CENTRAL LIFE INSURANCE CO. GROUP TERM POLICY (FORM 712 NOT YET RECEIVED) | | | 205,000.00 |
| 2 | CONTINENTAL ASSURANCE CO. GROUP TERM POLICY NO. L40207A2 (FORM 712 NOT YET RECEIVED) | | | 50,000.00 |
| | THE FOLLOWING POLICY OF INSURANCE ON THE LIFE OF THE DECEDENT IS A SECOND-TO-DIE POLICY AND IS CONSIDERED TO HAVE NO VALUE: | | | |
| 3 | NEW ENGLAND LIFE SECOND-TO-DIE POLICY NO. 8809521 (FORM 712 NOT YET RECEIVED): ESTIMATED PROCEEDS: $128,018.00 | | | 0.00 |
| | THE FOLLOWING POLICIES OF INSURANCE ON THE LIFE OF THE DECEDENT WERE OWNED BY AND PAYABLE TO THE FIVE SMITHS, INC.: | | | |
| 4 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5206442 (SEE ATTACHED FORM 712): NET AMOUNT PAYABLE: $506,676.64 | | | 0.00 |
| 5 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5206443 (SEE ATTACHED FORM 712): NET AMOUNT PAYABLE: $506,675.52 | | | 0.00 |
| 6 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5206444 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $506,675.51 | | | 0.00 |
| 7 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5206445 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $506,675.54 | | | 0.00 |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 4.) | | | 255,000.00 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 16.)



CAA 7 70SD1 NTF 0804

Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE D -- Insurance on the Decedent's Life

| Item No. | Description | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|
| 8 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 7149712 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $2,719,134.16 | | | 0.00 |
| 9 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 7149713 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $2,718,532.49 | | | 0.00 |
| 10 | LIFE OF GEORGIA POLICY NO. 2622304 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $1,236,706.06 | | | 0.00 |
| 11 | LIFE OF GEORGIA POLICY NO. 2703483 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $2,610,812.95 | | | 0.00 |
| 12 | PRUDENTIAL INSURANCE CO. POLICY NO. W0-000-013 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $1,098,044.08 | | | 0.00 |
| 13 | PRUDENTIAL INSURANCE CO. POLICY NO. 79-676-819 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $5,934,048.23 | | | 0.00 |
| | THE FOLLOWING POLICIES OF INSURANCE ON THE LIFE OF THE DECEDENT WERE JOINTLY OWNED IN A "SPLIT-DOLLAR" ARRANGEMENT BETWEEN THE FIVE SMITHS, INC., AND EACH OF THE DECEDENT'S FIVE CHILDREN:<br>---------------------------------------- | | | |
| 14 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5625943 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $1,030,749.82 | | | 0.00 |
| 15 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5625944 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $1,030,749.28 | | | 0.00 |
| 16 | NATIONAL FIDELITY LIFE INSURANCE CO. POLICY NO. 4403817880 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $864,767.28 | | | 0.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 0.00

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE D -- Insurance on the Decedent's Life

| Item No. | Description | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|
| 17 | NATIONAL FIDELITY LIFE INSURANCE CO. POLICY NO. 4403750040 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $864,767.28 | | | 0.00 |
| 18 | NATIONAL FIDELITY LIFE INSURANCE CO. POLICY NO. 4403816220 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $864,767.28 | | | 0.00 |
| | THE FOLLOWING POLICIES OF INSURANCE ON THE LIFE OF THE DECEDENT WERE OWNED BY AND PAYABLE TO THAT CERTAIN TRUST CREATED BY MIRIAM W. SMITH, THE DECEDENT'S FIRST WIFE: | | | |
| 19 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 4695454 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $227,497.39 | | | 0.00 |
| 20 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 4695455 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $361,175.34 | | | 0.00 |
| 21 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5267972 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $480,460.15 | | | 0.00 |
| 22 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5267973 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $480,460.15 | | | 0.00 |
| 23 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5267974 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $480,460.15 | | | 0.00 |
| 24 | PENN MUTUAL LIFE INSURANCE CO. POLICY NO. 5267975 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $480,460.15 | | | 0.00 |
| 25 | LIFE OF GEORGIA POLICY NO. 115572 (SEE ATTACHED FORM 712): NET PROCEEDS PAYABLE: $8,768.36 | | | 0.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 0.00

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE D -- Insurance on the Decedent's Life

| Item No. | Description | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|
| 26 | LIFE OF GEORGIA POLICY NO. 115573 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $8,768.36 | | | 0.00 |
| 27 | LIFE OF GEORGIA POLICY NO. 115574 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $8,768.36 | | | 0.00 |
| 28 | LIFE OF GEORGIA POLICY NO. 115575 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $8,768.36 | | | 0.00 |
| 29 | LIFE OF GEORGIA POLICY NO. 350584 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $76,609.65 | | | 0.00 |
| 30 | LIFE OF GEORGIA POLICY NO. 399866 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $10,130.15 | | | 0.00 |
| 31 | LIFE OF GEORGIA POLICY NO. 500012278 (SEE ATTACHED FORM 712):<br>NET PROCEEDS PAYABLE: $268.15 | | | 0.00 |

TOTAL. (Carry forward to main schedule) . . . . . . . 0.00

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE E -- Jointly Owned Property

(If you elect section 2032A valuation, you must complete Schedule E and Schedule A-1.)

**PART 1. —** Qualified Joint Interests -- Interests Held by the Decedent and His or Her Spouse as the Only Joint Tenants (Section 2040(b)(2))

| Item no. | Description For securities, give CUSIP number, if available. | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | SUNTRUST BANK, ATLANTA, JOINT CHECKING ACCOUNT NO. 8812008335 | | | 54,426.73 |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 0.00 |
| 1a | Totals | | | 54,426.73 |
| 1b | Amounts included in gross estate (one-half of line 1a) | | | 27,213.36 |

**PART 2. —** All Other Joint Interests

**2a** State the name and address of each surviving co-tenant. If there are more than three surviving co-tenants, list the additional co-tenants on an attached sheet.

| | Name | Address (number and street, city, state, and ZIP code) |
|---|---|---|
| A. | | |
| B. | | |
| C. | | |

| Item no. | Enter letter for co-tenant | Description (including alternate valuation date if any) For securities, give CUSIP number, if available. | Percentage includible | Includible alternate value | Includible value at date of death |
|---|---|---|---|---|---|
| | | None | | | |
| | | Total from continuation schedules (or additional sheets) attached to this schedule | | | 0.00 |
| 2b | | Total other joint interests | | | 0.00 |
| 3 | | **Total includible joint interests** (add lines 1b and 2b). Also enter on Part 5, Recapitulation, page 3, at item 5 | | | 27,213.36 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 18.)



CAA 7 70SE1 NTF 9805

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

Estate of: RANKIN M. SMITH, SR. 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

## SCHEDULE F -- Other Miscellaneous Property Not Reportable Under Any Other Schedule

(For jointly owned property that must be disclosed on Schedule E, see the instructions for Schedule E.)
(If you elect section 2032A valuation, you must complete Schedule F and Schedule A-1.)

| | | Yes | No |
|---|---|---|---|
| 1 | Did the decedent at the time of death own any articles of artistic or collectible value in excess of $3,000 or any collections whose artistic or collectible value combined at date of death exceeded $10,000? | | X |
| | If "Yes," submit full details on this schedule and attach appraisals. | | |
| 2 | Has the decedent's estate, spouse, or any other person, received (or will receive) any bonus or award as a result of the decedent's employment or death? | | X |
| | If "Yes," submit full details on this schedule. | | |
| 3 | Did the decedent at the time of death have, or have access to, a safe deposit box? | X | |
| | If "Yes," state location, and if held in joint names of decedent and another, state name and relationship of joint depositor.<br>See Schedule attached<br>If any of the contents of the safe deposit box are omitted from the schedules in this return, explain fully why omitted.<br>See Schedule attached | | |

| Item no. | Description For securities, give CUSIP number, if available. | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| 1 | 55% INTEREST IN LOTASMITHS, LTD., PARTNERSHIP (SEE ATTACHED VALUATION REPORT) | | | 3,600,200.00 |
| 2 | 55.56% INTEREST IN MADISON COUNTY PARTNERSHIP (SEE ATTACHED VALUATION REPORT) | | | 329,000.00 |
| 3 | 50.5% INTEREST IN TOPS, LTD., PARTNERSHIP (SEE ATTACHED VALUATION REPORT) | | | 231,800.00 |
| 4 | 33.3% INTEREST IN HALL COUNTY PARTNERSHIP (SEE ATTACHED VALUATION MEMORANDUM) | | | 58,855.98 |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 665,897.60 |
| | TOTAL. (Also enter on Part 5, Recapitulation, page 3, at item 6.) | | | 4,885,753.58 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 20.)



Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE F -- Other Miscellaneous Property Not Reportable Under Any Other Schedule

| Item No. | Description | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|
| 5 | 1% GENERAL INTEREST AND 69% LIMITED INTEREST IN FALCONS NEST I, LTD., PARTNERSHIP--CONSIDERED WORTHLESS:<br><br>AS OF THE DATE OF DEATH, THE LIABILITIES OF FALCONS NEST, I, LTD., EXCEEDED THE PARTNERSHIP'S ASSETS, AS ADJUSTED TO REFLECT FAIR MARKET VALUES ON THE DATE OF DEATH (SEE ATTACHED BALANCE SHEET OF FALCONS NEST, I, LTD., AND APPRAISAL REPORT OF PARTNERSHIP ASSETS)<br><br>BECAUSE THE DECEDENT WAS A GENERAL PARTNER OF THE PARTNERSHIP AND BECAUSE HE GUARANTEED THE NOTE TO SUNTRUST BANK, ATLANTA, THE EXCESS LIABILITY IS CLAIMED AT SCHEDULE K, ITEM 28, AS A FULL RECOURSE DEBT OF THE DECEDENT. | | | 0.00 |
| 6 | 1% GENERAL INTEREST AND 4% LIMITED INTEREST IN FALCONS NEST II, LTD., PARTNERSHIP (SEE ATTACHED VALUATION REPORT) | | | 260,666.67 |
| 7 | 1% INTEREST IN SMITH INVESTMENTS, LTD., PARTNERSHIP (SEE ATTACHED VALUATION REPORT) | | | 15,000.00 |
| 8 | INTEREST IN VMS NATIONAL PROPERTIES JOINT VENTURE--CONSIDERED WORTHLESS | | | 0.00 |
| 9 | 9 GUNS, INCLUDING 4 20-GAUGE SHOTGUNS, 4 12-GAUGE SHOTGUNS, AND 1 .270 CALIBER GUN | | | 2,210.00 |
| 10 | FURNITURE AND FURNISHINGS LOCATED AT SEMINOLE PLANTATION (SEE ATTACHED APPRAISAL) | | | 66,720.00 |
| 11 | 30 1-OUNCE SOUTH AFRICAN KRUGERRANDS AND OTHER CURRENCY (SEE ATTACHED APPRAISAL) | | | 9,782.00 |
| 12 | 1981 FERRARI SPIDER 2-DOOR, V-8, AUTO (VALUED AT SALE PRICE) | | | 25,000.00 |
| 13 | 1996 MERCEDES S500, V-8, 4-DOOR AUTO | | | 68,950.00 |
| | TOTAL. (Carry forward to main schedule) . . . . . . . | | | 448,328.67 |

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE F -- Other Miscellaneous Property Not Reportable Under Any Other Schedule

| Item No. | Description | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|
| 14 | 1984 BUICK ELECTRA STATION WAGON | | | 600.00 |
| 15 | 1983 MAZDA B2000 PICKUP TRUCK (SALVAGE VALUE) | | | 100.00 |
| 16 | 1985 CHEVROLET FLEETSIDE V-6 PICKUP TRUCK | | | 125.00 |
| 17 | 1979 BUICK ESTATE V-8 STATION WAGON | | | 225.00 |
| 18 | 1986 JEEP CJ7 | | | 2,600.00 |
| 19 | 1997 FEDERAL JOINT INCOME TAX REFUND | | | 122,936.00 |
| 20 | 1997 GEORGIA JOINT INCOME TAX REFUND | | | 32,664.00 |
| 21 | CASH BALANCE HELD IN INVESTMENT ADVISORY ACCOUNT | | | 6,379.56 |
| 22 | FINAL SALARY FROM THE FIVE SMITHS, INC. | | | 50,871.37 |
| 23 | MISCELLANEOUS REFUNDS | | | 953.00 |
| 24 | DIVIDEND PAYMENTS RECEIVED BUT NOT CASHED | | | 115.00 |

TOTAL. (Carry forward to main schedule) . . . . . . . 217,568.93

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE F -- Other Miscellaneous Property Not Reportable Under Any Other Schedule

Safe Deposit Boxes

Location / Joint Depositor(s)

---

SUNTRUST BANK, ATLANTA, MAIN OFFICE BRANCH, ATLANTA, GA.
RANKIN M. SMITH, JR. - SON

SUNTRUST BANK, ATLANTA, MAIN OFFICE BRANCH, ATLANTA, GA.
EDWARD LEBARRON, JR. - NONE
JIM HAY - NONE
TAYLOR W. SMITH - SON

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE F -- Other Miscellaneous Property Not Reportable Under Any Other Schedule

The explanation of why any safe deposit box contents are omitted from the schedules in this return is as follows:

THE ONLY ITEMS EXCLUDED FROM THE DECEDENT'S PERSONAL SAFE DEPOSIT BOX ARE MISCELLANEOUS PERSONAL PAPERS. THE SECOND BOX IS A CORPORATE BOX LEASED BY THE FIVE SMITHS, INC. DECEDENT HAD NO PERSONAL ASSETS IN THIS BOX.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE G -- Transfers During Decedent's Life

(If you elect section 2032A valuation, you must complete Schedule G and Schedule A-1.)

| Item no. | Description For securities, give CUSIP number, if available. | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| **A.** | Gift tax paid by the decedent or the estate for all gifts made by the decedent or his or her spouse within 3 years before the decedent's death (section 2035(c)) | X X X X | | 111,453.00 |
| **B.** | Transfers includible under section 2035(a), 2036, 2037, or 2038: | | | |
| | See Schedule attached | | | |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 2,047,720.13 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item **7.**) | | | 2,159,173.13 |

## SCHEDULE H -- Powers of Appointment

(Include "5 and 5 lapsing" powers (section 2041(b)(2)) held by the decedent.)

(If you elect section 2032A valuation, you must complete Schedule H and Schedule A-1.)

| Item no. | Description | Alternate valuation date | Alternate value | Value at date of death |
|---|---|---|---|---|
| | None | | | |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 8.) | | | 0.00 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(The instructions to Schedules G and H are in the separate instructions.)



CAA 7 70SG1 NTF 9807

Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE G -- Transfers During Decedent's Life

| Item No. | Description | Unit Value | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|---|
| | THE FOLLOWING ASSETS ARE HELD IN AN IRREVOCABLE TRUST ESTABLISHED BY THE DECEDENT FOR THE BENEFIT OF HIS SURVIVING SPOUSE, CHARLOTTE SMITH: | | | | |
| 1 | 100,000 FACE ATLANTA GA ARPT EXTN & IMPT REV 1st LIEN, DTD 4-1-68, 5.4%, DUE 1-1-99 | 1.0178 | | | 101,780.00 |
| 2 | ACCRUED INTEREST ON ITEM 1 | | | | 1,725.00 |
| 3 | 330,000 BLECKLEY COCHRAN GA INDL DEV REV NATIONAL SVCS INDS INC PROJ, DTD 8-1-79, 6.625%, DUE 8-1-2004 | 1.02594751 | | | 338,562.68 |
| 4 | ACCRUED INTEREST ON ITEM 3 | | | | 5,161.98 |
| 5 | 300,000 COBB CNTY GA SCH DIST, DTD 7-1-95, 4.75%, DUE 2-1-2007, CALLABLE 2-1-2003 AT 102 | 1.0128075 | | | 303,842.25 |
| 6 | ACCRUED INTEREST ON ITEM 5 | | | | 3,364.58 |
| 7 | 200,000 GWINNETT CNTY GA WTR & SEW REV SERIES 1990, DTD 3-1-90, 6.6%, DUE 8-1-2001, PREREFUNDED 8-1-98 AT 102 | 1.0407875 | | | 208,157.50 |
| 8 | ACCRUED INTEREST ON ITEM 7 | | | | 3,116.67 |
| 9 | 555,000 LA GRANGE GA DEV AUTH INDL DEV REV GEN SIGNAL CORP, DTD 12-1-77, 5.625%, DUE 12-1-2002, CALLABLE 12-1-98 AT 100.80 | 1.01874250 | | | 565,402.09 |
| 10 | ACCRUED INTEREST ON ITEM 9 | | | | 12,574.22 |
| 11 | 100,000 STEPHENS CNTY GA HOSP AUTH REV, DTD 3-1-78, 6%, DUE 1-1-2002, CALLABLE | 1.027075 | | | 102,707.50 |
| 12 | ACCRUED INTEREST ON ITEM 11 | | | | 1,916.67 |
| | TOTAL. (Carry forward to main schedule) . . . . . . | | | | 1,648,311.14 |

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE G -- Transfers During Decedent's Life

| Item No. | Description | Unit Value | Alternate Val. Date | Alternate Value | Value at Date of Death |
|---|---|---|---|---|---|
| 13 | 365,000 VALDOSTA GA WTR & SWR REV, DTD 12-1-78, 6.2%, DUE 9-1-2001, CALLABLE 9-1-98 AT 100 | 1.01681249 | | | 371,136.56 |
| 14 | ACCRUED INTEREST ON ITEM 13 | | | | 3,457.36 |
| 15 | CASH BALANCE | | | | 24,815.07 |

TOTAL. (Carry forward to main schedule) . . . . . . 399,408.99

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE I -- Annuities

**Note:** Generally, no exclusion is allowed for the estates of decedents dying after December 31, 1984 (see page 13 of the instructions).

| | | Yes | No |
|---|---|---|---|
| **A** | Are you excluding from the decedent's gross estate the value of a lump-sum distribution described in section 2039(f)(2)? If "Yes," you must attach the information required by the instructions. | | X |

| Item no. | Description Show the entire value of the annuity before any exclusions. | Alternate valuation date | Includible alternate value | Includible value at date of death |
|---|---|---|---|---|
| 1 | THE DECEDENT WAS RECEIVING A JOINT AND SURVIVOR ANNUITY. A PORTION OF THIS ANNUITY, IN THE AMOUNT OF $4,155.38 PER MONTH, CONTINUES TO BE PAYABLE TO THE SURVIVING SPOUSE, CHARLOTTE SMITH, FOR HER LIFE. THE PRESENT VALUE OF THIS ANNUITY IS CALCULATED AS FOLLOWS: SURVIVING SPOUSE'S AGE NEAREST 10-26-97: 67 (DOB = 4-29-31); IRS DISCOUNT RATE FOR OCTOBER, 1997: 7.6%; ANNUITY FACTOR, AGE 67, DISCOUNTED AT 7.6%: 7.995; MONTHLY ADJUSTMENT FACTOR: 1.0344.<br><br>TOTAL PRESENT VALUE:<br>4,155.38 x 12 x 7.995 x 1.0344 =<br>412,381.31 | | | 412,381.31 |
| | Total from continuation schedules (or additional sheets) attached to this schedule . . . . | | | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 9.) . . . . . . . . . . . . | | | 412,381.31 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

 (The instructions to Schedule I are in the separate instructions.)

CAA 7 70SI1 NTF 9808

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

Estate of: RANKIN M. SMITH, SR. 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

## SCHEDULE J -- Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims

**Note:** Do not list on this schedule expenses of administering property not subject to claims. For those expenses, see instructions for Schedule L.

If executors' commissions, attorney fees, etc., are claimed and allowed as a deduction for estate tax purposes, they are not allowable as a deduction in computing the taxable income of the estate for Federal income tax purposes. They are allowable as an income tax deduction on Form 1041 if a waiver is filed to waive the deduction on Form 706 (see the Form 1041 instructions).

| Item no. | Description | Expense amount | Total amount |
|---|---|---|---|
| | **A. Funeral expenses:** | | |
| 1 | See Schedule attached | | |
| | Total funeral expenses | | 25,063.82 |
| | **B. Administration expenses:** | | |
| 1 | Executors' commissions -- amount estimated/~~agreed upon/paid~~. (Strike out the words that do not apply.) | | 233,000.00 |
| 2 | Attorney fees -- amount estimated/agreed upon/paid. (Strike out the words that do not apply.) | | 1,710,916.29 |
| 3 | Accountant fees -- amount estimated/agreed upon/paid. (Strike out the words that do not apply.) | | |
| 4 | Miscellaneous expenses: | Expense amount | |
| | See Schedule attached | | |
| | Total miscellaneous expenses from continuation schedules (or additional sheets) attached to this schedule | 1,007,840.78 | |
| | Total miscellaneous expenses | | 1,007,840.78 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 11.) | | 2,976,820.89 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 24.)



CAA 7 70SJ1 NTF 9809

Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE J, Part A -- Funeral Expenses

| Item No. | Description | | Amount |
|---|---|---|---|
| 1 | 11-12-97 | WESTVIEW CEMETERY<br>INTERMENT FEES | 2,520.61 |
| 2 | 11-13-97 | H. M. PATTERSON & SON<br>FUNERAL CHARGES | 18,833.37 |
| 3 | 11-26-97 | ATLANTA MONUMENT CO.<br>GRAVE MARKER | 711.45 |
| 4 | 11-26-97 | H. M. PATTERSON & SON<br>ACKNOWLEDGEMENT CARDS | 206.68 |
| 5 | 12-09-97 | H. M. PATTERSON & SON<br>ACKNOWLEDGEMENT CARDS | 326.35 |
| 6 | 01-09-98 | PEACHTREE ROAD UNITED METHODIST CHURCH<br>REIMBURSEMENT FOR FUNERAL EXPENSES | 2,145.35 |
| 7 | 03-04-98 | H. M. PATTERSON & SON<br>ACKNOWLEDGEMENT CARDS | 320.01 |

TOTAL. (Carry forward to main schedule) . . . . . . 25,063.82

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE J, Part B -- Administration Expenses

| Item No. | Description | Amount |
|---|---|---|
| 4 | 11-18-97 EXPENSE OF SALE OF 18,131 SHS SUNTRUST BANKS, INC., COMMON STOCK | 1,369.77 |
| 5 | 11-19-97 FULTON CNTY PROBATE COURT CERTIFIED COPIES OF WILL AND LETTERS TESTAMENTARY | 103.00 |
| 6 | 11-21-97 1000 BEACH RD CONDO ASSOC. NOVEMBER AND DECEMBER ASSOCIATION FEES | 1,282.40 |
| 7 | 11-26-97 RUBY'S CLEANING SERVICE CLEANING OF FLORIDA CONDO | 65.00 |
| 8 | 11-26-97 BELLSOUTH SERVICE AT FLORIDA CONDO | 32.90 |
| 9 | 11-28-97 UPS MAIL FEE | 5.50 |
| 10 | 12-05-97 UPS MAIL FEE | 5.50 |
| 11 | 12-11-97 UPS MAIL FEE | 5.50 |
| 12 | 12-26-97 1000 BEACH RD CONDO ASSOC. MONTHLY CONDO ASSOCIATION FEE | 661.70 |
| 13 | 01-09-98 BELLSOUTH SERVICE FOR FLORIDA CONDO | 55.16 |
| 14 | 01-15-98 KING AND SPALDING LEGAL FEES FOR ESTATE ADMINISTRATION | 3,012.18 |
| 15 | 01-15-98 UPS MAIL FEE | 11.00 |
| 16 | 01-22-98 CITY OF VERO BEACH, FLORIDA UTILITY STATEMENT | 70.08 |
| 17 | 01-28-98 1000 BEACH RD CONDO ASSOC. MONTHLY CONDO ASSOCIATION FEE | 661.70 |
| 18 | 01-29-98 UPS MAIL FEE | 11.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 7,352.39

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE J, Part B -- Administration Expenses

| Item No. | Description | Amount |
|---|---|---|
| 19 | 02-17-98 COLKITT SHEET METAL & AIR CONDITIONING<br>REPAIRS AT FLORIDA CONDO | 164.68 |
| 20 | 02-24-98 CITY OF VERO BEACH, FLORIDA<br>UTILITY STATEMENT | 40.65 |
| 21 | 02-25-98 MOYLE, FLANIGAN, KATZ, KOLINS, RAYMOND,<br>& SHEEHAN<br>LEGAL SERVICES | 368.00 |
| 22 | 02-26-98 BELLSOUTH<br>SERVICE AT FLORIDA CONDO | 28.13 |
| 23 | 02-27-98 1000 BEACH RD CONDO ASSOC<br>MONTHLY CONDO ASSOCIATION FEE | 661.70 |
| 24 | 03-09-98 UPS<br>MAIL FEE | 5.65 |
| 25 | 03-12-98 BELLSOUTH<br>STATEMENT FOR FLORIDA CONDO | 29.31 |
| 26 | 03-24-98 CITY OF VERO BEACH, FLORIDA<br>UTILITY STATEMENT | 80.70 |
| 27 | 03-27-98 1000 BEACH RD CONDO ASSOC.<br>MONTHLY CONDO ASSOCIATION FEE | 661.70 |
| 28 | 03-31-98 UPS<br>MAIL FEE: 2 @ $5.65 | 11.30 |
| 29 | 04-13-98 BELLSOUTH<br>SERVICE AT FLORIDA CONDO | 31.49 |
| 30 | 04-20-98 HOULIHAN, LOKEY, HOWARD, & ZUKIN<br>APPRAISAL FEE | 42,349.24 |
| 31 | 04-28-98 CITY OF VERO BEACH, FLORIDA<br>UTILITY STATEMENT | 55.16 |
| 32 | 05-14-98 FULTON COUNTY PROBATE COURT<br>RECORDING FEES | 144.00 |
| 33 | 05-19-98 BOYLE AND DRAKE, INC.<br>APPRAISAL FEE | 375.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 45,006.71

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE J, Part B -- Administration Expenses

| Item No. | | Description | Amount |
|---|---|---|---|
| 34 | 06-04-98 | EXPENSE OF SALE OF 17,784 SHARES OF AARON RENTS, INC., COMMON STOCK | 1,434.29 |
| 35 | 06-04-98 | EXPENSE OF SALE OF 415 SHARES OF AMERICAN BUSINESS PRODUCTS, INC., COMMON STOCK | 33.51 |
| 36 | 06-04-98 | EXPENSE OF SALE OF 500 SHARES OF DIAL CORP NEW COMMON STOCK | 40.42 |
| 37 | 06-04-98 | EXPENSE OF SALE OF 252 SHARES OF EDISON INTERNATIONAL COMMON STOCK | 20.41 |
| 38 | 06-04-98 | EXPENSE OF SALE OF 250 SHARES OF FINOVA GROUP COMMON STOCK | 20.46 |
| 39 | 06-04-98 | EXPENSE OF SALE OF 200 SHARES OF SUNTRUST BANKS, INC., COMMON STOCK | 16.54 |
| 40 | 06-04-98 | EXPENSE OF SALE OF 500 SHARES OF VIAD CORP. COMMON STOCK | 40.45 |
| 41 | 06-05-98 | EXPENSE OF SALE OF 19,000 SHARES OF AARON RENTS, INC., COMMON STOCK | 1,531.79 |
| 42 | 06-08-98 | UPS<br>MAIL FEE: 3 @ 5.65 | 16.95 |
| 43 | 07-17-98 | BOYLE AND DRAKE, INC.<br>APPRAISAL FEE | 75.00 |
| 44 | 08-17-98 | SUNTRUST BANK, ATLANTA<br>FEE FOR PREP OF 1997 EMPLOYER TAX RETURNS | 160.00 |
| 45 | 08-31-98 | KING AND SPALDING<br>LEGAL FEES FOR ESTATE ADMINISTRATION | 142,125.59 |
| 46 | 09-30-98 | ALMAND AND COMPANY<br>APPRAISAL FEE | 35,060.00 |
| 47 | 10-06-98 | AON RISK SERVICES<br>INDEMNITY BOND FOR REPLACEMENT OF SHARE CERTIFICATE FOR AMERICAN BUSINESS PRODUCTS STOCK | 22.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 180,597.41

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE J, Part B -- Administration Expenses

| Item No. | | Description | Amount |
|---|---|---|---|
| 48 | 10-06-98 | FULTON COUNTY PROBATE COURT<br>COPIES OF DOCUMENTS | 4.50 |
| 49 | 10-07-98 | ALSTON AND BIRD<br>LEGAL FEES | 840.00 |
| 50 | 10-07-98 | CHILDERS ASSOCIATES<br>APPRAISAL FEE | 18,500.00 |
| 51 | 10-30-98 | UPS<br>MAIL FEE | 5.65 |
| 52 | 11-05-98 | JAMES MASON ANTIQUES AND FURNISHINGS<br>APPRAISAL FEE | 712.50 |
| 53 | 11-24-98 | DEB PUCKETT AND ASSOCIATES<br>DEPOSITION SERVICES | 862.70 |
| 54 | 12-01-98 | WHEELER REPORTING COMPANY<br>DEPOSITION SERVICES | 730.50 |
| 55 | 12-31-98 | FULTON COUNTY PROBATE COURT<br>PROBATE FILING FEES | 80.00 |
| 56 | 01-14-99 | UPS<br>MAIL FEE | 11.30 |
| 57 | | ESTIMATED LEGAL FEES FOR FLORIDA ANCILLARY<br>ADMINISTRATION | 7,500.00 |
| 58 | | SUNTRUST BANK, ATLANTA<br>INTEREST ACCRUED FROM 07-28-98 THROUGH<br>01-26-2000 ON LINE OF CREDIT<br>ESTABLISHED BY THE EXECUTORS (SUBJECT TO<br>INTEREST RATE SWAP) | 596,161.64 |

TOTAL. (Carry forward to main schedule) . . . . . . 625,408.79

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE J, Part B -- Administration Expenses

| Item No. | Description | Amount |
|---|---|---|
| 59 | FIRST UNION MORTGAGE CORP.<br>POST-DEATH INTEREST ON RESIDENCE LOCATED AT 4270 HARRIS TRAIL, ATLANTA, GA., ACCRUED FROM DATE OF DEATH THROUGH DATE OF FULL REPAYMENT OF LOAN ON 10-29-98 | 118,384.21 |
| 60 | KING AND SPALDING<br>ACCRUED ATTORNEY FEES | 31,091.27 |

TOTAL. (Carry forward to main schedule) . . . . . . 149,475.48

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE K -- Debts of the Decedent, and Mortgages and Liens

| Item no. | Debts of the Decedent -- Creditor and nature of claim, and allowable death taxes | Amount unpaid to date | Amount in contest | Amount claimed as a deduction |
|---|---|---|---|---|
| | See Schedule attached | | | |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | | 5,226,010.20 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 12.) | | | 5,226,010.20 |

| Item no. | Mortgages and Liens -- Description | Amount |
|---|---|---|
| 1 | FIRST UNION MORTGAGE CORP.<br>BALANCE OF MORTGAGE ON RESIDENCE LOCATED AT 4270 HARRIS TRAIL, ATLANTA, GEORGIA (THE RESIDENCE IS OWNED BY CHARLOTTE SMITH, THE SURVIVING SPOUSE) | 1,385,312.99 |
| 2 | ACCRUED INTEREST ON ITEM 1 (INCLUDED IN INTEREST RETURNED AT SCHEDULE J, ITEM 59) | 0.00 |
| 3 | LOTASMITHS, LTD.<br>MORTGAGE ON PLANTATION HOME RETURNED AT SCHEDULE A, ITEM 1 | 258,737.39 |
| 4 | ACCRUED INTEREST ON ITEM 3, CALCULATED FROM 1-1-97 THROUGH 10-26-97 | 31,792.82 |
| | Total from continuation schedules (or additional sheets) attached to this schedule | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 13.) | 1,675,843.20 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)
(The instructions to Schedule K are in the separate instructions.)



CAA 7 70SK1 NTF 9810

Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE K, Part 1 -- Debts of the Decedent

| Item No. | Description | Amount unpaid to date | Amount in contest | Deduction amount |
|---|---|---|---|---|
| 1 | 11-12-97 SMITH ACE HARDWARE STATEMENT | | | 948.87 |
| 2 | 11-12-97 DBA ACCESS PROS STATEMENT | | | 682.25 |
| 3 | 11-12-97 BELLSOUTH STATEMENT | | | 319.54 |
| 4 | 11-12-97 NEIMAN MARCUS STATEMENT | | | 670.00 |
| 5 | 11-12-97 TEXACO STATEMENT | | | 29.68 |
| 6 | 11-12-97 GEORGIA POWER CO. STATEMENT | | | 1,607.45 |
| 7 | 11-12-97 ATLANTA GAS LIGHT CO. STATEMENT | | | 597.83 |
| 8 | 11-12-97 WENDER & ROBERTS DRUGS STATEMENT | | | 608.84 |
| 9 | 11-14-97 HOME DEPOT STATEMENT | | | 428.41 |
| 10 | 11-18-97 CITY OF VERO BEACH, FL UTILITY STATEMENT | | | 78.18 |
| 11 | 11-26-97 BP OIL CO. STATEMENT | | | 157.01 |
| 12 | 11-26-97 CAPITAL CITY CLUB STATEMENT | | | 30.00 |
| 13 | 11-26-97 BUHLER PLUMBING, INC. STATEMENT | | | 45.00 |
| 14 | 11-26-97 JOHN'S ISLAND CLUB STATEMENT | | | 22.23 |
| 15 | 11-26-97 SUNTRUST MASTERCARD/VISA STATEMENT FOR ACCOUNT NO. 5410-5733-0183-5418 | | | 885.97 |

TOTAL. (Carry forward to main schedule) . . . . . . 7,111.26

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE K, Part 1 -- Debts of the Decedent

| Item No. | Description | Amount unpaid to date | Amount in contest | Deduction amount |
|---|---|---|---|---|
| 16 | 11-26-97 SUNTRUST MASTERCARD/VISA STATEMENT FOR ACCOUNT NO. 5442-3049-9026-7478 | | | 864.05 |
| 17 | 11-26-97 AMOCO OIL CO. STATEMENT | | | 23.00 |
| 18 | 11-26-97 INDIAN RIVER COUNTY, FLORIDA, TAX DEPARTMENT 1997 ADVALOREM TAX | | | 6,006.70 |
| 19 | 11-28-97 INTERNAL REVENUE SERVICE ADDITIONAL 1995 JOINT INCOME TAX | | | 2.34 |
| 20 | 12-19-97 CITY OF VERO BEACH, FL UTILITY STATEMENT | | | 63.16 |
| 21 | 12-19-97 THOMAS COUNTY, GEORGIA, TAX COMMISSION 1997 ADVALOREM TAX | | | 1,095.65 |
| 22 | 01-09-98 SUNTRUST BANK CARD STATEMENT FOR ACCOUNT NO. 5442-3049-9026-7487 | | | 13.73 |
| 23 | 01-09-98 SUNTRUST BANK CARD STATEMENT FOR ACCOUNT NO. 5410-5733-0183-5418 | | | 257.54 |
| 24 | 01-17-98 GEORGIA INCOME TAX UNIT TAXES RELATED TO DOMESTIC EMPLOYEES | | | 272.20 |
| 25 | 05-28-98 GEORGIA INCOME TAX UNIT ADDITIONAL TAX ON DOMESTIC EMPLOYEES FOR PERIOD ENDED 9-30-97 | | | 53.87 |
| 26 | 12-28-98 INTERNAL REVENUE SERVICE 1997 FEDERAL GIFT TAX DUE BY MR. SMITH AND MRS. SMITH ON GIFTS MADE BY MR. SMITH ($18,697.87 AND $16,204.91) | | | 34,902.78 |

TOTAL. (Carry forward to main schedule) . . . . . . 43,555.02

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE K, Part 1 -- Debts of the Decedent

| Item No. | Description | Amount unpaid to date | Amount in contest | Deduction amount |
|---|---|---|---|---|
| 27 | DISCOUNTED PRESENT VALUE OF ALIMONY OBLIGATION OWED TO MR. SMITH'S FORMER WIFE, MIRIAM SMITH, PAYABLE FOR MRS. SMITH'S LIFE: AMOUNT OF YEARLY OBLIGATION IS (1) MONTHLY PAYMENT OF $8,333.34 PLUS (2) QUARTERLY MEDICARE PREMIUM OF $87.00, OR $100,348.00 PER YEAR. MRS. SMITH'S AGE NEAREST 10-26-97 IS 71. IRS DISCOUNT RATE FOR 10-97 IS 7.6%. FACTOR FOR PRESENT VALUE OF AN ANNUITY AT 7.6%, AGE 71, IS 7.2005. MONTHLY ADJUSTMENT FACTOR IS 1.0344. TOTAL PRESENT VALUE OF ALIMONY OBLIGATION IS AS FOLLOWS: 100,348.00 x 7.2005 x 1.0344 = $747,411.69. | 622,063.67 | 0.00 | 747,411.69 |
| 28 | EXCESS PERSONAL LIABILITY OF THE DECEDENT AS GENERAL PARTNER OF FALCONS NEST, I, LIMITED, BECAUSE PARTNERSHIP LIABILITIES EXCEED FAIR MARKET VALUE OF PARTNERSHIP ASSETS (SEE ATTACHED BALANCE SHEET OF FALCONS NEST, I, LIMITED, AND SEE SCHEDULE F, ITEM 5) | 4,071,312.00 | 0.00 | 4,071,312.00 |

TOTAL. (Carry forward to main schedule) . . . . . . 4,818,723.69

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE K, Part 1 -- Debts of the Decedent

| Item No. | Description | Amount unpaid to date | Amount in contest | Deduction amount |
|---|---|---|---|---|
| 29 | INTEREST-BEARING LOAN OWED TO FIVE SMITHS, INC. | 329,221.09 | 0.00 | 329,221.09 |
| 30 | ACCRUED INTEREST ON ITEM 29, CALCULATED FROM 1-1-97 THROUGH 10-26-97 | 16,326.10 | 0.00 | 16,326.10 |
| 31 | UNSECURED ACCOUNT PAYABLE OWED TO FIVE SMITHS, INC. | 11,073.04 | 0.00 | 11,073.04 |

TOTAL. (Carry forward to main schedule) . . . . . . 356,620.23

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

# SCHEDULE L -- Net Losses During Administration and Expenses Incurred in Administering Property Not Subject to Claims

| Item no. | Net losses during administration (**Note:** Do not deduct losses claimed on a Federal income tax return.) | Amount |
|---|---|---|
| | None | |
| | Total from continuation schedules (or additional sheets) attached to this schedule | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 16.) | 0.00 |

| Item no. | Expenses incurred in administering property not subject to claims (Indicate whether estimated, agreed upon, or paid.) | Amount |
|---|---|---|
| | None | |
| | Total from continuation schedules (or additional sheets) attached to this schedule | 0.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 17.) | 0.00 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

 (The instructions to Schedule L are in the separate instructions.)

CAA 7 70SL1 NTF 9812

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

# SCHEDULE M -- Bequests, etc., to Surviving Spouse

**Election To Deduct Qualified Terminable Interest Property Under Section 2056(b)(7).** -- If a trust (or other property) meets the requirements of qualified terminable interest property under section 2056(b)(7), and

a. The trust or other property is listed on Schedule M, and

b. The value of the trust (or other property) is entered in whole or in part as a deduction on Schedule M,

then unless the executor specifically identifies the trust (all or a fractional portion or percentage) or other property to be excluded from the election, the executor shall be deemed to have made an election to have such trust (or other property) treated as qualified terminable interest property under section 2056(b)(7).

If less than the entire value of the trust (or other property) that the executor has included in the gross estate is entered as a deduction on Schedule M, the executor shall be considered to have made an election only as to a fraction of the trust (or other property). The numerator of this fraction is equal to the amount of the trust (or other property) deducted on Schedule M. The denominator is equal to the total value of the trust (or other property).

**Election To Deduct Qualified Domestic Trust Property Under Section 2056A.** -- If a trust meets the requirements of a qualified domestic trust under section 2056A(a) and this return is filed no later than 1 year after the time prescribed by law (including extensions) for filing the return, and

a. The entire value of a trust or trust property is listed on Schedule M, and

b. The entire value of the trust or trust property is entered as a deduction on Schedule M,

then unless the executor specifically identifies the trust to be excluded from the election, the executor shall be deemed to have made an election to have the entire trust treated as qualified domestic trust property.

| | | Yes | No |
|---|---|---|---|
| 1 | Did any property pass to the surviving spouse as a result of a qualified disclaimer? | | X |
| | If "Yes," attach a copy of the written disclaimer required by section 2518(b). | | |
| 2a | In what country was the surviving spouse born? U.S.A. | | |
| b | What is the surviving spouse's date of birth? | | |
| c | Is the surviving spouse a U.S. citizen? | X | |
| d | If the surviving spouse is a naturalized citizen, when did the surviving spouse acquire citizenship? | | |
| e | If the surviving spouse is not a U.S. citizen, of what country is the surviving spouse a citizen? | | |
| 3 | **Election Out of QTIP Treatment of Annuities.** -- Do you elect under section 2056(b)(7)(C)(ii) **not** to treat as qualified terminable interest property any joint and survivor annuities that are included in the gross estate and would otherwise be treated as qualified terminable interest property under section 2056(b)(7)(C)? (see instructions) | | X |

| Item no. | Description of property interests passing to surviving spouse | Amount |
|---|---|---|
| 1 | SUNTRUST BANK, ATLANTA, JOINT CHECKING ACCOUNT NO. 8812008335 | 54,426.73 |
| | One-half of items on Schedule E, Part 1 | (27,213.37) |
| 2 | 500 SHS THE NEST, II, INC., COM (THE SOLE ASSET OF THE CORPORATION IS A ONE PERCENT GENERAL PARTNERSHIP INTEREST IN FALCONS NEST, II, LTD) (SEE ATTACHED VALUATION REPORT FOR THE | 52,133.33 |
| | Total from continuation schedules (or additional sheets) attached to this schedule | 3,504,778.11 |

| | | | | | |
|---|---|---|---|---|---|
| 4 | **Total** amount of property interests listed on Schedule M | | | 4 | 3,584,124.80 |
| 5a | Federal estate taxes (including section 4980A taxes) payable out of property interests listed on Schedule M | 5a | 0.00 | | |
| b | Other death taxes payable out of property interests listed on Schedule M | 5b | 0.00 | | |
| c | Federal and state GST taxes payable out of property interests listed on Schedule M | 5c | 0.00 | | |
| d | Add items a, b, and c | | | 5d | 0.00 |
| 6 | Net amount of property interests listed on Schedule M (subtract 5d from 4). Also enter on Part 5, Recapitulation, page 3, at Item 18 | | | 6 | 3,584,124.80 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)

(See the instructions on page 28.)



Copyright Forms Software Only, 1997 Nelco, Inc.

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE M -- Bequests, etc., to Surviving Spouse

| Item No. | Description | Amount |
|---|---|---|
| 2 | PARTNERSHIP INTERESTS IN FALCONS NEST, II, LTD., RETURNED AT SCHEDULE F, ITEM 6) | |
| 3 | 1% GENERAL INTEREST AND 4% LIMITED INTEREST IN FALCONS NEST II, LTD., PARTNERSHIP (SEE ATTACHED VALUATION REPORT) | 260,666.67 |
| 4 | 1981 FERRARI SPIDER 2-DOOR, V-8, AUTO (VALUED AT SALE PRICE) | 25,000.00 |
| 5 | 1996 MERCEDES S500, V-8, 4-DOOR AUTO | 68,950.00 |
| 6 | 1984 BUICK ELECTRA STATION WAGON | 600.00 |
| 7 | 1983 MAZDA B2000 PICKUP TRUCK (SALVAGE VALUE) | 100.00 |
| 8 | 1985 CHEVROLET FLEETSIDE V-6 PICKUP TRUCK | 125.00 |
| 9 | 1979 BUICK ESTATE V-8 STATION WAGON | 225.00 |
| 10 | 1986 JEEP CJ7 | 2,600.00 |
| 11 | TRUST ASSETS RETURNED AT SCHEDULE G, ITEMS 1 THROUGH 15 | 2,047,720.13 |
| 12 | CONDOMINIUM UNIT 297, LOCATED AT 1000 BEACH ROAD, VERO BEACH, FLORIDA (SEE ATTACHED APPRAISAL) | 610,000.00 |
| 13 | JOHN'S ISLAND, FLORIDA, CLUB EQUITY MEMBERSHIP (SEE ATTACHED APPRAISAL) | 76,410.00 |
| 14 | THE DECEDENT WAS RECEIVING A JOINT AND SURVIVOR ANNUITY. A PORTION OF THIS ANNUITY, IN THE AMOUNT OF $4,155.38 PER MONTH, CONTINUES TO BE PAYABLE TO THE SURVIVING SPOUSE, CHARLOTTE SMITH, FOR HER LIFE. THE PRESENT VALUE OF THIS ANNUITY IS CALCULATED AS FOLLOWS: SURVIVING SPOUSE'S AGE NEAREST 10-26-97: 67 (DOB = 4-29-31); IRS DISCOUNT RATE FOR OCTOBER, 1997: 7.6%; ANNUITY FACTOR, AGE 67, DISCOUNTED AT 7.6%: 7.995; MONTHLY ADJUSTMENT FACTOR: 1.0344. | 412,381.31 |
| | TOTAL. (Carry forward to main schedule) . . . . . . | 3,504,778.11 |

Estate of: RANKIN M. SMITH, SR. 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

SCHEDULE M -- Bequests, etc., to Surviving Spouse

| Item No. | Description | Amount |
|---|---|---|
| 14 | TOTAL PRESENT VALUE:<br>4,155.38 x 12 x 7.995 x 1.0344 =<br>412,381.31 | |

TOTAL. (Carry forward to main schedule) . . . . . . 0.00

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE O -- Charitable, Public, and Similar Gifts and Bequests

| | | Yes | No |
|---|---|---|---|
| **1a** | If the transfer was made by will, has any action been instituted to have interpreted or to contest the will or any of its provisions affecting the charitable deductions claimed in this schedule? If "Yes," full details must be submitted with this schedule. | | |
| **b** | According to the information and belief of the person or persons filing this return, is any such action planned? If "Yes," full details must be submitted with this schedule. | | |
| **2** | Did any property pass to charity as the result of a qualified disclaimer? If "Yes," attach a copy of the written disclaimer required by section 2518(b). | | |

| Item no. | Name and address of beneficiary | Character of institution | Amount |
|---|---|---|---|
| | None | | |
| | Total from continuation schedules (or additional sheets) attached to this schedule | | 0.00 |

| | | | | | |
|---|---|---|---|---|---|
| **3** | Total | | | **3** | 0.00 |
| **4a** | Federal estate tax (including section 4980A taxes) payable out of property interests listed above | **4a** | 0.00 | | |
| **b** | Other death taxes payable out of property interests listed above | **4b** | 0.00 | | |
| **c** | Federal and state GST taxes payable out of property interests listed above | **4c** | 0.00 | | |
| **d** | Add items a, b, and c | | | **4d** | 0.00 |
| **5** | Net value of property interests listed above (subtract 4d from 3). Also enter on Part 5, Recapitulation, page 3, at item 19 | | | **5** | 0.00 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)
(The instructions to Schedule O are in the separate instructions.)



Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE P -- Credit for Foreign Death Taxes

List all foreign countries to which death taxes have been paid and for which a credit is claimed on this return.

None

If a credit is claimed for death taxes paid to more than one foreign country, compute the credit for taxes paid to one country on this sheet and attach a separate copy of Schedule P for each of the other countries.

The credit computed on this sheet is for the ______________________________
(Name of death tax or taxes)

______________________________ imposed in ______________________________
(Name of country)

Credit is computed under the ______________________________
(Insert title of treaty or "statute")

Citizenship (nationality) of decedent at time of death ______________________________

**(All amounts and values must be entered in United States money.)**

| | | |
|---|---|---|
| 1 | Total of estate, inheritance, legacy, and succession taxes imposed in the country named above attributable to property situated in that country, subjected to these taxes, and included in the gross estate (as defined by statute) | |
| 2 | Value of the gross estate (adjusted, if necessary, according to the instructions for item 2) | |
| 3 | Value of property situated in that country, subjected to death taxes imposed in that country, and included in the gross estate (adjusted, if necessary, according to the instructions for item 3) | |
| 4 | Tax imposed by section 2001 reduced by the total credits claimed under sections 2010, 2011, and 2012 (see inst.) | |
| 5 | Amount of Federal estate tax attributable to property specified at item 3. (Divide item 3 by item 2 and multiply the result by item 4.) | |
| 6 | Credit for death taxes imposed in the country named above (the smaller of item 1 or item 5). Also enter on line 18 of Part 2, Tax Computation | 0.00 |

## SCHEDULE Q -- Credit for Tax on Prior Transfers

### Part 1. -- Transferor Information

| | Name of transferor | Social security number | IRS office where estate tax return was filed | Date of death |
|---|---|---|---|---|
| A | None | | | |
| B | | | | |
| C | | | | |

Check here ▶ ☐ if section 2013(f) (special valuation of farm, etc., real property) adjustments to the computation of the credit were made (see page 17 of the instructions).

### Part 2. -- Computation of Credit (see instructions beginning on page 17)

| Item | Transferor A | Transferor B | Transferor C | Total A, B, & C |
|---|---|---|---|---|
| 1 Transferee's tax as apportioned (from wksht., (line 7 ÷ line 8) x line 35 for each col.) | | | | |
| 2 Transferor's tax (from each column of worksheet, line 20) | | | | |
| 3 Maximum amount before percentage requirement (for each column, enter amount from line 1 or 2, whichever is smaller) | | | | |
| 4 Percentage allowed (each column) (see inst.) | % | % | % | |
| 5 Credit allowable (line 3 x line 4 for each col.) | | | | |
| 6 TOTAL credit allowable (add columns A, B, and C of line 5). Enter here and on line 19 of Part 2, Tax Computation | | | | 0.00 |



(The instructions to Schedules P and Q are in the separate instructions.)

CAA 7 70SP1 NTF 9816

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

# SCHEDULE R -- Generation-Skipping Transfer Tax

**Note:** To avoid application of the deemed allocation rules, Form 706 and Schedule R should be filed to allocate the GST exemption to trusts that may later have taxable terminations or distributions under section 2612 even if the form is not required to be filed to report estate or GST tax.

The GST tax is imposed on taxable transfers of interests in property located **outside the United States** as well as property located inside the United States.

See instructions beginning on page 17.

**Part 1.** -- GST Exemption Reconciliation (Section 2631) and Section 2652(a)(3) (Special QTIP) Election

You no longer need to check a box to make a section 2652(a)(3) (special QTIP) election. If you list qualifying property in Part 1, line 9, below, you will be considered to have made this election. See page 19 of the separate instructions for details.

| | | | |
|---|---|---|---|
| 1 | Maximum allowable GST exemption | 1 | $1,000,000 |
| 2 | Total GST exemption allocated by the decedent against decedent's lifetime transfers | 2 | 85,668.00 |
| 3 | Total GST exemption allocated by the executor, using Form 709, against decedent's lifetime transfers | 3 | 80,000.00 |
| 4 | GST exemption allocated on line 6 of Schedule R, Part 2 | 4 | 0.00 |
| 5 | GST exemption allocated on line 6 of Schedule R, Part 3 | 5 | 633,898.89 |
| 6 | Total GST exemption allocated on line 4 of Schedule(s) R-1 | 6 | 0.00 |
| 7 | Total GST exemption allocated to intervivos transfers and direct skips (add lines 2-6) | 7 | 799,566.89 |
| 8 | GST exemption available to allocate to trusts and section 2032A interests (subtract line 7 from line 1) | 8 | 200,433.11 |
| 9 | Allocation of GST exemption to trusts (as defined for GST tax purposes): | | |

| A<br>Name of trust | B<br>Trust's EIN<br>(if any) | C<br>GST exemption allocated on lines 2-6, above (see instructions) | D<br>Additional GST exemption allocated (see instructions) | E<br>Trust's inclusion ratio (optional -- see instructions) |
|---|---|---|---|---|
| | | | | |
| **9D Total.** May not exceed line 8, above | | 9D | 0.00 | |

| | | | |
|---|---|---|---|
| 10 | GST exemption available to allocate to section 2032A interests received by individual beneficiaries (subtract line 9D from line 8). You must attach special use allocation schedule (see instructions) | 10 | |

(The instructions to Schedule R are in the separate instructions.)



CAA 7 70SR1 NTF 9818

Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

**Part 2. --** Direct Skips Where the Property Interests Transferred Bear the GST Tax on the Direct Skips

| Name of skip person | Description of property interest transferred | Estate tax value |
|---|---|---|
| None | | |

| | | | |
|---|---|---|---|
| 1 | Total estate tax values of all property interests listed above | 1 | 0.00 |
| 2 | Estate taxes, state death taxes, and other charges borne by the property interests listed above | 2 | 0.00 |
| 3 | GST taxes borne by the property interests listed above but imposed on direct skips other than those shown on this Part 2 (see instructions) | 3 | 0.00 |
| 4 | Total fixed taxes and other charges (add lines 2 and 3) | 4 | 0.00 |
| 5 | Total tentative maximum direct skips (subtract line 4 from line 1) | 5 | 0.00 |
| 6 | GST exemption allocated | 6 | 0.00 |
| 7 | Subtract line 6 from line 5 | 7 | 0.00 |
| 8 | GST tax due (divide line 7 by 2.818182) | 8 | 0.00 |
| 9 | Enter the amount from line 8 of Schedule R, Part 3 | 9 | 0.00 |
| 10 | **Total GST taxes payable by the estate** (add lines 8 and 9). Enter here and on line 22 of the Tax Computation on page 1 | 10 | 0.00 |



CAA 7 70SR2 NTF 9819
Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

**Estate of:** RANKIN M. SMITH, SR. 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

**Part 3. --** Direct Skips Where the Property Interests Transferred Do Not Bear the GST Tax on the Direct Skips

| Name of skip person | Description of property interest transferred | Estate tax value |
|---|---|---|
| RANKIN M. SMITH, III | 52 SHS THE FIVE SMITHS, INC., CLASS A COMMON STOCK | 106,184.80 |
| RANKIN M. SMITH, III | CASH | 125,000.00 |
| REBECCA W. SMITH | 52 SHS THE FIVE SMITHS, INC., CLASS A COMMON STOCK | 106,184.80 |
| REBECCA W. SMITH | CASH | 125,000.00 |
| KATHERINE C. SMITH | 28 SHS THE FIVE SMITHS, INC., CLASS A COMMON STOCK | 57,176.43 |
| SARAH B.SMITH | 28 SHS THE FIVE SMITHS, INC., CLASS A COMMON STOCK | 57,176.43 |
| VIRGIL R. WALRAVEN | 28 SHS THE FIVE SMITHS, INC., CLASS A COMMON STOCK | 57,176.43 |

| | | | |
|---|---|---|---|
| 1 | Total estate tax values of all property interests listed above | 1 | 633,898.89 |
| 2 | Estate taxes, state death taxes, and other charges borne by the property interests listed above | 2 | 0.00 |
| 3 | GST taxes borne by the property interests listed above but imposed on direct skips other than those shown on this Part 3 (see instructions) | 3 | 0.00 |
| 4 | Total fixed taxes and other charges (add lines 2 and 3) | 4 | 0.00 |
| 5 | Total tentative maximum direct skips (subtract line 4 from line 1) | 5 | 633,898.89 |
| 6 | GST exemption allocated | 6 | 633,898.89 |
| 7 | Subtract line 6 from line 5 | 7 | 0.00 |
| 8 | GST tax due (multiply line 7 by .55). Enter here and on Schedule R, Part 2, line 9 | 8 | 0.00 |



Copyright Forms Software Only, 1997 Nelco, Inc.

**Estate of:** RANKIN M. SMITH, SR. 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

## SCHEDULE S -- Increased Estate Tax on Excess Retirement Accumulations

**(Under section 4980A(d) of the Internal Revenue Code)**

**Part I** **Tax Computation**

1 Check this box if a section 4980A(d)(5) spousal election is being made. . . . ▶ ☐
You must attach the statement described in the instructions.

2 Enter the name and employer identification number (EIN) of each qualified employer plan and individual retirement account in which the decedent had an interest at the time of death:

| | Name | EIN |
|---|---|---|
| Plan #1 | | |
| Plan #2 | | |
| Plan #3 | | |
| IRA #1 | | |
| IRA #2 | | |
| IRA #3 | | |

| | A Plan #1 | B Plan #2 | C Plan #3 | D All IRAs |
|---|---|---|---|---|
| 3 Value of decedent's interest | | | | |
| 4 Amounts rolled over after death | | | | |
| 5 Total value (add lines 3 and 4) | | | | |
| 6 Amounts payable to certain alternate payees (see page 20 of the instructions) | | | | |
| 7 Decedent's investment in the contract under section 72(f) | | | | |
| 8 Excess life insurance amount | | | | |
| 9 Decedent's interest as a beneficiary | | | | |
| 10 Total reductions in value (add lines 6, 7, 8, and 9) | | | | |
| 11 Net value of decedent's interest (subtract line 10 from line 5) | | | | |

| | | | | |
|---|---|---|---|---|
| 12 Decedent's aggregate interest in all plans and IRAs (add columns A-D of line 11) ▶ | | | 12 | 0.00 |
| 13 Present value of hypothetical life annuity (from Part III, line 4) | 13 | 0.00 | | |
| 14 Remaining unused grandfather amount (from Part II, line 4) | 14 | 0.00 | | |
| 15 Enter the greater of line 13 or line 14 | | | 15 | 0.00 |
| 16 Excess retirement accumulation (subtract line 15 from line 12) | | | 16 | 0.00 |
| 17 Increased estate tax (multiply line 16 by 15%). Enter here and on line 23 of the Tax Computation on page 1 | | | 17 | 0.00 |

(The instructions to Schedule S are in the separate instructions.)



Copyright Forms Software Only, 1997 Nelco, Inc.

Form 706 (Rev. 4-97)

## Part II Grandfather Election

| | | | |
|---|---|---|---|
| 1 | Was a grandfather election made on a previously filed Form 5329? ▶ ☐ Yes ☐ No<br>If "Yes," complete lines 2-4 below. **You may not make or revoke the grandfather election after the due date (with extensions) for filing the decedent's 1988 income tax return.** If "No," enter -0- on line 4 and skip to Part III. | | |
| 2 | Initial grandfather amount | 2 | |
| 3 | Total amount previously recovered | 3 | |
| 4 | Remaining unused grandfather amount (subtract line 3 from line 2). Enter here and on Part I, line 14, on page 38 | 4 | 0.00 |

## Part III Computation of Hypothetical Life Annuity

| | | | |
|---|---|---|---|
| 1 | Decedent's attained age at date of death (in whole years, rounded down) | 1 | 71 |
| 2 | Applicable annual annuity amount (see page 21 of the instructions) | 2 | |
| 3 | Present value multiplier (see page 21 of the instructions) | 3 | 0.000000 |
| 4 | Present value of hypothetical life annuity (multiply line 2 by line 3). Enter here and on Part I, line 13, on page 38 | 4 | 0.00 |



CAA 7 70SS2 NTF 9823
Copyright Forms Software Only, 1997 Nelco, Inc.

**[Estate of Rankin M. Smith, Sr.**
**Attachments to Form 706, United States Estate Tax Return**

- Plantation Home including 10.283 acres, located in Thomas County, Georgia, Appraisal Report by Almand and Company
- Condominium Unit 297, located at 1000 Beach Road, Vero Beach, Florida, Appraisal
- John's Island, Florida, club equity membership, Appraisal
- 12,424 Shares The Five Smiths, Inc., Class A Common Stock, Valuation Report
- 1,217.50 SHS Mount Vernon Surety Co., Valuation Memorandum
- All Forms 712 for insurance policies reported on Form 706
- 55% interest in Lotasmiths, Ltd., Partnership, Valuation Report
- 55.56% interest in Madison County Partnership, Valuation Report
- 50.5% interest in Tops, Ltd., Partnership, Valuation Report
- 33.3% interest in Hall County Partnership, Valuation Memorandum
- Balance Sheet of Falcons Nest, I, Ltd. and Appraisal Report of Falcons Nest I, Ltd. assets
- 1% general interest and 4% limited interest in Falcons Nest II, Ltd., Partnership, Valuation Report
- 1% interest in Smith Investments, Ltd., Partnership, Valuation Report
- Furniture and Furnishings located at Seminole Plantation, Appraisal
- 30 1-ounce South African Krugerrands and other currency, Appraisal
- Condominium Unit 297, 1000 Beach Road, Vero Beach, Florida, Appraisal]

**[ATTACHMENTS NOT INCLUDED]**

**SunTrust Bank, Atlanta**
Post Office Box 4655
Atlanta, GA 30302-4655
Tel (404) 588-7444
Fax (404) 230-1321

**David M. Langford**
Vice President

SUNTRUST

July 26, 1999

Internal Revenue Service
Atlanta, Ga. 39901

Gentlemen:

RE: ESTATE OF RANKIN M. SMITH, SR.
SSN: 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
DATE OF DEATH: 10-26-97
AMENDED FORM 706 FILED PURSUANT TO TREASURY
REGULATION SECTION 301.9100-2

I enclose an amended Form 706, U.S. Estate (and Generation-Skipping Transfer) Tax Return, for the above estate. This return, which is being filed under an extension of time granted by Treasury Regulation 301.9100-2, has been amended to reflect a special allocation of a portion of the decedent's unallocated generation-skipping tax exemption. The only schedule of this amended return which differs from the original return is Schedule R. There is no change to the estate tax liability.

Please associate this amended return with the original Form 706.

Thank you.

Sincerely,

David M. Langford
/encl.

Form 706 (Rev. 4-97) ESTATE OF RA... .N M. SMITH

# SCHEDULE R -- Generation-Skipping Transfer Tax

**Note:** To avoid application of the deemed allocation rules, Form 706 and Schedule R should be filed to allocate the GST exemption to trusts that may later have taxable terminations or distributions under section 2612 even if the form is not required to be filed to report estate or GST tax.

The GST tax is imposed on taxable transfers of interests in property located **outside the United States** as well as property located inside the United States.

See instructions beginning on page 17.

**Part 1. --** GST Exemption Reconciliation (Section 2631) and Section 2652(a)(3) (Special QTIP) Election

You no longer need to check a box to make a section 2652(a)(3) (special QTIP) election. If you list qualifying property in Part 1, line 9, below, you will be considered to have made this election. See page 19 of the separate instructions for details.

| | | | |
|---|---|---|---|
| 1 | Maximum allowable GST exemption | 1 | $1,000,000 |
| 2 | Total GST exemption allocated by the decedent against decedent's lifetime transfers | 2 | 85,668.00 |
| 3 | Total GST exemption allocated by the executor, using Form 709, against decedent's lifetime transfers | 3 | 80,000.00 |
| 4 | GST exemption allocated on line 6 of Schedule R, Part 2 | 4 | 0.00 |
| 5 | GST exemption allocated on line 6 of Schedule R, Part 3 | 5 | 633,898.89 |
| 6 | Total GST exemption allocated on line 4 of Schedule(s) R-1 | 6 | 0.00 |
| 7 | Total GST exemption allocated to intervivos transfers and direct skips (add lines 2-6) | 7 | 799,566.89 |
| 8 | GST exemption available to allocate to trusts and section 2032A interests (subtract line 7 from line 1) | 8 | 200,433.11 |
| 9 | Allocation of GST exemption to trusts (as defined for GST tax purposes): | | |

| A<br>Name of trust | B<br>Trust's EIN (if any) | C<br>GST exemption allocated on lines 2-6, above (see instructions) | D<br>Additional GST exemption allocated (see instructions) | E<br>Trust's inclusion ratio (optional -- see instructions) |
|---|---|---|---|---|
| THE CHARLOTTE T. SMITH 1993 FAMILY TR B | | 165,668.00 | 150,000.00 * | |

*IN ADDITION, THE EXECUTOR ELECTS TO ALLOCATE SO MUCH OF THE REMAINING UNALLOCATED EXEMPTION AMOUNT, UP TO AND INCLUDING $50,433, AS IS IN EXCESS OF THE AMOUNT OF EXEMPTION NEEDED TO REDUCE TO ZERO THE GENERATION-SKIPPING TRANSFER TAX IMPOSED ON THE TRANSFERS RETURNED AT SCHEDULE R, PART 3, BASED ON VALUES AS FINALLY DETERMINED.

| | | | |
|---|---|---|---|
| 9D | **Total.** May not exceed line 8, above | 9D | 150,000.00 |
| 10 | GST exemption available to allocate to section 2032A interests received by individual beneficiaries (subtract line 9D from line 8). You must attach special use allocation schedule (see instructions) | 10 | |

(The instructions to Schedule R are in the separate instructions.)



CAA 7 70SR1 NTF 9818

Copyright Forms Software Only, 1997 Nelco, Inc.

# SEGREGATION AND SEVERANCE OF THE CHARLOTTE TOPPING SMITH 1993 FAMILY TRUST DATED DECEMBER 9, 1993

WHEREAS, the Charlotte Topping Smith 1993 Family Trust (the "Trust") was created by Charlotte Topping Smith (the "Grantor") on December 9, 1993; and

WHEREAS, the Grantor made gifts to the Trust in each of the years 1993 - 1998; and

WHEREAS, the Grantor's husband, RANKIN M. SMITH, consented to have the gifts made in each of the years 1993 - 1997 treated as having been made one-half (½) by him, causing him to be the transferor with respect to such portion of such gifts for purposes of the generation-skipping transfer tax (the "GST"); and

WHEREAS, Section 2654(b) of the Internal Revenue Code of 1986, as amended (the "Code") and Section 26.2654-1(a)(2) of the Treasury Regulations promulgated under Code Section 2654 (the "Regulations") provide that if there is more than one transferor with respect to a trust, the portions of the trust attributable to different transferors are treated as separate trusts for purposes of the GST; and

WHEREAS, Section 26.2654-1(a)(3) of the Regulations provides that a single trust treated as separate trusts because the trust has more than one transferor may be divided at any time into separate trusts to reflect separate trust treatment for purposes of the GST; and

WHEREAS, the Trustees of the Trust have the power, pursuant to Paragraph H of Article V, to divide the Trust into two (2) separate trusts to reflect the separate treatment for purposes of the GST.

NOW THEREFORE, JAMES A. TOPPING, JOHN A. TOPPING, LEIGH TOPPING BRADY and THOMAS S. TOPPING, as the Trustees of the Trust, hereby divide the Trust into two (2) separate trusts, to be known generally as (i) the "Charlotte Topping Smith 1993 Family Trust A," which shall consist of the portion of the Trust as to which Charlotte Topping Smith is the transferor for purposes of the GST, and (ii) the "Charlotte Topping Smith 1993 Family Trust B," which shall consist of the portion of the Trust as to which Rankin M. Smith is the transferor for purposes of the GST. The division of the Trust shall be effected as follows:

1. The Charlotte Topping Smith 1993 Family Trust A shall consist of a fraction of the Trust property, the numerator of which shall be the total gifts of which Charlotte Topping Smith is the transferor and the denominator of which shall be the total of all gifts made to the Trust.

2. The Charlotte Topping Smith 1993 Family Trust B shall consist of a fraction of the Trust property, the numerator of which shall be the total gifts of which Rankin M. Smith is the transferor and the denominator of which shall be the total of all gifts made to the Trust.

3. The Trust will be severed on a fractional basis based on the values of the Trust assets as of December 1, 1998.

4. Each trust created pursuant to this Segregation and Severance shall have identical provisions and shall continue to be governed by and administered in accordance with the terms of the Trust.

This 10th day of December, 1998.

As to JAMES A. TOPPING, as Trustee,
sworn to, signed, sealed and delivered on
this 10th day of December, 1998,
in the presence of:

______________________
Unofficial Witness

______________________ (SEAL)
JAMES A. TOPPING, Trustee

______________________
Notary Public

Notary Public, Gwinnett County, Georgia
My Commission Expires Aug. 4, 2000

My commission expires: ____________

As to JOHN A. TOPPING, as Trustee,
sworn to, signed, sealed and delivered on
this 10th day of December, 1998,
in the presence of:

______________________
Unofficial Witness

______________________ (SEAL)
JOHN A. TOPPING, Trustee

______________________
Notary Public

Notary Public, Gwinnett County, Georgia
My Commission Expires Aug. 4, 2000

My commission expires: ____________

As to LEIGH TOPPING BRADY, as Trustee,
sworn to, signed, sealed and delivered on
this 10th day of December 1998,
in the presence of:

_______________________
Unofficial Witness

_______________________ (SEAL)
LEIGH TOPPING BRADY, Trustee

_______________________
Notary Public

Notary Public, Gwinnett County, Georgia
My Commission Expires Aug. 4, 2000

My commission expires: ____________

As to THOMAS S. TOPPING, as Trustee,
sworn to, signed, sealed and delivered on
this 10th day of December 1998,
in the presence of:

_______________________
Unofficial Witness

_______________________ (SEAL)
THOMAS S. TOPPING, Trustee

_______________________
Notary Public

Notary Public, Gwinnett County, Georgia
My Commission Expires Aug. 4, 2000

My commission expires: ____________

Form **843**
(Rev. January 1997)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*
- *An overpayment of income taxes;*
- *A refund of fuel taxes;*
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see **General Instructions**).*

Please type or print

| | |
|---|---|
| Name of claimant<br>ESTATE OF RANKIN M. SMITH, SR. | Your social security number<br>252 : 36 : 6181 |
| Address (number, street, and room or suite no.)<br>C/O SUNTRUST BANK, ATLANTA PO BOX 4655, DEPT 251 | Spouse's social security number<br>: : |
| City or town, state, and ZIP code<br>ATLANTA, GA 30302 | Employer identification number<br>58 : 6354904 |
| Name and address shown on return if different from above | Daytime telephone number<br>(404) 588-7444 |

**1** Period—prepare a separate Form 843 for each tax period
From DATE OF DEATH , 19 , to JANUARY 26, , 19 2002

**2** Amount to be refunded or abated
$ 5,478,849.74

**3a** Type of tax, penalty, or addition to tax:
☐ Employment ☒ Estate ☐ Gift ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ▶ ____________

**b** Type of return filed (see instructions):
☒ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

SEE ATTACHED "EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY THE ESTATE OF RANKIN M. SMITH, SR"

COPY

INTERNAL REVENUE SERVICE
W&I - FIELD ASSISTANCE

JAN 25 2002

RECEIVED
ATLANTA, GA 30341

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

SunTrust Bank, Co-Executor
By Thomas A. Thomas Jr. First Vice President — See attached pages for individual co-executors signatures & declarations — 1/25/2002

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

Signature Date

For Paperwork Reduction Act Notice, see separate instructions. Cat. No. 10180R Form **843** (Rev. 1-97)

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

**Form 843 – Claim for Refund and Request for Abatement**

**Estate of Rankin M. Smith, Sr.**
**SSN: 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**
**Date of Death: October 26, 1997**
**c/o SunTrust Bank, Atlanta**
**PO Box 4655 Dept. 251**
**Atlanta, GA 30302**

**EIN: 58-6354904**

**Attachment One**

Additional Executor's Signature

By: [signature]
Taylor W. Smith

Title: Co-Executor

Date: 1/23/02

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

**Form 843 – Claim for Refund and Request for Abatement**

**Estate of Rankin M. Smith, Sr.**
**SSN: 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**
**Date of Death: October 26, 1997**
**c/o SunTrust Bank, Atlanta**
**PO Box 4655 Dept. 251**
**Atlanta, GA 30302**

**EIN: 58-6354904**

**Attachment Two**

Additional Executor's Signature

By: [signature]
Rankin M. Smith, Jr.

Title: Co-Executor

Date: 1-23-02

# EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR.

## TABLE OF CONTENTS


A. Overview: Grounds for Taxpayer's Claim for Refund and Supporting Facts ....................1

1. Deductions Pursuant to Section 2053 of the Internal Revenue Code ....................2
2. Corrected Valuation of the Common Stock of The Five Smiths, Inc. ....................4
3. Law and Analysis ....................4
    - a. Deductions Allowed Pursuant to Section 2053 of the Internal Revenue Code .......... 4
    - b. Corrected Valuation of the Common Stock of The Five Smiths, Inc. .......... 8
4. Summary ....................9

B. State Death Tax Credit ....................10

C. Alternative Grounds ....................10

D. Calculation of Federal Estate Tax To Be Refunded ....................11

# EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR.

## LISTING OF CHARTS


Chart One Funeral and Administration Expenses Claimed on Form 706 ........................3

Chart Two Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706 ........................................4

Chart Three Summary of Changes to the Taxable Estate ..................................................9

Chart Four State Death Tax Credit.......................................................................10

Chart Five Calculation of Federal Estate Tax To Be Refunded .....................................11


## LISTING OF EXHIBITS


Exhibit A Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS PREVIOUSLY FILED

Exhibit B Schedule R of Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS PREVIOUSLY AMENDED

Exhibit C Supplemental Report Prepared by Standard & Poor's

Exhibit D Supplemental Report Prepared by Standard & Poor's

Exhibit E Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS AMENDED (WITH SCHEDULES B AND J ONLY)

# EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR. ATTACHED TO AND MADE A PART OF FORM 843[1]

## A. Overview: Grounds for Taxpayer's Claim for Refund and Supporting Facts

Rankin M. Smith, Sr. died on October 26, 1997. The Estate of Rankin M. Smith, Sr. (the "Estate") timely filed Form 706, United States Estate (and Generation Skipping Transfer) Tax Return, on January 26, 1999, pursuant to extension ("Form 706"). In addition, the Estate chose to defer the payment of its estate tax obligation, and accordingly elected to pay its estate tax obligation in ten (10) equal annual installments under Section 6166 of the Internal Revenue Code (the "Code"). A copy of Form 706 is attached as Exhibit A. Form 706 was subsequently amended to reflect a special allocation of a portion of Mr. Smith's unallocated generation-skipping tax exemption, which resulted in changes to Schedule R to Form 706 only. A copy of Schedule R as amended is attached as Exhibit B.

The Estate claims a reduction of estate taxes due and owing pursuant to Code Section 6166 in the amount of $5,478,849.74, or such greater amount as may be determined based upon the facts, circumstances and legal principles set forth herein, plus interest allowable by law and any other amount that can be legally reduced or refunded. This claim is attributable to (1) deductions pursuant to Code Section 2053 of estate administration expenses in addition to the estate administration expenses claimed on Form 706, as filed, and (2) the corrected valuation of the 12,424 shares of Class A common stock in The Five Smiths, Inc. (the "Company")[2] held by the

---

[1] Representatives of the Internal Revenue Service have informed us that we should expect to receive in the near future a notice of deficiency pertaining to the estate tax liability of the Estate of Rankin M. Smith, Sr. However, as of January 24, 2002, no notice of deficiency had been received.

[2] For purposes of Form 706, the Estate's Company stock was valued as Class A common stock. However, upon Mr. Smith's demise, all shares of Class A common stock converted into shares of Class B common stock, and for purposes

Estate. The claimed increase in estate administration expenses takes into account both (i) administration expenses paid or incurred through January 17, 2002; and (ii) administration expenses estimated to be incurred from January 18, 2002, until administration of the Estate is completed. The claimed reduction in estate taxes also takes into account the impact that these changes to the Form 706 have on the amount of the state death tax credit and on the amount of the interest deduction permitted for interest payments made on estate taxes deferred under Code Section 6166.

The Estate also protectively claims a reduction of estate taxes due and owing pursuant to Code Section 6166 (and/or such other Code Section or sections which may be applicable), plus interest allowable by law and any other amounts that can be legally reduced or refunded, due to administration expenses paid or incurred or estimated at the time of resolution of this claim for refund that are in addition to the amounts stated herein, and for administration expenses that are deductible only when paid.

The facts and legal authorities in support of the reduction of estate taxes due and owing pursuant to Code Section 6166 are set forth below.

**1. <u>Deductions Pursuant to Section 2053 of the Internal Revenue Code</u>**

On Form 706, the Estate claimed a deduction for funeral expenses and administration expenses totaling $2,976,820.89. These expenses included administration expenses paid or incurred at the time Form 706 was filed and estimates of additional administration expenses to be paid or incurred in the future. The amounts deducted on Form 706 are set forth on Schedule J and summarized on the following Chart One:

---

of this refund claim the Estate's Company stock is properly valued as Class B common stock; Code Sections 2703 and 2704 do not change this result.

| Chart One – Funeral and Administration Expenses Claimed on Form 706 | | |
|---|---|---|
| **Description** | **Amount Paid or Incurred** | **Amount Estimated Through Completion of Administration** |
| Funeral Expenses | $ 25,063.82 | $ 0 |
| Executors' Commissions | 0 | 233,000.00 |
| Attorneys' Fees | 1,110,916.29 | 600,000.00 |
| Accountants' Fees | 0 | 0 |
| Appraisal Fees | 97,071.74 | 0 |
| Interest Expense | 714,545.85 | 0 |
| Other Miscellaneous Expenses | 196,223.19 | 0 |
| **Totals** | **$2,143,820.89** | **$833,000.00** |

**Grand Total of Funeral and Administration Expenses Claimed on Form 706: $2,976,820.89**

Through January 17, 2002, the Estate has paid or incurred administration expenses that in some cases are already in excess of the estimates of certain categories of expenses listed on Form 706. In addition to the amounts paid or incurred through January 17, 2002, the Estate will necessarily pay or incur additional administration expenses during the period starting on January 18, 2002, and ending at the time the Estate completes its administration and distributes all remaining assets to the Estate's beneficiaries. These administration expenses include additional attorneys' fees (including those related to a will contest), additional appraisal fees, additional accounting fees, additional interest expense (including interest on estate tax deferred under Code Section 6166) and other expenses related to the administration of the estate and the preservation of its property.

The amounts paid or incurred through January 17, 2002, and the amounts the Estate estimates will be paid or incurred in the future exceed the amounts claimed on Form 706 (paid and estimated) by a total amount of $7,360,733.28. The difference between the amounts paid or incurred and the amounts estimated to be paid or incurred in the future in each category versus the amounts claimed on Form 706 are set forth on the following Chart Two:

| Chart Two – Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706 | | |
|---|---|---|
| **Description** | **Additional Amount Paid or Incurred Through January 17, 2002** | **Additional Amount Estimated Through Completion of Administration** |
| Executors' Commissions | $ 0 | $ 738,280.88 |
| Attorneys' Fees | 3,115,531.39 | 150,000.00[3] |
| Accountants' Fees | 0 | 50,000.00 |
| Appraisal Fees | 0 | 50,000.00 |
| Other Expenses | 0 | 25,000.00 |
| Interest Expenses | 3,231,921.01[4] | *undetermined*[5] |
| **Totals** | **$6,347,452.40** | **$1,013,280.88** |

**Grand Total of Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706: $7,360,733.28**

These additional estate administration expenses in Chart Two have not previously been claimed as deductions under Code Section 2053, and they have not been allowed as deductions by the Internal Revenue Service. This refund claim seeks the allowance of deductions for expenses paid or incurred as of January 17, 2002, as well as those expenses reasonably estimated to paid or incurred upon or before the termination of the Estate's administration.

2. **Corrected Valuation of the Common Stock of The Five Smiths, Inc.**

On Form 706, the Estate valued the 12,424 shares of Class A common stock in the Company included in the Estate (hereinafter the "Stock"), as of October 26, 1997, at $25,369,999.95. However, based on supplemental reports, which are incorporated herein by

---

[3] This amount is in addition to the $600,000 of estimated attorneys' fees listed on Form 706. Thus, the total amount of estimated post-January 17, 2002 attorneys' fees is $750,000. Similarly, the total amount of estimated post-January 17, 2002 executors' commissions is $971,280.88 (= $233,000 + $738,280.88).

[4] This amount reflects an increase in interest paid or incurred on a SunTrust Bank line of credit and interest paid or incurred on estate taxes deferred under Code Section 6166. For ease of computation, the interest on the line of credit has been computed through February 1, 2002, and the interest on the deferred estate taxes has been computed through February 28, 2002. We note that the amount of the interest on the deferred estate tax has been calculated based on the estate tax asserted to be due under this claim for refund. The Estate protectively claims a deduction for the full amount of the interest on the amount of the deferred estate tax that is ultimately determined to be appropriate based on a final determination of the amount of the estate taxes deferred by the Estate.

reference, prepared by Standard & Poor's, and attached hereto as Exhibit C (which addresses the value of the Stock) and Exhibit D (which addresses the application of a key man discount in valuing the Company), the Estate now files this claim for refund to reflect the value of the Stock as of October 26, 1997 (valued as 12,424 shares of Class B common stock, since all shares of Class A common stock owned by Mr. Smith were converted into shares of Class B common stock on a one for one basis upon Mr. Smith's demise), at $20,000,000.00. This $5,369,999.95 reduction in the value of the Stock included in the Estate reduces the value of Mr. Smith's gross estate and taxable estate by the same amount, and this refund claim seeks a reduction in the amount of taxes and interest due and owing as a result of this reduction in value.

3. **Law and Analysis**

a. **Deductions Allowed Pursuant to Section 2053 of the Internal Revenue Code**

The Estate claims a reduction of estate taxes attributable to the deduction of administration expenses paid or incurred and estimated as set forth in Chart Two above. The estate tax is based upon the amount of the "taxable estate." Code §2001(a). In computing the taxable estate, the Code permits an estate to deduct administration expenses. Code §2053.

Section 2053 of the Code provides as follows:

> *(a) GENERAL RULE. – For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts –*
>
> *(1) for funeral expenses;*
>
> *(2) for administration expenses;*
>
> *(3) for claims against the estate, and*

[5] The amount of any additional interest expenses deductible as administration expenses shall be determined as such amounts are incurred or paid, and are intended to be covered by the protective refund claim contained herein.

*(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,*

*as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.*

The relevant portions of the Treasury Regulations provide as follows:

Section 20.2053-1. Deductions for expenses, indebtedness, and taxes; in general

*(a) General Rule. In determining the taxable estate of a decedent who was a citizen or resident of the United States at the time of his death, there are allowed as deductions under section 2053(a) and (b) amounts falling within the following two categories (subject to the limitations contained in this section...):*

*(1) First category. Amounts which are payable out of property subject to claims and which are allowable by the law of the jurisdiction, whether within or without the United States, under which the estate is being administered for--*

*(i) Funeral expenses;*

*(ii) Administration expenses;...*

*As used in this subparagraph, the phrase "allowable by the law of the jurisdiction" means allowable by the law governing the administration of decedents' estates...*

Section 20.2053-3. Deduction for expenses of administering estate

*(a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" of the first category... are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. ...Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include:*

*(1) Executor's commission;*

*(2) Attorney's fee; and*

*(3) Miscellaneous expenses.*

*(d) Miscellaneous administration expenses. (1)Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. Expenses for preserving and caring for the property may not include outlays for additions or*

> *improvements; nor will such expenses be allowed for a longer period than the executor is reasonably required to retain the property.*

Where the final amount of estate administration expenses is not known, and not ascertainable prior to the expiration of the statute of limitations provided by Code Section 6511, Section 2053 of the Code permits an estate to deduct an estimate of the amount of such administration expenses that it expects to incur prior to the final distribution and winding up of the estate. The Treasury Regulations under Code Section 2053 specifically recognize the allowance of a deduction for estimated administration expenses. *See,* Treas. Reg. §§20.2053-1(b)(3); -3(c)(1).

The Estate has reasonably estimated the administration expenses set forth in this claim, and such administration expenses will likely be incurred and paid. The Estate's estimates are based upon the best information and estimates available, but the amounts could be subject to increase depending upon circumstances not currently foreseen. The actual administration expenses paid or incurred up to the date of final distribution of the Estate's assets, even if they exceed the reasonably estimated amount of such expenses, are allowed as a deduction under Code Section 2053. The Estate hereby specifically requests that the amount of its estate tax obligation due and owing pursuant to Code Section 6166 or any other Code section be computed by allowing as a deduction all administration expenses actually paid or incurred prior to the final winding up of the Estate. *See,* Treas. Reg. §20.2053-1(b)(3) (refund allowed where the amount finally determined exceeds the estimated amount of administration expenses).

The administration expenses claimed herein are (i) allowable under the laws of the State of Georgia, (ii) have been or will be actually and necessarily incurred in the administration of the Estate within the meaning of Treasury Regulation section 20.2053-3(a),[6] (iii) have been paid or

[6] The Estate reserves the right to assert that the requirements set forth in Treasury Regulation section 20.2053-3 or any other Treasury Regulation or authority for determining whether administration expenses are allowable as a deduction in

incurred or properly estimated, and (iv) have been timely claimed as a deduction by the Estate. Such administration expenses are allowable as a deduction in determining the taxable estate. Accordingly, the administration expenses are allowable as a deduction pursuant to Code Section 2053 in computing the Estate's final estate tax liability under Code Section 2001.

**b. <u>Corrected Valuation of the Common Stock of The Five Smiths, Inc.</u>**

Code Section 2001(a) provides for a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. For Federal estate tax purposes, property includable in a decedent's gross estate is generally included at its fair market value on the date of the decedent's death. Code §2031(a); Treas. Regs. §20.2031-1(b). Fair market value is defined as the price that a willing buyer would pay a willing seller, both persons having reasonable knowledge of all relevant facts and neither person being under a compulsion to buy or to sell. Treas. Regs. §20.2031-1(b). The willing buyer and the willing seller are hypothetical persons, instead of specific individuals and entities, and the characteristics of these imaginary persons are not necessarily the same as the personal characteristics of the actual seller or a particular buyer. *Estate of Bright v. United States*, 658 F.2d 999, 1005-1006 (5th Cir. 1981).

Section 2031 of the Code provides as follows:

> *(a) GENERAL RULE--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.*

The relevant portions of the Treasury Regulations provide as follows:

Section 20.2031-1. <u>*...valuation of property*</u>

> *(b) <u>Valuation of property in general</u>. The value of every item of property includible in a decedent's gross estate...is its fair market value at the time of the decedent's death... The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts... The value is generally to be*

determining the Estate's taxable estate are invalid if, and to the extent that, they are interpreted as imposing a requirement for deductibility in addition to the requirements enumerated as (i), (iii), and (iv) in the text.

*determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of property. For example, in the case of shares of stock or bonds, such unit of property is generally a share of stock or a bond...All relevant facts and elements of value as of the applicable valuation date shall be considered in every case.*

The Estate asserts that the "Indicated Value of Class B Shares" as calculated on page 35 of the supplemental report attached hereto as Exhibit C reflects the correct fair market value of the Stock as of October 26, 1997, namely, $20,000,000.00. For purposes of the report, fair market value was properly defined as the price at which such stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts.

Moreover, the report was prepared by qualified and recognized valuation experts and gave due consideration to all of the elements required to be considered in stock valuations for federal tax purposes. This refund claim to reduce the amount of taxes and interest due as a result of the reduction in the previously reported value of the Stock should be granted in order to correctly reflect the fair market value of the Stock.

**4. Summary**

The Estate claims a reduced Taxable Estate of $12,730,733.23 based upon (i) the decrease in value of the 12,424 shares of common stock of the Company from $25,369,999.95 to $20,000,000.00, as set forth in Chart Three below, and (ii) the increased deductions in administration expenses in the amounts set forth in Chart Three below (or such other amounts as paid by the Estate in excess of these amounts).

| Chart Three – Summary of Changes to the Taxable Estate | |
|---|---|
| **Description** | **Change in Amount Claimed** |
| Difference between Corrected Stock Value and Value Reported on Form 706 | $5,369,999.95 |
| Executors' Commissions | 738,280.88 |
| Attorneys' Fees | 3,265,531.39 |

| | |
|---|---|
| Accountants' Fees | 50,000.00 |
| Appraisal Fees | 50,000.00 |
| Other Expenses | 25,000.00 |
| Interest Expenses | 3,231,921.01[7] |
| **Total Reduction in Taxable Estate** | **$12,730,733.23** |

## B. State Death Tax Credit

On Form 706, the Estate claimed a state death tax credit of $3,096,940.16. The reduced taxable estate, in accordance with Chart Three above, reduces the amount of the estate taxes payable to the States of Georgia and Florida and reduces the amount of the Estate's state death tax credit. The Estate protectively claims the full amount of the state death tax credit that is ultimately determined to be appropriate based on a final determination of the amount of the Estate's taxable estate.

| **Chart Four – State Death Tax Credit** | |
|---|---|
| **Description** | **Amount Of Credit** |
| State Death Taxes Payable as a Result of Positions | $1,061,161.71 |
| **Total Additional (Lesser) State Death Tax Credit Claimed** | **($2,035,778.45)** |

## C. Alternative Grounds

The estate administration expenses paid or incurred by the Estate, including those that are reasonably estimated, are allowed as a deduction under Section 2053 of the Code. The estate administration expenses claimed herein, including estimated expenses, have been necessarily incurred in the process of administering the Estate, and the administration of the Estate has not been unduly prolonged. Accordingly, the claimed deductible expenses meet all of the requirements of the Code, the Treasury Regulations and the relevant case law and Internal Revenue Service

[7] See also footnote 5, *supra.*

rulings in this area. Accordingly, the value of the decedent's estate need be reduced to reflect these expenses.

In the alternative, to the extent that any of the claimed administration expenses are not allowed as deductible estate administration expenses, such amounts are properly treated as either liabilities of the Estate or claims against the Estate that are deductible under Code Section 2053 or other applicable provisions of law.

## D. Calculation of Federal Estate Tax To Be Refunded

Chart Five below shows the calculation of the Federal estate tax decrease claimed on Form 843. As corrected per Form 843, the "Total Gross Estate" on Chart Five includes (i) the Stock at a value of $20,000,000.00 instead of the value shown of Form 706 as filed, and (ii) "Funeral and Administration Expenses" of $2,976,820.89 reflected on Form 706 as filed, plus $7,360,733.28 of additional administration expenses as set forth in Chart Two.

**Chart Five – Calculation of Federal Estate Tax To Be Refunded**

| Description | Shown on Form 706 | As Corrected Per Form 843 |
|---|---|---|
| Total Gross Estate | $ 36,151,175.12 | $ 30,781,175.17 |
| Funeral and Administration Expenses | 2,976,820.89 | 10,337,554.17 |
| Other Allowable Deductions | 10,485,978.20 | 10,485,978.20 |
| Taxable Estate | 22,688,376.03 | 9,957,642.80 |
| Post-1976 Adjusted Taxable Gifts | 827,859.00 | 827,859.00 |
| Subtotal (Taxable Estate + Post-1976 Gifts) | 23,516,235.03 | 10,785,501.80 |
| Total Tentative Tax | 13,126,729.27 | 5,612,101.08 |
| Aggregate Post-1976 Gift Taxes Payable | 86,223.69 | 86,223.69 |
| Gross Estate Tax | 13,040,505.58 | 5,525,877.39 |
| Unified Credit Against Estate Tax | 192,800.00 | 192,800,00 |
| Subtotal | 12,847,705.58 | 5,333,077.39 |
| Credit For State Death Taxes | 3,096,940.16 | 1,061,161.71 |
| Net Estate Tax Payable | 9,750,765.42 | 4,271,915.68 |
| **Form 843 Claim for Refund Requested** | N/A | **$ 5,478,849.74** |

For additional detail regarding the computation of the refund amount, see attached Exhibit E showing the recalculated gross estate, taxable estate, and estate tax.

# [EXPLANATION OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES PAID BY AND/OR DUE AND OWING FROM THE ESTATE OF RANKIN M. SMITH, SR.]

## [EXHIBITS NOT INCLUDED]

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
401 West Peachtree Street NW
Mail Stop 634-D
Atlanta, GA 30308-3539

**SMALL BUSINESS/SELF-EMPLOYED DIVISION**

**Date: January 25, 2002**

**Estate of Rankin M. Smith, Sr. Deceased**
**Taylor W. Smith, Executor**
**c/o Sun Trust Bank, Atlanta**
**P.O. Box 4655, Dept 251**
**Atlanta, GA 30302**

**Social Security Number**
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V
**Date of Death:**
October 26, 1997
**Notice of Deficiency Dated:**
January 25, 2002
**Person to Contact:**
Analisa Brown 58/08056
**Contact Telephone Number:**
404 338-8651
**Last Day to File a Petition with the United States Tax Court:** April 25, 2002

We are re-issuing this Statutory Notice of Deficiency to correct problems noted in the Statutory Notice of Deficiency dated January 24, 2002. However, the tax deficiency amount remains correct as shown in the "Notice of Deficiency Waiver".

A description of the problems and the underlying corrections are noted as follows:
Procedural Error - Notice of Deficiency
The "Last Day to File a Petition with the United States Tax Court" was erroneously stated as May 24, 2002. This date has been changed to **April 25, 2002**, to properly reflect 90 days from the date of this Statutory Notice (dated January 25, 2002).

Secondly, Line 14 on the "Computation of Estate Tax Deficiency " attached to the Statutory Notice of Deficiency contained a typographical error, misstating the "additional credit for State death taxes". This figure was corrected to show $3, 969,280.00. As a result of this, Line 15, is automatically adjusted to $ 9, 675,120.00.

Sincerely,

Commissioner
By
Bruce R. Thomas
Director , Compliance Area 8
Small Business / Self Employed

Department of the Treasury Internal Revenue Service

Date of This Letter: JAN 25 2002

Estate of Rankin M. Smith, Sr. Deceased
Taylor W. Smith, Executor
c/o Sun Trust Bank, Atlanta
P.O Box 4655, Dept 251
Atlanta, Georgia 30302

Taxpayer Identification Number:
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V
Date of Death:
October 26, 1997
Person to Contact:
Analisa Brown
Telephone Number:
(404)-338-8361 58/08056
Last Day to File a Petition With the United States Tax Court: APR 25 2002

**CERTIFIED MAIL**

Dear Executor:

**NOTICE OF DEFICIENCY**

We have determined that the Estate of Rankin M. Smith, Sr., Deceased, owes $13,644,400 in additional estate taxes plus interest from the due date of the estate tax return. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows the reasons for the deficiency.

If you want to contest this determination in court before making any payment, you have 90 days from the date of this letter to file a petition with the United States Tax Court for a redetermination of the deficiency. You can get a copy of the rules for filing a petition and a petition form you can use by writing to the address below.

United States Tax Court
400 Second Street, NW
Washington, DC 20217

Send the completed petition form, a copy of this letter, and copies of all statements and/or schedules you received with this letter to the Tax Court at the same address above. The Court cannot consider your case if the petition is filed late. The petition is considered timely filed if the postmark date falls within the prescribed 90 day period and the envelope containing the petition is properly addressed with the correct postage.

The 90 day period you have to file a petition with the court is set by law and cannot be extended or suspended. Thus, contacting the Internal Revenue Service (IRS) for more information, or receiving other correspondence from the IRS won't change the period for filing a petition with the Tax Court.

If you decide not to file a petition with the Tax Court, please sign and return the enclosed waiver form. This will permit us to assess the deficiency quickly and can help limit the accumulation of interest.

If you decide not to sign and return the waiver, and you do not file a petition with the Tax Court within the time limit, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter.

**Department of the Treas**                **Internal  enue Service**

Estate of, Rankin M. Smith, Sr., Deceased
SSN: 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V

If you have questions about this letter, you may write to or call the contact person whose name, telephone number, and IRS address are shown on the front of this letter. If you write, please include your telephone number, the best time for us to call you if we need more information, and a copy of this letter to help us identify your account. Keep the original letter for your records. If you prefer to call and the telephone number is outside your local calling area, there will be a long distance charge to you.

The contact person can access your tax information and help you get answers. You also have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the U.S. Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. If you want Taxpayer Advocate assistance, please contact the Taxpayer Advocate for the IRS office that issued this notice of deficiency. See the enclosed Notice 1214, Helpful Contacts for Your "Notice of Deficiency," for Taxpayer Advocate telephone numbers and addresses.

Thank you for your cooperation.

Sincerely,

Charles O. Rossotti
Commissioner
By

Lloyd Braswell
Reviewer

Enclosures:
Explanation of tax changes
Waiver
Notice 1214

Form 4089 Department of the Treasury - Internal Revenue Service
(Rev. January 1983)

**Notice of Deficiency Waiver**

**Name, SSN, and Address of Taxpayer**

**Estate of, Rankin M. Smith, Sr., Deceased**
**Taylor W. Smith, Executor**
**c/o Sun Trust Bank, Atlanta**
**P.O. Box 4655, Dept 251**
**Atlanta, Georgia 30302**

**SSN: 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V**
**D/D: October 26, 1997**

JAN 25 2002

**Kind of Tax** Estate

**Copy to Authorized Representative**

**Deficiency**

We have determined that the Estate of, Rankin M. Smith Sr., deceased owes $13,644,400 in additional estate taxes plus interest from the due date of the estate tax return.

The deficiency of federal estate tax will be assessed either when the taxpayer's written agreement to the deficiency (Form 4089) is received or upon the expiration of 90 days from the date of this notice if a petition is not filed with the United States Tax Court. If evidence of payment of additional state death tax is filed with this office within 90 days of the date on this letter, the deficiency assessed will be limited to the reduced amount set forth in the attached computation.

The basis of the deficiency is explained in the Statement

**See the attached explanation for the above deficiency**

**I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.**

**Authorized Signature** **Date**

**Note:** If you consent to the assessment of the amounts shown in this waiver, please sign and return it in order to limit the accumulation of interest and expedite our bill to you. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor will it extend the time provided by law for either action.

If you later file a claim and the Internal Revenue Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign:**

A person acting in a fiduciary capacity (executor, administrator, trustee), must file Form 56, Notice Concerning Fiduciary Relationship, with this waiver if not previously filed.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this waiver if not previously filed.

**If you decide to waive the 90-day period before assessment, please sign this waiver (Form 4089) and return it. Keep a copy for your records.**

# COMPUTATION OF ESTATE TAX DEFICIENCY

**Estate of Rankin M. Smith, Sr., Deceased**
SSN: 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V
Date of Death: October 26, 1997

| | |
|---|---|
| **Taxable Estate Plus Adjusted Taxable Gifts as Shown in Return as Filed :** | **$ 23,516,235** |
| **Adjustments :** | |
| (a) Schedule B - Stocks & Bonds | 23,315,000 |
| (b) Schedule K - Debts of Decedents | 1,493,000 |
| **Taxable Estate/Adjusted Taxable Gifts as Revised** | **$ 48,324,235** |

************************************

| | | |
|---|---|---|
| 1. | Tentative Tax | $ 26,771,129 |
| 2. | Aggregate Gift Taxes Payable After 12/31/76 | 86,224 |
| 3. | Line 1 - Line 2 = | 26,684,905 |
| 4. | Unified Credit Against Estate Tax | 192,800 |
| 5. | Adjustment to United Credit | -0- |
| 6. | Allowable Unified Credit (Line 4 - Line 5 =) | 192,800 |
| 7. | Line 3 - Line 6 = | 26,492,105 |
| 8. | Credit For State Death Taxes Substantiated | 3,096,940 |
| 9. | Line 7 - Line 8 = | 23,395,165 |
| 10. | Other Credits | -0- |
| 11. | Net Estate Tax | $ 23,395,165 |
| 12. | Transfer Tax Self Assessed On Return as Filed | 9,750,765 |
| **13.** | **Transfer Tax Deficiency (Tax Increase)** | **$ 13,644,400** |
| 14. | Less: Additional Credit for State Death Taxes Allowable, If Substantiated: | 3,969,280 |
| 15. | Potentially Reduced Transfer Tax Deficiency | $ 9,675,120 |

**Estate of Rankin M. Smith, Sr., Deceased**
**Fulton County, GA**

**Statutory Notice Statement**
**Explanation of Adjustments**

(a) It is determined that on the date of the decedent's death the fair market value of the 12,424 shares of Class A common stock identified at Item 11 of Schedule B of the Federal Estate Tax Return was $48,685,000, rather than $25,370,000 as reported.

*Accordingly, the reported sum of the taxable estate plus adjusted taxable gifts is increased by $23,315,000.*

(b) It is determined that on the date of the decedent's death his personal liability as a general partner of Falcons Nest, I. Limited was $2,578,312, rather than $4,071,312 as reported at Item 28 of Schedule K of the Federal Estate Tax Return.

*Accordingly, the reported sum of the taxable estate plus adjusted taxable gifts is increased by $1,493,000.*

(c) The credit for state death taxes is limited to the amount paid. Additional credit will be allowed when payment is documented.

Form **843** (Rev. January 1997) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

OMB No. 1545-0024

▶ **See separate instructions.**

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

- *An overpayment of income taxes;*
- *A refund of* ...
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see **General Instructions**).*

Please type or print

| | |
|---|---|
| Name of claimant<br>**ESTATE OF RANKIN M. SMITH, SR.** | Your social security number<br>**252 : 36 : 6181** |
| Address (number, street, and room or suite no.)<br>**C/O SUNTRUST BANK, ATLANTA P.O. BOX 4655, DEPT. 251** | Spouse's social security number |
| City or town, state, and ZIP code<br>**ATLANTA, GA 30302** | Employer identification number<br>**58 : 6354904** |
| Name and address shown on return if different from above | Daytime telephone number<br>( **404** ) **588-7444** |

**1** Period—prepare a separate Form 843 for each tax period
From **DATE OF DEATH**, 19 , to **AUGUST** 30 , 2002

**2** Amount to be refunded or abated $ **12,591,295***

**3a** Type of tax, penalty, or addition to tax:
☐ Employment ☑ Estate ☐ Gift ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ▶

**b** Type of return filed (see instructions):
☑ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

**SEE ATTACHED "SUMMARY STATEMENT OF GROUNDS IN SUPPORT OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES AND ACCRUED DEFICIENCY INTEREST"**

***This amount represents the amount of federal estate tax to be refunded only. However, this Claim for Refund is filed in order to not only obtain a refund of federal estate taxes, but also to obtain a refund of the accrued deficiency interest paid by taxpayer, along with interest on such amounts as provided by law, and any other amounts legally refundable.**

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

SunTrust Bank, Co-Executor, by
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

See attached pages for signatures and declarations of individual Co-Executors
Signature Date

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

**Form 843 – Claim for Refund and Request for Abatement**

**Estate of Rankin M. Smith, Sr.**
**SSN: 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**
**Date of Death: October 26, 1997**
**c/o SunTrust Bank, Atlanta**
**PO Box 4655 Dept. 251**
**Atlanta, GA 30302**

**EIN: 58-6354904**

**Attachment One**

Additional Executor's Signature

By: ______________________
Taylor W. Smith

Title: Co-Executor

Date: Aug. 22 2002

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

**Form 843 – Claim for Refund and Request for Abatement**

**Estate of Rankin M. Smith, Sr.**
**SSN: 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**
**Date of Death: October 26, 1997**
**c/o SunTrust Bank, Atlanta**
**PO Box 4655 Dept. 251**
**Atlanta, GA 30302**

**EIN: 58-6354904**

**Attachment Two**

Additional Executor's Signature

By: Rankin M. Smith, Jr. [signature]
Rankin M. Smith, Jr.

Title: Co-Executor

Date: 8-27-02

**ESTATE OF RANKIN M. SMITH**
**DECEDENT'S SSN: 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**
**ESTATE'S EIN: 58-6354904**

**SUMMARY STATEMENT OF GROUNDS IN SUPPORT OF CLAIM FOR REFUND OF FEDERAL ESTATE TAXES AND ACCRUED DEFICIENCY INTEREST**

Rankin M. Smith, Sr. ("Mr. Smith") died on October 26, 1997. The Estate of Rankin M. Smith, Sr. (the "Estate") timely filed Form 706, United States Estate (and Generation Skipping Transfer) Tax Return, on January 26, 1999, pursuant to extension. A copy of this Form 706 is attached as Exhibit A. Form 706 subsequently was amended on July 26, 1999 to reflect a special allocation of a portion of Mr. Smith's unallocated generation-skipping tax exemption, which resulted in changes only to Schedule R to Form 706. A copy of Schedule R as amended is attached as Exhibit B. (The estate tax return, as so amended, is referred to herein as "Form 706.") Because the principal asset owned by the Estate was 12,424 shares of common stock (the "Shares") in The Five Smiths, Inc. (the "Company"), a family controlled corporation which owned and operated the Atlanta Falcons NFL football team, the Estate chose to defer the payment of its estate tax obligation, and accordingly elected to pay its estate tax obligation in ten (10) equal annual installments under Section 6166 of the Internal Revenue Code (the "Code").

At the time of Mr. Smith's demise, the Shares represented 32.65% of the equity of the Company. On Form 706 (at Item 11 of Schedule B), the Estate, based on an appraisal performed by Houlihan Lokey Howard & Zukin ("Houlihan Lokey"), a copy of which is annexed hereto as Exhibit C, valued the Shares at $25,370,000. Thereafter, on January 25, 2002, the Estate, after receipt of valuation reports from Standard & Poor's dated January 16, 2002, annexed hereto as Exhibit D-1 (which addresses the value of the Shares) (the "S&P Report") and Exhibit D-2 (which addresses the application of a key man discount in valuing the Company), filed a refund

claim (the "Initial Refund Claim"), claiming a reduction in its taxable estate by reason of a revised fair market value of the Shares of $20 million as compared to the Houlihan Lokey value of $25,370,000. The Estate also filed the Initial Refund Claim to report an increase of $7,360,733 in the Estate's administrative expenses due to additional interest payments, legal fees, executors' commissions, and miscellaneous expenses not previously reported on Form 706.

In addition to the value of the Shares, there is also an issue with respect to certain indebtedness claimed on Form 706. Mr. Smith was the general partner of Falcons Nest I, Ltd., a Georgia limited partnership ("Falcons Nest"), which owned certain assets, including real property utilized by the Atlanta Falcons football team as its training facility. The training facility was valued as of October 26, 1997 at $6,710,000 based upon an appraisal by Childers Associates (copies of their initial appraisal report and supplemental letter are annexed hereto as Exhibits E-1 and E-2 (the "Childers Report")). The other assets of Falcons Nest were valued at $762,499, resulting in a total asset value of $7,472,499 ($6,710,000 plus $762,499). However, Falcons Nest's liabilities totaled $11,543,811, so that, as of October 26, 1997, its liabilities exceeded its assets by $4,071,312 ($11,543,811 less $7,472,499) ("Excess Falcons Nest Liability"). Accordingly, the Estate reported this Excess Nest Liability as a debt of Mr. Smith, at item 28 of Schedule K of Form 706.

On January 28, 2002, after the Estate filed the Initial Refund Claim, the Estate received a Notice of Deficiency from the Internal Revenue Service (the "Service") dated January 25, 2002 (the "Notice of Deficiency"), a copy of which is annexed hereto as Exhibit F.[1] In the Notice of Deficiency, (i) relying on an appraisal by Willamette Management Associates ("Willamette") (a

[1] The Service initially sent a Notice of Deficiency to the Estate dated January 24, 2002, and then sent a second Notice of Deficiency dated January 25, 2002, in which the Service corrected errors present in the initial Notice of Deficiency. All references to the Notice of Deficiency herein are to the second Notice of Deficiency.

copy of its report is annexed hereto as Exhibit G), the Service determined that the fair market value of the Shares was $48,685,020, and (ii) based on a report by Terry A. White, a Service Valuation Engineer (the "White Report"), which valued the Atlanta Falcons training facility at $8,203,000, the Service reduced the Excess Falcons Nest Liability claimed by the Estate by $1,493,000 ($8,203,000 - $6,710,000) from $4,071,312 to $2,578,312. A copy of the White Report is annexed hereto as Exhibit H.

As a result of the aforementioned two adjustments ("Adjustments"), the Notice of Deficiency asserted a transfer tax deficiency of $13,644,400.[2] On March 1, 2002 the Estate (i) paid the Service a total of $19,290,867, consisting of $16,159,613 in federal estate tax and $3,131,254 of accrued deficiency interest (a copy of the transmittal letter (with a receipt stamp thereon) is attached as Exhibit I) and (ii) paid the Georgia Department of Revenue a total of $4,392,387, representing $3,050,289 in Georgia estate tax and $1,342,148 of accrued deficiency interest (a copy of the transmittal letter (with a receipt stamp thereon) is attached as Exhibit J).[3] On March 21, 2002 the Estate paid the Florida Department of Revenue a total of $15,802, representing $10,846 in Florida estate tax and $4,956 of accrued deficiency interest (a copy of the transmittal letter is attached as Exhibit K).[4]

The payment of $19,290,867 to the Service represented (i) the Estate's best estimate of the full amount of tax and accrued deficiency interest (resulting from the Adjustments as well as

---

[2] The transfer tax self-assessed by the Estate on Form 706 as originally filed was $9,750,765, of which $703,597 had been paid as of January 25, 2002.

[3] After the Estate paid the additional Georgia estate taxes, the Estate determined that the amount of estate taxes owed to Georgia had been incorrectly calculated, and sought and obtained a refund in the amount of $129,177. This refund reduced the total amount of estate taxes paid to the Georgia Department of Revenue by the Estate from $6,093,363 to $5,964,186.

[4] After the Estate paid the additional Florida estate taxes, the Florida Department of Revenue, by letter dated March 21, 2002, sent a refund to the Estate in the amount of $31,139 based upon the Initial Refund

interest accrued on the estate tax deferred under Code Section 6166) due pursuant to the Notice of Deficiency, reduced by (x) the additional credit for state death taxes allowable because of the Estate's payment of additional state estate taxes (which reduction is contemplated by item 14 of the computation of estate tax deficiency included in the Notice of Deficiency) and (y) deductions attributable to the payment (both on March 1, 2002 and prior to that date) to the Service of interest on the estate taxes deferred under Code Section 6166 and the payment to the Service and the Georgia Department of Revenue of accrued deficiency interest occasioned by the Adjustments, in the aggregate amount of $6,452,415 (the "Interest Payments"), and (ii) the remaining balance of the self-assessed transfer tax shown as due on Form 706.

Based on the grounds summarized herein, and in the Exhibits hereto, the Estate hereby claims a refund in the amount of $15,722,549 (which amount includes and gives effect to the adjustments set forth in the Initial Refund Claim), on account of the overpayment by the Estate of $12,591,295 in federal estate tax and $3,131,254 of accrued deficiency interest paid (collectively the "Estate Tax Overpayment"), together with interest on the Estate Tax Overpayment as provided by law, plus such other amounts as may be legally refundable.

The following chart sets forth the preliminary calculation and estimate of the federal estate tax and accrued deficiency interest to be refunded to the Estate:

---

Claim. This refund reduced the total amount of estate taxes paid to the Florida Department of Revenue by the Estate from $69,649 to $38,510.

**Preliminary Calculation and Estimate of Federal Estate Tax To Be Refunded**

| | Description Per Form 706 | Per Form 706 | Per Notice of Deficiency | Computation of Tax Payment Made by Estate on 3/1/02 Per Notice of Deficiency | Computation of Form 843 Refund Amount[a] |
|---|---|---|---|---|---|
| 1 | Value of the Estate's Shares | $25,370,000 | $ 48,685,000 | $ 48,685,000 | $ 20,000,000 |
| 2 | Other Estate Assets | 10,781,175 | 10,781,175 | 10,781,175 | 10,781,175 |
| 3 | Total Gross Estate | 36,151,175 | 59,466,175 | 59,466,175 | 30,781,175 |
| 4 | Funeral and Administration Expenses | 2,976,821 | 2,976,821 | 9,429,236[b] | 10,337,554[c] |
| 5 | Liabilities of the Decedent | 5,226,101 | 3,733,101 | 3,733,101 | 5,226,101 |
| 6 | Other Allowable Deductions | 5,259,877 | 5,259,877 | 5,259,877 | 5,259,877 |
| 7 | Taxable Estate | 22,688,376 | 47,496,376 | 41,043,961 | 9,957,643 |
| 8 | Post-1976 Adjusted Taxable Gifts | 827,859 | 827,859 | 827,859 | 827,859 |
| 9 | Subtotal (line 7 + line 8) | 23,516,235 | 48,324,235 | 41,871,820 | 10,785,502 |
| 10 | Total Tentative Tax | 13,126,729 | 26,771,129 | 23,222,301 | 5,612,101 |
| 11 | Aggregate Post-1976 Gift Taxes Payable | 86,224 | 86,224 | 86,224 | 86,224 |
| 12 | Gross Estate Tax (line 10 – line 11) | 13,040,506 | 26,684,905 | 23,136,077 | 5,525,877 |
| 13 | Unified Credit Against Estate Tax | 192,800 | 192,800 | 192,800 | 192,800 |
| 14 | Federal Estate Tax (line 12 – line 13) | 12,847,706 | 26,492,105 | 22,943,277 | 5,333,077 |
| 15 | Credit For State Death Taxes | 3,096,940 | 7,066,220 | 6,002,696[d] | 1,061,162 |
| 16 | Estate Tax Paid 7/26/98 | 703,597 | N/A | 703,597 | 703,597 |
| 17 | Estate Tax Paid 3/1/02 | N/A | N/A | 16,159,613 | 16,159,613 |
| 18 | Estate Tax Overpayment (Deficiency) (line 15 + line 16 + line 17 – line 14) | (9,047,168) | (13,644,400) | (77,371) | 12,591,295 |
| | | | | **Form 843 Claim for Refund Requested** | **$12,591,295** |
| | | | | **Accrued Deficiency Interest** | **$ 3,131,254** |
| | | | | **TOTAL** | **$15,722,549** |

[a] The refund amount (i) reflects the reduced value of the taxable estate by reason of the reduction in value of the Shares from $25,370,000 to $20 million and the $7,360,733 increase in administrative expenses, as set forth in the Initial Refund Claim filed by the Estate on January 25, 2002, and (ii) gives effect to the payments, aggregating $23,683,254, made on March 1, 2002 by the Estate to the Service and the Georgia Department of Revenue.

[b] This amount includes $2,976,821 of funeral and administrative expenses reported on Form 706 and the Interest Payments of $6,452,415.

[c] This represents $2,976,821 of administrative expenses initially reported on Form 706 plus the $7,360,733 of additional administrative expenses set forth in the Initial Refund Claim.

[d] This state death tax credit amount is smaller than the credit amount computed by the Service in the Notice of Deficiency because the deduction of the Interest Payments described in footnote b, *supra*, reduces the amount of the taxable estate and thus the state death tax credit amount. Further, this state death tax credit amount reflects the total amount of unrefunded state death taxes paid by the Estate to Georgia ($5,964,186) and Florida ($38,510), and is somewhat smaller than the maximum state death tax credit amount allowable under Code Section 2011, which maximum amount is $6,033,834 for a federal taxable estate of $41,043,961. Accordingly, the Estate protectively claims a federal estate tax refund that takes into consideration the full amount of the state death taxes that are ultimately determined to be owed and are paid.

**ISSUES INVOLVED**

The issues for resolution concern (i) the fair market value of the Shares, (ii) the fair market value of the training facility owned by Falcons Nest, and (iii) the deductibility of the additional administrative expenses claimed by the Estate.

**I. VALUE OF SHARES**

On Form 706, the Estate valued the Shares based on the appraisal report of Houlihan Lokey. In this claim for refund, the Estate relies on the appraisal of Houlihan Lokey as supplemented by the S&P Report. The Service, in its Notice of Deficiency, relies on the Willamette Report. The difference between the $48,685,020 value determined by the Service and the $20 million claimed by the Estate is occasioned principally by the following:

**A. <u>Franchise Value of Atlanta Falcons</u>**

The Estate claims that the value for the Atlanta Falcons National Football League franchise and related assets ("Franchise Value") was not in excess of $160 million as set forth in the S&P Report, whereas the Service asserts a Franchise Value of $193 million as set forth in the Willamette Report.[5] Each of the appraisals then determined the enterprise value of the Company by giving effect to the Estate's liabilities and other non-operating assets (including the proceeds of life insurance on Mr. Smith's life). As a result of these items, Willamette reduced its Franchise Value of $193 million by $8,340,751, to arrive at a fair market value of the equity of the Company on a marketable, controlling interest basis of $184,659,249. Standard & Poor's used Willamette's adjustments, reducing its Franchise Value of $160 million by $8,340,751, to determine an indicated value of 100% of the enterprise of $151,659,249, before consideration of

---

[5] Houlihan Lokey in its Report determined a value of $156.9 million for the Atlanta Falcons franchise. The Estate reserves the right to claim the Houlihan Lokey Franchise Value or such lower value, as it may

a key man discount. Thus the indicated enterprise value of the Company as determined by Standard & Poor's was $33 million less than the value determined by Willamette.

B. **Key Man Discount**

In determining the fair market value of 100% of the equity of the Company, Standard & Poor's deducted the amount of $18,389,000 from the enterprise value of the Company to reflect a key man discount occasioned by the loss of the Company's founder, Mr. Smith. Neither Houlihan Lokey nor Willamette addressed this key man discount issue in their respective reports.

C. **Discounts for Lack of Control and Lack of Marketability**

Prior to Mr. Smith's death, the Company had two classes of common stock issued and outstanding, Class A common stock and Class B common stock, which were identical in all respect other than voting power. The Class A common stock was entitled to 11.64 votes per share and the Class B common stock was entitled to one vote per share. Pursuant to Article VII of the Company's Articles of Incorporation, all of the outstanding shares of the Class A common stock owned by Mr. Smith were to be converted into shares of Class B common stock, on a one-to-one basis, (i) upon Mr. Smith's death, or (ii) at the time that Mr. Smith, prior to his death, sold or otherwise transferred for consideration his Class A common stock.

1. **Application of Code Sections 2703 and 2704**

At the time of his death, Mr. Smith owned 12,424 shares of Class A common stock, representing 81.75% of the Company's ordinary voting power and 32.65% of the Company's equity. The conversion of Mr. Smith's Class A common stock into Class B common stock upon his death resulted in a reduction in the ordinary voting power of Mr. Smith's equity from 81.75% to 32.65%. The Estate maintains that Mr. Smith's Shares are properly valued as Class B

---

prove. Houlihan Lokey adjusted the Franchise Value by $7.4 million to arrive at an enterprise value of $149.5 million.

common stock, and that Section 2704 of the Code does not change this result. The Service, relying on Section 2704, asserts that the Shares should be valued as Class A common stock.[6]

Under Section 2704(a)(1) a lapse in voting rights occurred with respect to Mr. Smith's Class A common shares upon his death as a result of their conversion to Class B common shares, and under Section 2704(a)(2) the amount of the transfer represented by the lapse which occurred at the time of his death "is equal to the excess (*if any*) of the value," (emphasis added), of Mr. Smith's Class A shares immediately prior to his death over the value of Mr. Smith's shares immediately after his death. As demonstrated in the Estate's memoranda, here, there is no excess value. As previously indicated, under Article VII of the Company's Articles of Incorporation, all of the outstanding shares of Class A common stock owned by Mr. Smith automatically converted into shares of Class B common stock, on a one-for-one basis, (i) upon a lifetime sale or other transfer of such shares by Mr. Smith or (ii) upon Mr. Smith's death. Thus, the value of Mr. Smith's shares in an arms' length transaction with an unrelated third party immediately prior his death would be the same as the value immediately after his death, because in both cases the Class A super-voting rights would "lapse." Accordingly, the lapse in voting power does not result in an increase in the value of Mr. Smith's gross estate since the price that Mr. Smith would have received for the Shares immediately prior to his demise would not be greater in amount than that which would have been realized by his Estate immediately after his demise.

### 2. Discounts for Lack of Control and Lack of Marketability

Assuming that the Shares should be valued as Class B common stock, Standard & Poor's accepts Houlihan Lokey's 30% discount for lack of control and 35% discount for lack of

[6] See Exhibits L-1, 2 and 3, which include two Memoranda of the Estate's legal counsel, Dow, Lohnes & Albertson, PLLC, which are incorporated herein by reference, and a Service Memorandum of September 24, 2001, which

marketability for the Shares valued as Class B common stock. If the Shares should be valued as Class A common stock, then under these circumstances Standard & Poor's utilized a 25% discount for lack of control and a 35% discount for lack of marketability. Houlihan Lokey in its Report utilized a 20% discount for lack of control and a 35% discount for lack of marketability for the Shares valued as Class A common stock. Willamette, in its Report, utilized a discount for lack of control of 5% and a discount for lack of marketability of 15% for the Shares if they were to be valued as Class A common stock, and a 15% discount for lack of control and 20% discount for lack of marketability if the Shares are to be valued as Class B common stock.

**Summary of Appraisals**

| | Standard & Poor's | Houlihan Lokey | Willamette |
|---|---|---|---|
| Atlanta Falcons Franchise Value | $160 million | $156.9 million | $193 million |
| Value of 100% of the Enterprise | $151.659 million | $149.5 million | $184.689 million |
| Key Man Discount | $18.389 million | — | — |
| Discount for Lack of Control: | | | |
| Estate Shares Valued as Class A Common Stock | 25% | 20% | 5% |
| Estate Shares Valued as Class B Common Stock | 30% | 30% | 15% |
| Discount for Lack of Marketability: | | | |
| Estate Shares Valued as Class A Common Stock | 35% | 35% | 15% |
| Estate Shares Valued as Class B Common Stock | 35% | 35% | 20% |

---

Memoranda respectively reflect the position of the Estate and the Service with respect to this issue.

**D. <u>Analysis</u>**

Code Section 2001(a) provides for a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. For Federal estate tax purposes, property includable in a decedent's gross estate is generally included at its fair market value on the date of the decedent's death. Code § 2031(a); Treas. Regs. § 20.2031-1(b). Fair market value is defined as the price at which property would change hands between a willing buyer and a willing seller, both persons having reasonable knowledge of all relevant facts and neither person being under a compulsion to buy or to sell. Treas. Regs. § 20.2031-1(b). Further, the highest price a willing buyer would pay is also the price that a willing seller wants. *Estate of Newhouse v. Commissioner*, 94 T.C. 193, 233, n.23 (1990). The willing buyer and the willing seller are hypothetical persons, instead of specific individuals and entities, and the characteristics of these imaginary persons are not necessarily the same as the personal characteristics of the actual seller or a particular buyer. *Estate of Bright v. United States*, 658 F.2d 999, 1005-1006 (5th Cir. 1981).

Section 2031 of the Code provides as follows:

> *(a) GENERAL RULE--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.*

The relevant portions of the Treasury Regulations provide as follows:

Section 20.2031-1. . . . <u>*valuation of property*</u>

> *(b) <u>Valuation of property in general</u>. The value of every item of property includable in a decedent's gross estate . . . is its fair market value at the time of the decedent's death. . . . The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts . . . . The value is generally to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of property. For example, in the case of shares of stock or bonds, such unit of property is generally a*

> *share of stock or a bond . . . . All relevant facts and elements of value as of the applicable valuation date shall be considered in every case.*

The "Indicated Value of Class B Shares" as determined on page 35 of the S&P Report properly reflects the fair market value of the Shares on October 26, 1997, namely, $20 million, and gives effect to and is consistent with the principles set forth in the quoted Treasury Regulation. Moreover, the S&P Report was prepared by qualified and recognized valuation experts and gives appropriate consideration to all of the elements required to be considered in stock valuations for federal tax purposes. On the other hand, for a number of reasons, including those set forth in the S&P Report, the Willamette Report does not properly determine the fair market value of the Shares.[7] Accordingly, the Estate maintains that the fair market value of the Shares for purposes of determining the Estate's estate tax liability is not in excess of $20 million.

## II. VALUE OF THE ATLANTA FALCONS TRAINING FACLITY

The principal assets of Falcons Nest as of the date of Mr. Smith's death were properties comprising the Atlanta Falcons training facility, which consisted of the assets listed on the chart below (hereinafter collectively the "Training Facility Properties"). The fair market value of each of the Training Facility Properties reflects the value determined by Richard S. Childers, MAI, of Childers Associates, an experienced Atlanta metropolitan area real estate appraiser, in a manner consistent with the principles of the Treasury Regulation quoted above. Mr. Childers valued the Training Facility Properties as follows:

---

[7] The S&P Report correctly concludes that (i) Willamette's application of the guideline transaction method to determine the value of the Atlanta Falcons franchise is not consistent with general valuation methodology, and (ii) because of its erroneous assumption of certain facts and a series of speculative and unsupported presumptions, the Willamette Report materially underestimated the lack of control and lack of marketability discounts applicable to the Shares.

| Summary of Value of Training Facility Properties Per Childers Report | |
|---|---|
| **Asset** | **Value** |
| Vacant Raw Industrial Land | $ 640,000 |
| Vacant Prepared Industrial Land | 1,270,000 |
| Motel Facility | 3,200,000 |
| Office Building | 1,600,000 |
| Health Club Facility | 0[8] |
| **Total** | **$6,710,000** |

The White Report, used by the Service, valued the Training Facility Properties at $8,203,000, reflecting the following values:

| Summary of Value of Training Facility Properties Per White Report | |
|---|---|
| **Asset** | **Value** |
| Vacant Raw Industrial Land | $ 875,000 |
| Vacant Prepared Industrial Land | 798,000 |
| Motel Facility | 3,672,000 |
| Office Building | 1,600,000 |
| Health Club Facility | 1,258,000 |
| **Total** | **$8,203,000** |

The White Report is not an independent appraisal of the Training Facility Properties, but rather is a review of the Childers appraisal. In conducting his review, Mr. White viewed the properties only from the outside and approximately three years after the valuation date. In his Report, Mr. White concluded that the Childers appraisal methodology is sound, and simply disagreed with some of Mr. Childers' assumptions.

After the issuance of the White Report, Childers Associates prepared a letter to Thomas A. Shanks of SunTrust Bank (co-executor of the Estate), dated June 15, 2001, which responded to the critique in the White Report. Childers Associates correctly concluded that (i) Mr. White failed to consider the poor interior design and condition of the health club facility, as well as its

[8] Childers valued the 8.066 acres of land associated with the Health Club Facility as part of the Vacant Prepared Industrial Land, and concluded that the health club building itself did not contribute to the overall value of the property.

lack of windows, in determining to value the facility based on use as office space without extensive renovations, (ii) Mr. White failed to take into account competitive market conditions in determining to increase the value of the motel facility, (iii) additional raw industrial land sales identified by Mr. White either supported the Childers valuation or in one case was not comparable, and (iv) Mr. White failed to consider the poor grade and lack of visibility of the Prepared Industrial Land in increasing its value. The Estate thus maintains that the correct value of the Training Facility Properties is no more than $6,710,000 and that therefore the correct amount of the Excess Falcons Nest Liability is no less than the amount reported at item 28 of Schedule K of Form 706, namely $4,071,312, and not $2,578,312 as asserted by the Service.

## III. DEDUCTIONS PURSUANT TO SECTION 2053 OF THE INTERNAL REVENUE CODE

On Form 706, the Estate claimed a deduction for funeral expenses and administration expenses totaling $2,976,820.89. These expenses included administration expenses paid or incurred at the time Form 706 was filed and estimates of additional administration expenses to be paid or incurred in the future. The amounts deducted on Form 706 are set forth on Schedule J and summarized in the following chart:

| Funeral and Administration Expenses Claimed on Form 706 | | |
|---|---|---|
| **Description** | **Amount Paid or Incurred as of Filing Form 706** | **Amount Estimated Through Completion of Administration** |
| Funeral Expenses | $ 25,063.82 | $ 0 |
| Executors' Commissions | 0 | 233,000.00 |
| Attorneys' Fees | 1,110,916.29 | 600,000.00 |
| Accountants' Fees | 0 | 0 |
| Appraisal Fees | 97,071.74 | 0 |
| Interest Expense | 714,545.85 | 0 |
| Other Miscellaneous Expenses | 196,223.19 | 0 |
| **Totals** | **$2,143,820.89** | **$833,000.00** |

**Grand Total of Funeral and Administration Expenses Claimed on Form 706: $2,976,820.89 ($2,143,820.89 plus $833,000)**

Through January 17, 2002,[9] the Estate paid or incurred administration expenses that in some cases were already in excess of the estimates of certain categories of expenses listed on Form 706. In addition to the amounts paid or incurred through January 17, 2002, the Estate will necessarily pay or incur additional administration expenses during the period starting on January 18, 2002, and ending at the time the Estate completes its administration and distributes all remaining assets to the Estate's beneficiaries. These administration expenses include additional interest expense (including interest on estate tax deferred under Code Section 6166), additional attorneys' fees (including those related to a complicated will contest), additional appraisal fees, additional accounting fees, and other expenses related to the administration of the estate and the preservation of its property.

The amounts paid or incurred through January 17, 2002, and the amounts the Estate estimates will be paid or incurred after that date and in the future exceed the amounts claimed on Form 706 by a total amount of $7,360,733. The difference between the amounts paid or incurred and the amounts estimated to be paid or incurred in the future in each category versus the amounts claimed on Form 706 are set forth in the following chart:

[9] The Estate's Initial Refund Claim, filed on January 25, 2002, used January 17, 2002 as the cut-off date for administration expenses that were paid or incurred, and estimated such expenses for January 18, 2002 forward.

| **Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706** | | |
|---|---|---|
| **Description** | **Additional Amount Paid or Incurred Through January 17, 2002** | **Estimated Additional Amount To Be Paid or Incurred From January 17, 2002 Through Completion of Administration** |
| Executors' Commissions | $ 0 | $ 738,280.88[10] |
| Attorneys' Fees | 3,115,531.39 | 150,000.00[11] |
| Accountants' Fees | 0 | 50,000.00 |
| Appraisal Fees | 0 | 50,000.00 |
| Other Expenses | 0 | 25,000.00 |
| Interest Expenses | 3,231,921.01[12] | *undetermined*[13] |
| **Totals** | **$6,347,452.40** | **$1,013,280.88** |

**Grand Total of Administration Expenses Claimed in Addition to the Administration Expenses Claimed on Form 706: $7,360,733.28 ($6,347,452.40 plus $1,013,280.88)**

These additional estate administration expenses in the above chart previously have not been claimed as deductions under Code Section 2053 (except in the Initial Refund Claim), and they have not been allowed as deductions by the Service. This refund claim seeks the allowance of deductions for expenses paid or incurred as of January 17, 2002, as well as those expenses

[10] This amount is in addition to the $233,000 of estimated executor's commissions listed on Form 706. Thus, the total amount of estimated post-January 17, 2002 executor's commissions is $971,280.88.

[11] This amount is in addition to the $600,000 of estimated attorneys' fees listed on Form 706. Thus, the total amount of estimated post-January 17, 2002 attorneys' fees is $750,000.

[12] This amount reflects an increase in interest paid or incurred on a SunTrust Bank line of credit and interest paid or incurred on estate taxes deferred under Code Section 6166. The interest on the line of credit has been computed through February 1, 2002, and the interest on the deferred estate taxes has been computed through February 28, 2002. The amount of the interest on the deferred estate tax is based on a taxable estate that gives effect to the reduction in value of the Shares from $25,370,000 to $20 million and an increase in administrative expenses in the amount of $7,360,733. The Estate protectively claims a deduction for the full amount of the interest on the amount of the deferred estate tax that is ultimately determined to be appropriate based on a final determination of the amount of the estate taxes owed by the Estate.

[13] The amount of any additional interest expenses deductible as administration expenses will be taken into account when such amounts are incurred or paid, and such additional interest expenses are intended to be covered by the refund claim contained herein.

reasonably estimated to be paid or incurred upon or before the termination of the Estate's administration.

**A. Deductions Allowed Pursuant to Section 2053**

The Estate claims a reduction of estate taxes attributable to the deduction of administration expenses paid or incurred and estimated as set forth in the preceding chart. The estate tax is based upon the amount of the "taxable estate." Code § 2001(a). In computing the taxable estate, the Code permits an estate to deduct administration expenses. Code § 2053.

Section 2053 of the Code provides as follows:

> *(a) GENERAL RULE. – For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts –*
>
> *(1) for funeral expenses;*
>
> *(2) for administration expenses;*
>
> *(3) for claims against the estate, and*
>
> *(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,*
>
> *as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.*

The relevant portions of the Treasury Regulations provide as follows:

> Section 20.2053-1. *Deductions for expenses, indebtedness, and taxes; in general*
>
> *(a) General Rule. In determining the taxable estate of a decedent who was a citizen or resident of the United States at the time of his death, there are allowed as deductions under section 2053(a) and (b) amounts falling within the following two categories (subject to the limitations contained in this section . . .):*
>
> *(1) First category. Amounts which are payable out of property subject to claims and which are allowable by the law of the jurisdiction, whether within or without the United States, under which the estate is being administered for--*
>
> *(i) Funeral expenses;*

*(ii) Administration expenses; . . . .*

*As used in this subparagraph, the phrase "allowable by the law of the jurisdiction" means allowable by the law governing the administration of decedents' estates . . . .*

Section 20.2053-3. *Deduction for expenses of administering estate*

*(a) In general. The amounts deductible from a decedent's gross estate as "administration expenses" of the first category . . . are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it . . . . Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Administration expenses include:*

*(1) Executor's commission;*

*(2) Attorney's fee; and*

*(3) Miscellaneous expenses.*

*(d) Miscellaneous administration expenses. (1)Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. Expenses for preserving and caring for the property may not include outlays for additions or improvements; nor will such expenses be allowed for a longer period than the executor is reasonably required to retain the property.*

Where the final amount of estate administration expenses is not known, and not ascertainable prior to the expiration of the statute of limitations provided by Code Section 6511, Section 2053 of the Code permits an estate to deduct an estimate of the amount of such administration expenses that it expects to incur prior to the final distribution and winding up of the estate. The Treasury Regulations under Code Section 2053 specifically permit a deduction for estimated administration expenses. *See* Treas. Reg. §§ 20.2053-1(b)(3); -3(c)(1).

**B. The Estate's Additional Administrative Expenses Are Deductible Under Section 2053 and the Regulations Thereunder**

The Estate reasonably has estimated the administration expenses set forth in this claim, and such administration expenses likely will be incurred and paid. The Estate's estimates are

based upon the best information currently available; however, the amounts may increase depending upon circumstances not currently foreseen. The actual administration expenses paid or incurred up to the date of final distribution of the Estate's assets, even if they exceed the reasonably estimated amounts of such expenses, are allowed as a deduction under Code Section 2053. The Estate hereby specifically requests that the amount of its estate tax obligation be determined by allowing as deductions all administration expenses actually paid or incurred through the final winding up of the Estate. *See* Treas. Reg. § 20.2053-1(b)(3) (refund allowed where the amount finally determined exceeds the estimated amount of administration expenses).

The administration expenses claimed herein are (i) allowable under the laws of the State of Georgia, (ii) have been or will be actually and necessarily incurred in the administration of the Estate within the meaning of Treasury Regulation section 20.2053-3(a),[14] (iii) have been paid or incurred or properly estimated, and (iv) have been timely claimed as a deduction by the Estate. Such administration expenses are allowable as a deduction in determining the taxable estate. Accordingly, the administration expenses are allowable as a deduction pursuant to Code Section 2053 in computing the Estate's final estate tax liability under Code Section 2001.

---

[14] The Estate reserves the right to assert that the requirements set forth in Treasury Regulation section 20.2053-3 or any other Treasury Regulation or authority for determining whether administration expenses are allowable as a deduction in determining the Estate's taxable estate are invalid if, and to the extent that, they are interpreted as imposing a requirement for deductibility in addition to the requirements enumerated as (i), (iii), and (iv) in the text.

**ESTATE OF RANKIN M. SMITH**
**DECEDENT'S SSN: 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**
**ESTATE'S EIN: 58-6354904**

**SUMMARY STATEMENT OF GROUNDS IN SUPPORT OF CLIAM FOR REFUND OF FEDERAL ESTATE TAXES AND ACCRUED DEFICIENCY INTEREST**

**LIST OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS PREVIOUSLY FILED |
| Exhibit B | Schedule R to Form 706, United States Estate (and Generation Skipping Transfer) Tax Return AS PREVIOUSLY FILED |
| Exhibit C | Valuation Analysis of Mr. Smith's The Five Smiths, Inc. Shares Prepared by Houlihan Lokey Howard & Zukin |
| Exhibit D-1 | Supplemental Report Addressing the Value of Mr. Smith's The Five Smiths, Inc. Shares Prepared by Standard & Poor's |
| Exhibit D-2 | Supplemental Report Addressing the Application of a Key Man Discount in Valuing The Five Smiths, Inc. Prepared by Standard & Poor's |
| Exhibit E-1 | Appraisal of Falcons Nest 1, Ltd. Property Prepared by Childers Associates |
| Exhibit E-2 | Letter Response to IRS Review of Appraisal of Falcons Nest 1, Ltd. Prepared by Childers Associates |
| Exhibit F | IRS Notice of Deficiency dated January 25, 2002 |
| Exhibit G | Appraisal Report of Mr. Smith's The Five Smiths, Inc. Shares prepared by Williamette Management Associates |
| Exhibit H | Engineering and Valuation Report of Falcons Nest 1, Ltd. Property Prepared by Terry A. White, IRS Valuation Engineer (Appendix A to this Report is Exhibit E-1 above) |
| Exhibit I | Letter Transmitting Payment to the IRS dated March 1, 2002 |

| | |
|---|---|
| Exhibit J | Letter Transmitting Payment to the Georgia Department of Revenue Dated March 1, 2002 |
| Exhibit K | Letter Transmitting Payment to the Florida Department of Revenue Dated March 21, 2002 |
| Exhibit L-1 | Memorandum of Dow, Lohnes & Albertson Dated February 15, 2001 |
| Exhibit L-2 | IRS Memorandum Dated September 24, 2001 (on Form 886-A) |
| Exhibit L-3 | Memorandum of Dow, Lohnes & Albertson Dated October 9, 2001 |

**[ESTATE OF RANKIN M. SMITH**
**DECEDENT'S SSN: 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**
**ESTATE'S EIN: 58-6354904**

**SUMMARY STATEMENT OF GROUNDS IN SUPPORT**
**OF CLAIM FOR REFUND OF FEDERAL**
**ESTATE TAXES AND ACCRUED DEFICIENCY INTEREST]**

**[EXHIBITS NOT INCLUDED]**

**Internal Revenue Service**
Appeals Office
Robert A Young Building
1222 Spruce St., Stop 8000 STL
Saint Louis, MO 63103-2839

**Department of the Treasury**

**Person to Contact:**
DANIEL J. MANNION
Employee ID Number: 3-26221
Tel: 314-612-4650
Fax: 314-612-4871
**Refer Reply to:**
AP:FE:STL:DJM
**In Re:**
ESTATE OF RANKIN M. SMITH, SR
**Claim Amount(s):**
$12,591,295 (tax)

**Tax Period(s) Ended:**
10/1997

Date: MAR 2 3 2005

ESTATE OF RANKIN M. SMITH
c/o Thomas A. Shanks, First Vice President
Sun Trust Bank, Atlanta
P. O. Box 4655, Dept. 251, Atlanta, GA 30302

**Certified Mail**

Dear Mr. Shanks: 7004 2510 0002 2032 6066

We are sorry, but we cannot allow the above claim for an adjustment to your tax, for the following reasons:

Taxpayer's initial Claim for Refund, filed on or about 1/25/2002 in the tax amount of $5,478,849.74; and taxpayer's second Claim for Refund (fully incorporating the amount of the earlier Claim), filed on or about 9/13/2002 in the tax amount of $12,591,295, plus interest thereon, are hereby jointly and separately disallowed in full because examiner's adjustments to the estate tax return, as filed, are supported by the facts and applicable law. These two claims are therefore jointly and separately disallowed, based on propriety of examiner's adjustments, as explained in his report of examination.

Our decision is based on provisions of the Internal Revenue laws and regulations. This letter is your legal notice that your claim is fully disallowed.

If you wish to bring suit or proceedings for the recovery of any tax, penalties or other moneys for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or with the United States Court of Federal Claims. The law permits you to do this within 2 years from the mailing date of this letter. However, if you signed a waiver of the notice of claim disallowance (Form 2297), the period for bringing suit began to run on the date you filed the waiver.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely,

For James Wallace
Appeals Team Manager