IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESTATE OF RANKIN M. SMITH, SR., SUNTRUST BANK, TAYLOR W. SMITH, and RANKIN M. SMITH, JR., Co-Executors, | ) | Case No. 05-1028 T |
| Plaintiff, | ) | Judge Marion Blank Horn |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S STATUS REPORT**

PURSUANT to this Court's Order dated June 9, 2006 directing the parties to file a status report by noon on July 5, plaintiff, the Estate of Rankin Smith, Sr. (the "Estate"), by undersigned counsel, hereby submits its status report. Prior to the last status conference with the Court on June 8, the government had insisted that the Estate must first dismiss its refund suit before the government would even discuss the substantive issues and computations related to determining a payoff amount that would resolve the jurisdictional issue. At the conference, however, the Court directed the parties to exchange documents on the jurisdictional issue and to meet to in-person (along with substantive IRS personnel) to discuss the substantive issues and to attempt to determine an amount that the Estate could pay so that the Court's jurisdiction would be uncontested after a brief dismissal.

As set forth below, although the government produced some documents, it refused to produce the key documents, the computations prepared by the Department of Justice ("DOJ") computations specialist. Instead, the government took the position that, even though government counsel had repeatedly represented to the Estate's counsel that they would receive the

computations, the computation schedules were being withheld as work product and/or privileged communications.

Although the parties met on June 27 as directed by the Court, at that meeting the government not only continued to insist on dismissal of the suit prior to making any representations with regard to the substantive issues, but took the new position that the Estate must pay the $4.2 million balance shown on a transcript fraught with irregularities before the government will determine the proper amount of estate tax due, if any, from the Estate even under the government's own higher determination of the gross value of the Estate. The government made no attempt to resolve the substantive issues, and made it clear that it would provide no assurances whatsoever, including that the IRS would allow the state death tax credit or the section 6166 interest deductions even if the $4.2 million were paid.[1]

<u>June 8 Conference With the Court</u>

At the June 8 conference, counsel for the parties addressed the following:

1. The Estate's payment of millions of dollars in additional state death taxes, for which the IRS was required by statute to provide a credit, and which were directly caused by the IRS's notice of deficiency increasing the value of the gross estate;

---

[1] Contrary to the Court's direction, the government's status report, filed on June 30, 2006, simply reiterates the government's position that jurisdiction currently does not exist because the transcript shows a balance due. Government counsel has previously presented this position, including at the June 8 conference, at which time the Court established a procedure for attempting to resolve the jurisdictional issue. The Court directed the parties to both exchange relevant documents and meet to determine the amount of tax that would be outstanding and paid by the Estate in connection with a dismissal and refiling of the case (which necessitated working through the computations on the state death tax credit and section 6166 interest deductions). In the status report due today, the parties were to address the results of that procedure. Government counsel insisted, however, that the report simply reiterate the jurisdictional issue, an approach to which the Estate could not agree.

2. The Estate's payment of section 6166 interest, including additional interest resulting from the IRS's increased value for the Estate, for which the Estate was entitled to a deduction;

3. The analysis and report of Laura Peebles, CPA, Deloitte showing that if the additional state death taxes were credited and the section 6166 deduction were properly accounted for, the Estate had more than paid all taxes necessary to bring this refund suit;

4. The computations prepared by the DOJ computations specialist responsive to the Deloitte analysis that government counsel had previously represented would be provided to the Estate's counsel; and

5. The IRS's position that it would not discuss the credit for the state death taxes paid or the section 6166 interest deduction unless the Estate dismissed its lawsuit.

At the conference, this Court directed the parties to exchange documents on the jurisdictional issue by June 23. This Court also directed counsel for the parties to meet in-person prior to June 30 to discuss the substantive issues that had been raised with respect to the transcript and to work through the computations relative to the state death tax credit and the section 6166 interest deduction. The meeting was to include IRS personnel who could address these substantive issues and the parties were to attempt to reach agreement on the adjusted amount that the Estate would pay to resolve the jurisdictional issue raised by the government.

<u>Discovery</u>

In preparation for the meeting, on June 9, the Estate served requests for production of documents relevant to the amount of estate tax allegedly owing. Among the Estate's requests was a request for the computations already prepared by the DOJ computations specialist in response to the computations that had been provided to the government by the Estate (prepared

by Laura Peebles, CPA) on April 20, 2006. Not only did the government fail to produce any payoff calculations, it has now claimed privilege with regard to those computations schedules. The Estate is filing concurrently herewith a motion to compel production of the government's computation schedules.

June 27 Meeting

Counsel for the parties met on June 27 for what the Estate expected would be a discussion of an amount the government would agree to accept as fully paying the Estate's tax liability so that the Estate could refile its refund suit after a brief voluntary dismissal, and the case could proceed without jurisdictional question. With that expectation in mind, Laura Peebles also attended the meeting, prepared to engage in a substantive discussion of the computations. In attendance for the IRS was Mark Sigalow, the IRS attorney involved in the audit of the Estate.

The Estate's counsel answered the IRS representative's questions regarding the amount of state death taxes paid by the Estate and pointed the representative to the appropriate substantiation documents that had been provided to the government. The IRS representative agreed that the Estate was entitled to a state death tax credit of $5,964,186 shown in the computations provided by the Estate if the credit had been timely claimed, characterizing such credit as "automatic." However, government counsel repeatedly reminded Mr. Sigalow and emphasized to the Estate's counsel that Mr. Sigalow was not authorized to make any representations on behalf of the IRS.[2]

[2] Similarly, Mr. Sigalow allowed that if section 6166 interest has been paid, then the taxpayer is entitled to a deduction for the amounts paid. Government counsel again cautioned that Mr. Sigalow was not authorized to make any representations on behalf of the IRS.

Mr. Sigalow then stated that, because the prior claims for refund had been disallowed, the IRS would not have authority, even after dismissal of the suit, to consider whether adjustments to the Estate's account for the state death tax credit or section 6166 interest deductions should be made. However, Mr. Sigalow did not point to anything that would bar application of such credits and deductions other than a 90-day period that the government subsequently admitted was irrelevant to the time period during which such credits and deductions could be applied. Rather, it was Mr. Sigalow's position that the Estate would have to first pay the alleged $4.2 million balance and file a new claim for refund after dismissing its refund suit. Only then would the IRS determine whether it would allow the Estate credit for the additional state death taxes it had paid as a result of the IRS's asserted higher value for the Estate or the deduction for section 6166 interest payments previously made by the Estate.

In connection with considering the government's position, at the meeting, the Estate's counsel asked government counsel whether a protocol could be established for channeling such an additional claim for refund for prompt consideration. The Estate's counsel has not yet been informed whether such a protocol would be established.

At this juncture, the government has yet to respond to the Deloitte computations provided by the Estate. The government is unwilling to attempt to reach agreement on the correct amount of unpaid taxes, if any. Indeed, the government is unwilling even to represent that if the Estate has paid additional state death taxes then the Estate is entitled to a credit for the amount paid or that if the Estate has paid section 6166 interest, it is entitled to a deduction for the amount paid. Rather, the government insists that the Estate both dismiss its lawsuit and pay the IRS $4.2 million, and even then there will be no assurance either that the IRS will allow the state

death tax credit or the section 6166 interest deductions, or even that a new claim for refund would be handled in a timely manner.

The IRS Has the Authority to Reconsider the Prior Claims

Contrary to the statements of government counsel and Mr. Sigalow, it is not necessary for the Estate to pay the disputed amount in order for the IRS to have the authority to consider the substantive issues after a voluntary dismissal. Dismissal of the lawsuit would allow the IRS to have jurisdiction and the IRS has full authority either (i) to consider outstanding claims for credit of state death taxes and to abate a portion of the estate taxes for interest deductions, or (ii) to reconsider the prior claims, and in either event to make the necessary adjustments to the transcript to properly account for the state death tax credit and the section 6166 interest payments. In fact, these adjustments should have been automatic when the IRS determined that its higher value for the gross estate was correct and accordingly denied the Estate's claims for refund based on a lower asserted value for the estate.

Initially, the IRS has the authority to consider any outstanding claim for credit of state death taxes paid to the State of Georgia. It also has the authority to abate a portion of the estate tax for deductibility of interest paid by the Estate pursuant to its election to pay its estate tax liability in installments under section 6166. The IRS has stated that "[a]ny communication relative to the allowance or submission of evidence in support of such [state death tax] credit received within four years after the filing of the estate tax return, if clearly indicating an intent to claim the credit, may be considered as a claim for credit within the statutory period . . . ." Rev. Rul. 55-380, 1955-1 C.B. 462. On March 1, 2002, within four years of filing its estate tax return on January 26, 1999, the Estate hand-delivered a payment of $19,290,867 to the IRS in response to the Statutory Notice of Deficiency issued by the IRS along with a letter that included a claim

for the state death tax credit in the amount of $7,066,220 (the sum of the $3,096,940 credit allowed with the statutory notice of deficiency and the additional $3,969,280 provided for by that notice if proof of payment was provided). This claim for the credit had not been acted on by the IRS as of the time the above-captioned refund suit was filed and remains outstanding. Further, "[i]t is not necessary that the evidence in support of the credit claimed be filed within the statutory period [provided by IRC § 2011(c)] . . . ." Rev. Rul. 55-380 (explanation added). Thus, if this refund suit is dismissed, the IRS may act on this claim for the state death tax credit without any need for the Estate to pay $4.2 million and file a new claim for refund.

Similarly, upon dismissal of this refund suit, Revenue Procedure 81-27, 1981-27 I.R.B. 20, grants the IRS authority to abate a portion of the Estate's tax liability to adjust for the deductibility of interest payments made by the Estate pursuant to its election to pay the estate tax in installments under IRC § 6166 if the taxpayer claims a deduction for such payments by filing a "supplemental information Form 706." Thus, no refund claim would be necessary.

Alternatively, the IRS also has the authority to reconsider the claims for refund disallowed on March 23, 2005, where it failed to consider the credit of state death taxes paid and the deductions section 6166 interest payments. *See Beemis Bros. Bag Co. v. United States*, 289 U.S. 28 (1933); IRS SCA 199941039 (IRS interpreting *Beemis* to stand for the proposition that "[t]he Service's disallowance of a claim will not constitute the final action by the Service if the Service did not fully consider all grounds for the refund"). Here, the IRS's decision to disallow the Estate's claim for refund based on a lower value of the Estate *ipso facto* confirmed the IRS's higher value for the Estate as set forth in the original notice of deficiency, and thus section 2011(a) of the Code required the IRS to credit the additional state death taxes the Estate had paid

as a result of the IRS's increase in the value of the Estate. In fact, this adjustment should have been automatic.

The amount of Georgia estate tax due is calculated based on the value of the federal taxable estate, and the amount of Georgia estate taxes thus increased when the IRS issued its statutory notice of deficiency increasing the value of the gross estate for federal tax purposes. Then, when these additional state death taxes were paid, the state death tax credit provided by the section 2011 also increased. The provision of this state death tax credit by the IRS was not discretionary. See IRC § 2011(a) ("The tax imposed by section 2001 [the estate tax] shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State…"). The IRS has acquiesced to decisions by the Tax Court and its predecessor, the Board of Tax Appeals, holding that the IRS shall give credit for state death taxes paid even where those state taxes could possibly be recovered later. *Estate of Weisberger*, 29 T.C. 217, 224 (1957), *acq*. 1958-2 C.B. 3 ("[t]o deny the credit claimed here simply because a future refund is possible is to judicially repeal section 813(b) [currently IRC § 2011].") (explanation added); *see also Estate of Phillips*, 36 B.T.A. 1102, 1105 (1937), *acq*. 1958-2 C.B. 3 (the Board of Tax Appeals stated that, even if a refund were received, the predecessor of IRC § 2016 would address such a situation).[3] Where acquiescence is consistent with the federal statutes enacted by Congress, a taxpayer may rely on that acquiescence. *See Dixon v. United States*, 381 U.S. 68 (1965).

Here, the IRS cannot provide a logical rationale for its allowance of a credit for state death taxes initially paid by the Estate in the amount of $3,096,940, while disallowing the credit

[3] A statutory mechanism is provided for recovery of any state death tax credit where state death taxes are later recovered. *See* IRC § 2016; Treas. Reg. § 20-2016-1.

for the balance of $2,867,246 that the Estate paid solely as a result of the IRS's notice of deficiency increasing the value of the Estate's federal gross estate. The IRS also cannot provide a logical rationale for denying the Estate's claims for a refund based on the Estate's asserted lower value of the gross estate, while at the same time disallowing the credits and deductions that automatically flow from the IRS's reconfirmed higher value for the Estate, other than perhaps the IRS simply failed to fully consider these credit and deductions. Otherwise, the IRS's position would be internally inconsistent, making its determination arbitrary on its face. *See Estate of Young*, 62 Fed. Cl. at 600 ("when the decision of the IRS is shown to be without rational foundation or that it is arbitrary and erroneous, the assessment will not be accorded a rebuttable presumption of correctness.") (*citing Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987)).

Thus, if the IRS failed to fully consider the state death tax credit when disallowing the claim for refund, it may reconsider this portion of the refund claim upon dismissal. Similarly, the IRS may reconsider the deductibility of interest paid pursuant to section 6166, a large portion of which resulted from the higher value placed on the Estate by the IRS.

WHEREFORE, the Estate prays that this Court accept this status report and direct the government to fulfill is obligations under the Court's prior Order and directions.

Respectfully submitted,

s/ Judith Mather

Judith A. Mather (Attorney of Record)
Tel: (202) 776-2714
Fax: (202) 776-4714
Email: jmather@dowlohnes.com
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Ste. 800
Washington, D.C. 20036

Alex. L. Bertoldo (Of Counsel)
Tel: (202) 776-2045
Fax: (202) 776-4045
Email: abertoldo@dowlohnes.com
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Ste. 800
Washington, D.C. 20036

COUNSEL FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing *Plaintiff's Status Report* to be filed with the ECF System of the United States Court of Federal Claims this 5th day of July 2006, with Notice of Electronic Filing to be made on all case participants who are ECF filing users in compliance with the service requirements of RCFC 5 and the proof of service requirements of RCFC 5.1, as provided in United States Court of Federal Claims General Order No. 42A. I am not aware of any case participants who are not ECF filing users of this Court.

s/ Judith Mather
Judith A. Mather (Attorney of Record)
Tel: (202) 776-2714
Fax: (202) 776-4714
Email: jmather@dowlohnes.com
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Ste. 800
Washington, D.C. 20036