IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No.05-1028 T

(Judge Marian Blank Horn)

ESTATE OF RANKIN M. SMITH, SR.,
SUNTRUST BANK, TAYLOR W. SMITH, and
RANKIN M. SMITH, JR., Co-Executors,

Plaintiffs

v.

THE UNITED STATES,

Defendant

REPLY BRIEF FOR THE UNITED STATES IN
SUPPORT OF ITS MOTION TO DISMISS

1. *This Court is required to determine that it has jurisdiction over the complaint before determining any substantive issues; under Flora v. United States, 362 U.S. 145 (1960), and subsequent precedent, this Court lacked jurisdiction over the complaint in this case when it was filed and jurisdiction may not be cured retroactively; thus the Court may not consider plaintiff's substantive claims.*

Plaintiff correctly contends (Plt. Opp. at 13) that it is the duty of a federal court to examine its jurisdiction over every claim before it assumes jurisdiction over the claim. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998); *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (error for the trial

court to have reached the merits without first considering whether or not it had jurisdiction over the claim). But the fact that a court has the authority to *examine* its jurisdiction does not mean that it is empowered to use self-help in order to *acquire* jurisdiction otherwise lacking, by making substantive determinations to cure jurisdictional defects. That, in a nutshell, is what plaintiff is asking this Court to do.[1]

The United States, as a sovereign, may not be sued without its consent; and the terms of its consent define the Court's jurisdiction. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Dalm*, 494 U.S. 596, 608 (1990); *United States v. Sherwood*, 312 U.S. 584, 586-87 (1941).[2] Where the United States has not consented to suit, a court lacks jurisdiction over the subject matter of the action, and dismissal is required. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. King*, 395 U.S. 1, 4 (1969). The Supreme Court has admonished:

> Congress has the constitutional authority to define the jurisdiction of the lower federal courts . . ., and, once the lines are drawn, "limits upon federal jurisdiction . . . must be neither disregarded nor evaded."

*Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (citing *Finley v. United States*, 490 U.S. 545, 548 (1989); *Owen Equip. & Erect. Co. v. Kroger*, 437 U.S. 365, 374

[1]Plaintiff asserts (at 13): "Inherent in the Court's power to make jurisdictional findings of fact is the authority to determine whether the Service properly accounted for payments and non-discretionary credits when determining whether a taxpayer has fully paid its tax liability prior to bringing suit." As will be explained below, this assertion is blatantly wrong, as it is contrary to established precedent that is binding on this Court.

[2]The claimant bears the burden of establishing waiver of sovereign immunity. *McNutt v. Gen. Motors Acceptance Corp*. 298 U.S. 178, 189 (1936).

(1978)).

In this federal estate tax case, as discussed in our opening brief (at 4-5), the scope of the jurisdictional grants of 28 U.S.C. §§ 1346 and 1491 are circumscribed by the "full payment rule" established in *Flora v. United States*, 362 U.S. 145 (1960), and refined in *Tonasket v. United States*, 218 Ct. Cl. 709, 590 F.2d 343 (1978), and *Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993). *See Rocovich v. United States,* 933 F.2d 991 (Fed. Cir. 1991) (*aff'g* 18 Cl. Ct. 418 (1989)); *Rohmann v. United States*, 25 Cl. Ct. 274, 283 (1992). That is, a jurisdictional prerequisite under 28 U.S.C. § 1491 is that the taxpayer have paid the full amount of the tax assessed by the IRS prior to filing suit.[3]

Like the plaintiff in *Rocovich*, plaintiff here is attempting to recast the "full payment rule" as requiring that only the amount of tax that the *taxpayer concedes* is due need be fully paid, when it is settled law that *Flora* requires payment of the total amount of tax *determined to be due and assessed by the IRS*. *Rocovich*, 18 Cl. Ct. at 421-22. In rejecting Rocovich's argument, this Court concluded:

---

[3]The extremely limited exceptions to this rule do not apply here:

> Exceptions to the full payment rule have been recognized only where an assessment covers divisible taxes. In *Flora*, the Supreme Court indicated that the payment of the excise tax on a single transaction would satisfy the full payment rule. Accordingly, divisible taxes such as excise and employment taxes have been considered exceptions to *Flora*. Although Congress has enacted some other exceptions to the *Flora* rule, . . . it has not done so for section 6166.

*Rocovich*, 933 F.2d at 995 (citations omitted). Congress has not carved out any exception to the full payment rule for §§ 2011 or 2053, the Internal Revenue Code provisions pursuant to which plaintiff claims additional credits and deductions.

> [T]he Claims Court is required to comply with the interpretation given to "full payment" in accordance with *Flora*. Precedent supports the proposition that full payment refers to the amount the IRS has determined is due, not merely what plaintiff concedes is due. . . . In the present case, the full amount assessed by the IRS totalled $205,712.45, before plaintiff filed suit. Plaintiff, however, had paid only $166,324.45 of this amount. Plaintiff must have paid the remaining $42,388.00 deficiency before jurisdiction can vest. To allow plaintiff to satisfy the full payment requirement by paying what he claims is due would produce an insupportable result. Furthermore, plaintiff confuses the jurisdictional and substantive issues. To challenge the IRS' determination as to whether plaintiff qualifies for the deferral under section 6166 is a substantive issue which is independent of whether or not full payment has been made.

*Id.* at 423 (citing *Green v. United States*, 618 F.2d 122, 220 Ct. Cl. 712, 713 (1989); *DiNatale v. United States*, 12 Cl. Ct. 72, 74 (1987); *Manning v. United States*, 53 A.F.T.R.2d 84-154 at 84-1585 (S.D.N.Y. 1983)).[4] *See Rohmann* at 283 (*Rocovich* "holds that a taxpayer cannot satisfy the full payment requirement for bringing a tax refund suit by paying only the amount the taxpayer asserts is due"). Here, before plaintiff filed suit, the IRS determined to be due, and assessed, an estate tax deficiency totaling $13,644,400. Of that amount, plaintiff had paid only $9,367,751.39 when the complaint was filed. As in *Rocovich*, "[p]laintiff must have paid the remaining [$4,276,648.61] deficiency before jurisdiction can vest." 18 Cl. Ct. at 423.

Plaintiff urges the Court (at 23-27) to cure the jurisdictional defect by making a

---

[4]Affirming the Claims Court, the Court of Appeals for the Federal Circuit stated (933 F.2d at 993 (emphasis added)):

> The full payment rule of *Flora* has long been applied by the Claims Court, and before that by the Court of Claims, to dismiss tax refund suits against the United States when the *assessment* has not been paid in full prior to commencement of the action.

substantive determination that plaintiff did not owe the unpaid tax in the first place because it is entitled to the claimed additional state death tax credit under I.R.C. § 2011 and additional interest deductions pursuant to I.R.C. § 2053. Aside from the truism that a court is not empowered to cure jurisdictional defects, jurisdiction must be established on the facts in existence at the time the complaint is filed. *Keene,* 508 U.S. at 207. (*See* our opening brief at 4). Thus, jurisdictional defects may not be "cured" retroactively. *Rocovich*, 933 F.2d at 993, n.4 ("Although Rocovich paid these amounts during the pendency of the suit, subsequent payment cannot cure an original jurisdictional deficiency in the complaint").[5] Moreover, like Rocovich, plaintiff "confuses the jurisdictional and substantive issues" in this case.[6] Whether the Estate's claim for additional state death tax credit and additional interest deductions should be allowed "is a substantive issue which is independent of whether or not full payment has been made" (*ibid.*) and thus this Court, lacking jurisdiction, may not consider it.

2. *The assessment at issue in this case was timely; the Estate was thus required to pay the full amount of the assessment prior to filing suit.*

---

[5]Although it is clear that this Court may not do what plaintiff asks, we note that plaintiff relies on a computation, prepared by Laura Peebles, that does not reflect the status of the Estate's account at the time the complaint was filed. (*See* Def. Ex. 3.) In addition, plaintiff cites draft computations prepared by the Department of Justice recomputation specialist. (Pl. Opposition, Ex. B, C, G, H.) These draft computations are hypothetical and none of them reflects the actual state of the Estate's account at the time the complaint in this action was filed. (*See* Def. Ex. 3.)

[6]The complaint in virtually every tax refund suit makes the substantive allegation that the assessment was erroneous.

Once jurisdiction is challenged, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. Gen. Motors Acceptance Corp*. 298 U.S. 178, 189 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997); *Rocovich*, 933 F.2d at 993.[7] Jurisdiction may not be established based upon mere averment by the plaintiff. *See McNutt*, 298 U.S. at 189. When allegations of jurisdictional facts are challenged, the alleged jurisdictional facts must be supported with competent proof. *Ibid*. Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *Id*. at 337; *see also Holland v. United States*, 57 Fed. Cl. 540, 551 (2003) (citing *Brisco v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd*, 460 U.S. 325 (1983)).

Like the plaintiff in *Rocovich*, "in an attempt to establish jurisdiction" (933 F.2d at 994), plaintiff challenges the validity of the assessment in this case. Although plaintiff concedes that the assessment was made, it alleges that it was not made on June 20, 2002 (the date shown on the Certificate of Assessments and Payments),[8] but rather on some

---

[7] When considering a motion to dismiss, the Court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *See Reynolds*, 846 F.2d at 748; *Forestry Surveys v. United States*, 44 Fed. Cl. 485, 490 (1999). Thus, the Court may look at all the evidence presented in making a determination regarding the jurisdictional facts. *RHI Holdings* at 1461. The evidentiary standard that must be met, however, is preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv*. 846 F.2d 746, 748 (Fed. Cir. 1988); *Thomas v. United States*, 56 Fed. Cl. 112, 115 (2003); *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed. Cir.), *reh'g denied* (2002).

[8]Exhibit 1, filed with our opening brief, which also reflects the unpaid estate tax deficiency of $4,276,648.61.

other date that is outside the statute of limitations on assessment. Plaintiff has raised no evidence to rebut the presumption that the assessment date (June 20, 2002) shown on the Certificate of Assessments and Payments is correct.[9] Its contentions are based only on surmise and suggestions of "irregularities" in the Certificate. As this Court explained in *Rohmann* (at 281), however:

> In *Rocovich* [933 F2d. at 994], the Court of Appeals for the Federal Circuit stated that "A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made." This rule was then adopted in *Fulgoni v. United States*, 23 Cl. Ct. 119, 125 (1991). The *Rocovich* court further noted that the Certificate of Assessments is presumptive proof of a valid assessment where the opposing party has raised no evidence to counter this proposition. *Rocovich*, 933 F.2d at 994.

Lacking any evidence to support its allegations, plaintiff contends (erroneously) that defendant was required to produce the IRS Summary Record of Assessment, Form 23C, as evidence of the assessment date. As *Rocovich* and *Rohmann* make clear, the Certificate of Assessments and Payments is presumed to be correct, and plaintiff has not overcome that presumption. Nonetheless, to lay this matter conclusively to rest, we have obtained from the IRS's Memphis "Campus" (*i.e.*, the Internal Revenue Service Center at Memphis) a copy of the RACS Report 006 ("Summary Record of Assessment") for June

---

[9]The only declarations filed with plaintiff's opposition (the declarations of Laura H. Peebles, Larry Childers, and David M. Langford) do not purport to address the issue of the timeliness of the assessment. Rather, they go to plaintiff's contentions that its refund claims should have been allowed and that, if they had been, the unpaid balance of the assessed deficiency would have been reduced–*i.e.*, *substantive* issues that plaintiff is confusing with the jurisdictional "full payment" issue.

20, 2002.[10] (Exhibit A to the attached Declaration of Darlene Broomall; *see* Broomall Dec., ¶¶ 4, 5.) That document, executed on June 20, 2002, certifies that the additional estate tax at issue in this case ($13,644,400) was assessed on June 20, 2002–a date that plaintiff concedes is within the statute of limitations on assessment (*see* Plt. Opp. at 25, asserting that the assessment statute expiration date was June 25, 2002). Thus, the assessment is a valid assessment and, under the established precedent cited herein, the Estate was required to pay the full amount of the assessed tax prior to filing suit.[11] Since it did not do so, this Court lacks jurisdiction and the complaint must be dismissed.

---

[10] I.R.C. § 6203 provides that an assessment of tax "shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." Treas. Reg. § 301.6203-1 provides that an assessment is made "by an assessment officer signing the summary record of assessment," which shall include the "identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." Prior to the transition to computerized recordkeeping, the IRS generally used the Form 23C for the summary record of assessment, but it now uses a computer generated summary record of assessment known as RACS 006. Both the Form 23C and the RACS 006 have been recognized as summary records of assessment within the meaning of IRC § 6203. See *March v. Internal Revenue Service*, 335 F.3d 1186, 1188 (10th Cir. 2003), *cert. denied*, 541 U.S. 1031 (2004); *Roberts v. Commissioner*, 329 F.3d 1224, 1228 (11th Cir. 2003); *Estate of Young v. United States*, 62 Fed. Cl. 589, 603-604 (2004). The I.R.S. Form 4340, Certificate of Assessments and Payments, has also been deemed to satisfy the requirements of I.R.C. § 6203 and Treas. Reg. § 301. 6203-1. *See March*, 335 F.3d at 1188; *Estate of Young*, 62 Fed. Cl at 604.

[11] In addition, plaintiff contends (Plt. Opp. at 27) that the balance due on the Certificate of Assessments and Payments does not reflect the estate tax due but rather is a mix of assessed tax and interest. This assertion is erroneous. (*See* Declaration of Toni McDonald, attached hereto as Def. Ex. 2, at ¶ 5, which provides in part that " [T]he Certificate of Assessments and Payments for the Estate reflects an outstanding estate tax due of $4,276,648.61. This amount does not include any accrued or assessed interest."

3. *Plaintiff's alternative contention, based on the "All Writs Act" (28 U.S.C. § 1651(a)), that the Court should issue a mandamus order directing the IRS to allow the claimed additional credit and deductions is specious and should be disregarded.*

In requesting that the Court issue a mandamus order to the IRS, plaintiff is in reality arguing that jurisdiction over the complaint in this case is granted to this Court by the All Writs Act, 28 U.S.C. § 1651(a). The argument is specious. As discussed above, a federal court's jurisdiction is defined by the terms of the consent of the United States to be sued. That consent is a waiver of sovereign immunity; and "[a]ny statute purporting to waive sovereign immunity must do so 'unequivocally.'" *Holt v. Davidson*, 2006 WL 2106961 at *2 (D.D.C. July 31, 2006) (citations omitted).

The All Writs Act "does not operate as a waiver of sovereign immunity." *Id.* at *4; *see Lloyd's Syndicate 609 v. United States*, 780 F. Supp. 998, 1001 (S.D.N.Y. 1991) (as All Writs Act does not contain a waiver of sovereign immunity, it does not supply grounds for exercising jurisdiction); *Benvenuti v. Dep't of Defense*, 587 F. Supp. 348, 352 (D.D.C. 1984). Thus, it is well established that the All Writs Act does not supply an independent basis for jurisdiction:

> The All Writs Act is not an independent basis of jurisdiction, and the petitioner must initially show that the action sought to be corrected by mandamus is within this court's statutorily defined subject matter jurisdiction.

*Baker Perkins, Inc. v. Werner & Pfleiderer Corp.*, 710 F.2d 1561, 1565 (Fed. Cir. 1983). *See Brittingham v. United States Commissioner of Internal Revenue*, 451 F.2d 315, 317 (5th Cir. 1971) ("It is settled that . . . the All Writs Act, by itself, creates no jurisdiction in

the district courts. It empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground"); *United States v. Perry*, 360 F.2d 519, 533 (6th Cir. 2004):

> The All Writs Act enables federal courts to issue such commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel.*, 434 U.S. 159, 172 . . . (1977). The Supreme Court has also stressed, however, that the All Writs Act does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 . . . (1985). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id*.

In the face of this contrary precedent, plaintiff contends (at 31): "The power to issue a writ in aid of jurisdiction is not limited to those cases in which the Court has already acquired jurisdiction; it extends to those cases over which the Court may have prospective jurisdiction." In other words, plaintiff contends that this Court may issue a mandamus order as a means of *acquiring* jurisdiction under 28 U.S.C. § 1491; and it bolsters this outlandish proposition with inapposite citations.[12] The argument is based on the following statement of the Supreme Court in *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943), as supposedly interpreted by *Margolis* and *Makari*:

> As the jurisdiction of the circuit court of appeals is exclusively appellate, its authority to issue writs of mandamus is restricted by statute to those cases in which the writ is in aid of that jurisdiction. Its authority is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.

---

[12] *Margolis v. Banner*, 599 F.2d 435 (C.C.P.A. 1979); *In re Makari*, 708 F.2d 709 (Fed. Cir. 1983); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943).

Plaintiff neglects, however, to take into account the sentence in *Roche* that immediately follows those quoted above and places them in the proper context (*ibid.*) (emphasis added):

> *Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal*.

It was just this kind of "unauthorized action" that justified the issuance of a writ by the Court of Customs and Patent Appeals in *Margolis v. Banner*, 599 F.2d 435 (C.C.P.A. 1979), relied on by plaintiff. In that case, the patent examiner imposed additional conditions on the applicant and when they were not complied with determined the application to have been abandoned. This action, which was then set in stone by the subsequent ruling of the Commissioner (a ruling over which the appellate court had no jurisdiction) amounted to a *de facto* rejection of the application; thus the Commissioner's ruling effectively prevented the applicant from appealing to the Board of Appeals, the only body from which an appeal from an adverse decision would lie to the Patent Court. In *In re Makari*, 708 F.2d 709, 711 (Fed. Cir. 1983), the Federal Circuit (quoting *Margolis* at 443) distinguished *Margolis* from the case before it on the basis that the Commissioner's ruling in *Margolis* "'clearly had the effect of frustrating this court's prospective appellate jurisdiction over an appeal from a decision of the Board of Appeals.'"[13] *See In re Tennant*,

---

[13]In *In re Newman*, 763 F.2d 407, 410 (Fed. Cir. 1985), the Federal Circuit, citing *Makari*, rejected the petitioner's reliance on *Margolis v. Banner*:

359 F.3d 523, 528 (D.C. Cir. 2004) (quoting *McClellan v. Carland*, 217 U.S. 268, 280 (1910)) :

> "[W]here a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below."
>
> A common element in *TRAC* [[14]] and the Supreme Court precedent on which it relied was that the party seeking relief in the appellate court under the All Writs Act had implicated the prospective jurisdiction of that court by instituting a proceeding in a lower court or agency subject to the jurisdiction of the appellate court.

Implicit in the rulings cited by both parties in this case is that the appellate court would have jurisdiction to order the relief requested (whether or not an appeal from the lower court had been perfected) because the lower court from which an appeal would lie had jurisdiction over the underlying claim, under the relevant jurisdictional statute. There is no jurisdiction here.[15]

---

> In *Banner*, our predecessor court issued a writ of mandamus requiring the Commissioner to vacate a ruling of abandonment because the effect of that ruling would have been to preclude an appeal to the PTO's Board of Appeals and ultimately an appeal to the Court of Customs and Patent Appeals.
>
> In the case at bar, however, Newman has pending in district court a § 145 action from which an appeal to this court will lie, whether the PTO does or does not treat his application as abandoned. Thus, the PTO's threat does not require issuance of the writ to aid or preserve our prospective appellate jurisdiction, (or the jurisdiction of the district court).

[14]*Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).

[15]Moreover, the Commissioner of Internal Revenue is not a party to this suit. Thus, even were this Court otherwise empowered to issue the writ requested (it is not), mandamus would be improper:

Although it is abundantly clear that this Court may not issue any order in this case pursuant to the All Writs Act, we have the following additional comments regarding plaintiff's request for a mandamus order:

It is well established that writs of mandamus are extraordinary remedies that must be limited to situations in which there is no other ordinary remedy. *In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) ("The writ of mandamus is an extraordinary remedy, however, and will usually be denied when the petitioner could have invoked an adequate, ordinary remedy"). *See In re School Asbestos Litigation*, 921 F.2d 1310, 13113 (3d Cir. 1990), *rehear. & rehear. in banc denied* (Jan. 9, 1991), *cert. denied*, 499 U.S. 976 (1991) (quoting *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 402 (1976) ("The Supreme Court admonishes federal appellate courts to exercise their writ power with caution. Because the remedy is so extreme, courts should invoke it only "'in extraordinary situations'"); *In re Grand Jury Subpoenas, April, 1978, at Baltimore*, 581 F.2d 1103, 1107 (4th Cir. 1978), *cert. denied sub nom. Fairchild Ind., Inc. v. Harvey*, 440 U.S. 971 (1979):

> Not only must we be persuaded that petitioner has a clear and indisputable right which the district court by its action has abridged, but we must also be persuaded that unless we act promptly to rectify the district court's error, petitioner's right will be irretrievably lost.

---

> A related point, also concerning jurisdiction, compels the same result. Mandamus is a command requiring the performance of a particular duty. In this case the command, if granted, would necessarily be directed to the Administrator of Veterans' Affairs, not to the United States. The administrator is therefore an indispensable party without whom the action cannot proceed.

*Hospoder v. United States*, 209 F.3d 427, 429 (3d Cir. 1953).

*Cf. Canadian Tarpoly Co. v. U.S. Internat'l Trade Comm.*, 640 F.2d 1322, 1325 (C.C.P.A. 1981) ("Petitioner would have us misuse the writ to circumvent normal procedures and permit a collateral attack upon the legality of the ITC's exclusionary order").

Plaintiff expends much effort attempting to portray its situation as somehow being "extraordinary." But it is actually asking this Court to "misuse the writ to circumvent normal procedures." (*Ibid.*) The statutory scheme devised by Congress for taxpayers to contest their tax liability as determined by the IRS gives the taxpayer a choice among three fora; inherent in that scheme is the option given the taxpayer to decide whether to forgo paying the asserted deficiency and litigate in the Tax Court, or to pay the assessed tax deficiency in full and litigate in the district court or the Court of Federal Claims. Regardless whether the choice is a difficult one for the taxpayer, the prescribed procedures must be followed:

> Plaintiff argues that a taxpayer who must litigate in Tax Court because he cannot pay the disputed tax deficiency is being denied his right to trial by jury and due process of law.
>
> Our Constitution allows Congress to lay and collect taxes. If a taxpayer questions the amount of taxes assessed, our tax system allows the taxpayer to choose between one of three forums to challenge the assessment. They are as follows:
> 1) United States District Court
> 2) United States Claims Court
> 3) United States Tax Court.
>
> By allowing the taxpayer these options, he is given due process of law.
>
> In the present suit, plaintiff has failed to follow the correct procedure, established by Congress, which would have allowed him to bring suit in this Court. Plaintiff has neither filed a claim for refund nor paid his alleged tax deficiency.

Accordingly, this Court has no jurisdiction to entertain a suit for the deficiency. *Martin v. Commissioner of Internal Revenue*, 753 F.2d 1358, 1360 (6th Cir. 1985) (affirming denial of request for writ of mandamus compelling Commissioner to file collection suit in district court, so that taxpayer could have trial by jury without first paying deficiency).

In this case, the Estate elected not to file a petition in the Tax Court. Therefore, in order to litigate the merits of the assessed deficiency, it was required to follow the normal procedures established by Congress–*i.e.*, pay the assessed deficiency in full, prior to filing a suit for refund in this Court or district court. That option is still available to the Estate, which may voluntarily dismiss this suit without prejudice, pay the unpaid balance of tax assessed, and file a new complaint within the statutory period for filing suit that does not expire until March 23, 2007 (*see* Plt. Opp. at 6).[16]

4. *Status Report pursuant to the Court's order of August 10, 2006.*

The Court's order of August 10, 2006, states (emphasis in original):

> The court has received the defendant's August 1 and August 8, 2006 status reports on the efforts to obtain an IRS review of the Estate's claims for additional credits for state death taxes and for interest deductions. In this regard, defendant's efforts to date are commended by the court. The defendant's next weekly status report is due on August 15, 2006. The court also is in receipt of the defendant's August 9, 2006 motion for an enlargement of time of two days, to and including August 11, 2006, within which to file its reply brief on the jurisdictional issue. Defendant's motion for an enlargement of time is **GRANTED**. However, defendant shall include in its reply brief the status of IRS review efforts, and shall

[16] The Estate may also voluntarily dismiss without prejudice and seek reconsideration of the claims by the IRS.

> file its combined reply brief and status report on or before **Tuesday, August 15, 2006**. In its August 15, 2006 filing, defendant shall discuss the implications of the IRS review for resolution of the jurisdictional issue. Defendant also shall include milestones and a proposed time line for the IRS review. Thereafter, defendant shall continue to submit detailed, weekly status reports on the IRS review, until further notice, with the next status report due on or before **Tuesday, August 22, 2006**.

As plaintiff's opposition points out, on two occasions as directed by this Court, counsel for the parties met, along with IRS employees, to discuss possible options available to the Estate. Contrary to plaintiff's representations, the views of the IRS employees expressed at those meetings were informal views of those individuals; they were not official positions of the IRS. That is because (as the Federal Circuit has made clear), as long as this suit is pending, the IRS is *not authorized* to take any action on the claims at issue in this suit:

> The same rule necessarily applies where the taxpayer elects to terminate the IRS's jurisdiction by filing a suit for refund. While the taxpayer has the right to file a refund suit if the IRS has not acted on the claim for six months, the IRS's jurisdiction over the claim necessarily terminates on the date a refund suit is filed. *See* Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000). FN18 The IRS no longer has the authority to resolve the claim, and therefore is without power to "allow" or "disallow" it.
>
> FN18 Section 5 of Executive Order 6166 is entitled "Claims By or Against the United States," and reads as follows:
>
> > As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.
>
> Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000); *see also Computervision*, 62 Fed. Cl. [299] at 326 n.26 (citing Exec. Order No. 6166, § 5).

*Computervision Corp. v. United States*, 445 F.3d 1355, 1372 (Fed. Cir. 2006). This principle is also embodied in the Internal Revenue Code, in § 7122(a).[17]

Although counsel for both parties have forwarded materials bearing on the claims to the IRS Appeals Officer who would be assigned to reconsider the claims if this suit were no longer pending, that officer cannot act while the suit is pending. Moreover, since it is undeniable that the Estate has not complied with the statutory requirements for invoking this Court's jurisdiction, we respectfully submit that this Court must dismiss the complaint (or plaintiff must voluntarily dismiss) forthwith; and that forestalling the dismissal amounts to the disregard of the limits on federal jurisdiction that the Supreme Court announced in *Keene must not* be engaged in. Since jurisdiction is lacking in this suit, neither the Department of Justice nor the Court has any authority over the IRS's resolution of the disputed issues concerning plaintiff's liability. It is not the Department of Justice but the Treasury Department to whom Congress has granted the power to examine tax returns (26 U.S.C. § 7602); and this Court is barred from issuing injunctions to the IRS that would restrain its collection of tax (26 U.S.C. § 7421(a)). This Court's ability to review IRS activity is as broad as, and no broader than, the tax jurisdiction that Congress

[17]Section 7122(a) provides:

> The Secretary [of the Treasury] may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

has conferred on the Court.

In compliance with the Court's order, we are able to report that an IRS Appeals Officer has been selected who, once the complaint is dismissed without prejudice, will have the authority to undertake a considered review of plaintiff's claims for additional credits and deductions.[18] In our view, further judicial efforts to supervise the IRS in its review would only delay plaintiff's opportunity to establish the Court's jurisdiction in the future. Plaintiff should voluntarily dismiss its lawsuit at this point, and, if it does not, the Court should enter an order of dismissal, without prejudice.

[18]We believe that this is what the Court envisioned and what defendant's counsel committed to facilitate, at the status conference held on July 6, 2006.

Respectfully submitted,

August 15. 2006 — s/Jennifer Dover Spriggs
Date

JENNIFER DOVER SPRIGGS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0840

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief
MARY M. ABATE
Assistant Chief

August 15, 2006 — s/Mary M. Abate
Date — Of Counsel (Brief)

August 15, 2006 — s/Steven I. Frahm
Date — Of Counsel (Status Report)