# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ESTATE OF RANKIN M. SMITH, SR., SUNTRUST BANK, TAYLOR W. SMITH, and RANKIN M. SMITH, JR., Co-Executors, | ) | Case No. 05-1028 T |
| Plaintiff, | ) | Judge Marian Blank Horn |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

PLAINTIFF'S *SUR*-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff (the "Estate"), by and through undersigned counsel, submits the following *Sur*-Reply to the Reply Brief for the United States in Support of Its Motion to Dismiss, filed on August 15, 2006. This *Sur*-Reply first responds to the erroneous arguments made by defendant in its reply brief and then addresses defendant's failure to comply with this Court's Order of August 10, 2006, which directed defendant to provide milestones and a time line for resolving the jurisdictional issue in this case.

A. Defendant's Reply Brief

Defendant's reply brief in support of its motion to dismiss mischaracterizes the Estate's request for jurisdictional findings of fact and/or a writ of mandamus, presents declarations that fail to rebut the Estate's arguments (and in fact provide support for the Estate), and wholly fails to respond to the Estate's argument that the mandatory state death tax credit and the deductions for payments of interest admittedly received by the Internal Revenue Service (the "IRS")

pursuant to the Estate's election under IRC § 6166[1] should have been credited to the Estate upon the denial of the Estate's claims for refund.

1. Oddly, defendant begins its brief by recognizing that the Court has the authority to "examine" its jurisdiction, but would have the Court believe that this examination is limited to reading the balance printed on the IRS's Form 4340 (the "Transcript") with blinders on. Defendant has failed even to address any of the numerous irregularities in the Transcript. Instead of addressing these facts, defendant mischaracterizes the Estate's opposition as asking the Court to exercise "self-help in order to acquire jurisdiction otherwise lacking . . . ." The Estate has made no such request.

The Estate simply seeks to have a fair accounting of its payments as of the date that the refund suit was filed. While the Estate will ultimately dispute the substance of the assessment of $13,644,400 in additional tax in later proceedings, here, for the sake of establishing jurisdiction, the Estate is simply seeking the application of the mandatory state death tax credit and the deduction for interest payments admittedly received by the Service, facts that pre-existed the Estate's filing of its refund suit. The Estate is not asking the Court to visit the substantive issues of the refund suit or to retroactively "cure" jurisdictional defects, only to disregard a patently erroneous Transcript and make jurisdictional findings of fact as they existed on the date that the refund suit was filed.

2. Defendant's reply fails entirely to address the Estate's argument that the Transcript improperly fails to take into account the mandatory state death tax credit. Plaintiff's Opposition at pp. 14-23. Defendant now appears to concede the non-discretionary nature of the

---

[1] Citations to IRC § __ are to the Internal Revenue Code, 26 U.S.C. § 1, *et seq.* (the Internal Revenue Code of 1986, as in effect on October 26, 1997, the date of death of Rankin M. Smith, Sr.).

state death tax credit as established by *Estate of Weisberger*, as well as the IRS's long-standing acquiescence in the principal that the state death tax credit is mandatory. Defendant also appears to have abandoned its two unsupportable "defenses" to allowing the credit, *i.e.*, the IRS could not determine the maximum amount of the credit unless the Estate conceded to the IRS's valuation and the Estate was required to submit substantiation for the credit within 90 days of issuance of the Notice of Deficiency. Thus, the dollar for dollar offset, essentially a payment of federal tax liability, should have been credited on the Transcript years before this suit was filed.

3. Defendant unsuccessfully attempts to shoehorn the Estate's case into the facts of *Rocovich v. United States*, 933 F.2d 991 (Fed. Cir. 1991). The estate in *Rocovich* had elected under IRC § 6166 to pay its estate tax liability in installments, but that is where the factual similarities end. In *Rocovich*, unlike the present case, "it [was] undisputed that the deferred estate tax of $42,238 was not paid at the time the suit was commenced in the Claims Court." *Id*. at 994. Unlike the Estate, Rocovich argued that the deferred payment provisions of IRC § 6166 should be treated as an exception to the full payment requirement of *Flora v. United States*, 362 U.S. 145 (1960). Rocovich argued that, under IRC § 6166, he could bring a refund suit where the Estate had not yet paid all the installments of tax but was current on the installments that had come due.[2] *Id*. at 995. The Federal Circuit ruled that no such exception to the full payment rule existed.[3] This is a fundamentally different issue from the one before the Court now, where the Estate is alleging that it paid the entire tax deficiency asserted by the Service, but that the Service

---

[2] Rocovich also argued that the assessment at issue was not properly made, and, therefore, payment was not required. The Federal Circuit stated that the Claims Court appropriately allowed the parties to submit relevant evidence to resolve that dispute and affirmed the Claims Court's jurisdictional finding that the assessment was actually made. *Id.* at 994-95.

[3] In the IRS Restructuring and Reform Act of 1998 (P.L. 105-206), Congress added IRC § 7422(j) to cure this problem, allowing estates to bring suits for refund without fully paying the estate tax so long as an election under IRC § 6166 had been made and the estate was current on its installment payments. Section 7422(j) is not applicable here.

has failed to properly account for payments, mandatory credits and deductions for interest payments that the Service admittedly received.[4]

4. Defendant completely misses the Estate's point with respect to the computations prepared by the Department of Justice recomputations specialist. The computations (Pl. Ex. B, C, G, H) show various balances of tax that can be computed for the Estate based on the facts in existence as of the date the refund suit was filed. The balances range from no tax due, where credit is applied for both the mandatory state death tax credit (for state taxes paid, claimed, and substantiated long before suit was filed) and the deduction for IRC § 6166 interest paid, to a balance of $533,455.81 where credit is applied only for the state death taxes paid.

The DOJ computations are directly relevant to the jurisdictional question of whether the Estate had fully paid the assessment at the time the suit was filed or, if an additional payment was required, the amount of that additional payment. These computations are only "hypothetical" in that they are different from the patently erroneous Transcript. Where defendant has failed to challenge the Estate's entitlement to the mandatory state death tax credit or the deduction for interest admittedly received by defendant, the computations also fly in the face of defendant's argument that the Transcript balance should be accorded a presumption of validity.

5. Where the Transcript is not credible, the Estate is entitled to the underlying source documents. While it appears that defendant has located the relevant Summary Record of Assessment, defendant has provided no proof that it was signed by an assessment officer to whom such authority had been delegated, and the Estate reserves the right to conduct discovery on this matter at a later date.

---

[4] Defendant incorrectly alleges that the Estate conceded the assessment of $13,644,400. *See* Plaintiff's Opposition, pp. 25 & 28 (discussion of "alleged" assessment).

6. Defendant also fails to adequately address one of its most arbitrary positions: the assertion that the entire Transcript balance corresponds to tax. In support, defendant produced the Declaration of an IRS Supervisory Paralegal Specialist, which summarily states: "This amount does not include any accrued or assessed interest." Govt. Reply, p. 8; Declaration of Tony A. McDonald, Govt. Ex. 2, p. 3, ¶ 5. The IRS Paralegal Specialist further states "[t]his [$388,153.22] amount represented a portion of the fourth year installment payment computed pursuant to the Estate's election to defer payment of the estate tax liability under I.R.C. § 6166." This statement, however, does not explain how the Estate's March 1, 2002 payment of $19,290,867 could have been applied as the IRS asserts: first to an assessment of $388,153.22 of interest not made until July 1, 2002, and only then to an additional tax assessment of $13,644,400 allegedly made on June 20, 2002, leaving a balance of only tax.

7. Defendant's reply supports a finding that the IRS erroneously failed to apply the deductions for IRC § 6166 interest paid. Ms. McDonald's declaration admits that the Estate timely made an election under IRC § 6166 to pay its estate tax liability in installments, and that the "first four annual payments were to be for interest only . . . ." Govt. Ex. 2, p. 2, ¶ 2. In the face of this admission and the IRS's concession on the Transcript that the payments of interest were received, defendant cannot provide any meaningful reason as to why the deductions for these interest payments were not long ago applied to the balance on the Transcript.

8. Defendant's argument that this Court cannot issue a mandamus because the IRS Commissioner is not a party to the suit is disingenuous where defendant frequently takes the position that neither the Commissioner nor the IRS are proper parties to suit. *See e.g. Gibbs v. Commissioner*, 673 F. Supp. 1088, 1090 (N.D. Al. 1987) (Commissioner not proper party to suit for an injunction); *Purk v. United States*, 747 F. Supp. 1243, 1247 (S.D. Ohio 1989) (claims

against IRS are essentially against the United States). "Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued *eo nomine*." *Castleberry v. Alcohol, Tobacco & Firearms Div.*, 530 F.2d 672, 673 n.3 (5th Cir. 1976). The Commissioner is an agent of the United States, and the IRS is a department of the United States government; therefore, the United States is the proper party to this request for relief.

9. Defendant mischaracterizes the Estate's position as asking the Court to exercise jurisdiction over the refund suit under the All Writs Act. The Estate's opposition recognized that the All Writs Act is not an independent grant of jurisdiction. But this does not end the inquiry, because the All Writs Act provides this Court with the power to issue writs of mandamus in aid of its prospective jurisdiction under IRC § 7422 and 28 U.S.C. § 1491. Defendant would limit the authority provided by the All Writs Act to issuing "writs in aid of jurisdiction previously obtained," citing Sixth Circuit precedent. Govt. Reply, p. 10. This position, however, is at odds with controlling Federal Circuit precedent that empowers a court under the All Writs Act to issue orders in aid of its prospective jurisdiction. *In re Makari*, 708 F.2d 709, 711 (Fed. Cir. 1983) (citing *Margolis v. Banner*, 599 F.2d 435, 440-41 (C.C.P.A. 1979)).

10. Defendant would have the Court believe that the court in *Margolis* had authority to act only because the Board of Patent Appeals could properly exercise jurisdiction. However, the very crux of the grievance in *Margolis* was that the Patent Examiner had taken an action contrary to law that would prevent the Board of Patent Appeals from ever acquiring jurisdiction and would likewise frustrate the jurisdiction of the U.S. Court of Customs and Patent Appeals, to which appeal from the Board of Patent Appeals would lie. Thus, the prospective jurisdiction of the U.S. Court of Customs and Patent Appeals was even one step more attenuated than in this

case where the Court has original jurisdiction to hear a refund suit. In fact the cases cited by defendant to distinguish the application of *Margolis* do not do so. Defendant's own discussion of those cases illustrates that those courts did not grant relief akin to that granted in *Margolis* because those plaintiffs had a remedy in court, and, therefore, the prospective jurisdiction of those courts was not threatened. *See e.g. In re Newman*, 763 F.2d 407, 410 (Fed. Cir. 1985) (no writ necessary to preserve appellate jurisdiction where plaintiff could pursue relief in District Court and thereafter appeal to Federal Circuit).

Defendant also misses the point by arguing that appellate courts can act to protect their prospective jurisdiction with regard to a lower court only because the lower court properly has jurisdiction. It is the nature of the appellate court that it has prospective jurisdiction over the lower court's decisions. It does not follow that the lower court cannot similarly act to protect its own prospective jurisdiction. *See* Plaintiff's Opposition, p. 32 (lower court may act where it would have original jurisdiction).

Further defendant's oft used mantra that the Estate could have gone to Tax Court and must play by the rules provided by Congress does not fit here. To the contrary , the Estate did play by the rules Congress provided for claiming a mandatory credit for state death taxes paid. As explained in the Estate's opposition, the denial of the mandatory state death tax credit will often arise after the time to petition the Tax Court has passed. Plaintiff's Opposition, p. 34.

B. <u>Response to Defendant's Status Report</u>

By Order dated July 27, 2006, the Court directed defendant to file a weekly status report with the Court "indicating where and how" the state death tax credit for payments made to Georgia by the Estate as a result of the IRS's increased value for the Estate and section 6166

interest deductions "might be discussed and potentially resolved, and indicate progress toward a final IRS answer."

In its August 8, 2006 status report, defendant reported that the IRS had identified an IRS Appeals office that "would be able to consider the Estate's claims for additional credits for state death taxes and deductions for interest." By letter of the same date, defendant's counsel advised the Estate's counsel that the IRS had assigned Gary Stewart, an Appeals Officer in Jackson, Mississippi, to consider the Estate's claims.

By Order dated August 10, 2006, the Court directed defendant to include in its August 15 report "the status of the IRS review efforts" and ordered defendant to "include milestones and a proposed time line for the IRS review." The Estate considered the Court's directive to provide milestones and a time line important, especially because, as discussed below, the Estate is fast approaching certain procedural deadlines in connection with defendant's position that the Estate must pay the entire outstanding balance on the Transcript in order to resolve the jurisdictional issue.

However, in its August 15 status report included with its reply brief, defendant not only failed to provide any milestones or time line whatsoever, but appeared to retreat from its prior representations to the Court, stating that the IRS Appeals Officer "*would* be assigned to reconsider the claims if this suit were no longer pending." Defendant's report further stated that if the Estate dismisses its complaint the Appeals Officer "will have the authority to undertake a *considered review* of plaintiff's claims for additional credits and deductions." The real question, which should be addressed in defendant's status report, is whether the IRS is agreed that upon dismissal of the complaint the Appeals Officer would have the authority to make adjustments to the Estate's tax should he determine that all or any part of the credits are appropriate. Incredibly,

defendant ends it report with the "caution" that "further judicial efforts to supervise the IRS in its review" will serve "only [to] delay plaintiff's opportunity to establish the Court's jurisdiction." Plaintiff's efforts to obtain review from the IRS, however, were met with unsupportable "90-day" rules and IRS representatives that the government later disavowed as overly pessimistic or lacking in authority. It has only been as a result of this Court's continued management of this matter that progress has been made to resolve the jurisdictional issue.

Counsel for the Estate has spoken with Mr. Stewart, the Appeals Officer, and provided him with the documents and information related to the credit for additional state death taxes resulting from the IRS's increased value for the Estate and the deductions for section 6166 interest payments. Mr. Stewart has been most helpful and the Estate's counsel understands that he is to prepare a memorandum with his conclusions with respect to the state death tax credit and section 6166 interest deductions. Assuming that Mr. Stewart concludes in his memorandum that some amount of taxes should be abated as a result of additional state death tax credits or interest deductions, and that he will have the authority to make adjustments, the Estate believes that the necessary milestones for a final resolution include:

a. consideration of Mr. Stewart's memorandum, followed by dismissal of the suit by the Estate without prejudice to prompt refiling;

b. adjustments to estate tax by Mr. Stewart based on his memorandum;

c. issuance of an updated Transcript for the Estate reflecting the adjustment of tax;

d. payment by the Estate of the amount of tax shown on the updated Transcript;

e. immediate filing by the Estate of a claim for refund of the additional taxes paid, along with a request for immediate disallowance by the IRS of the claim for refund;

f. disallowance by the IRS of the claim for refund; and

g. refiling of the complaint, including the claim for additional taxes paid.

As mentioned above, the Estate is fast approaching certain deadlines with respect to its claims. The statute of limitations on the Estate's ability to bring a refund action expires on March 23, 2007. As set forth above, in the event the Estate pays additional taxes, it will immediately file a claim for refund of those additional taxes. Under IRC § 6532, however, a taxpayer generally may not bring suit under IRC § 7422 until six months have passed from the date the claim for refund is filed. Six months prior to the March 23, 2007 expiration date is September 23, 2006.

To shorten this six month period, a taxpayer may file a request with the IRS for immediate disallowance of its claim. Although the IRS generally observes these requests and immediately disallows the claim, there does not appear to be authority requiring the IRS to do so. The IRS, however, could agree in advance that it would grant the Estate's request for immediate disallowance of its claim for refund, which would allow the Estate to promptly refile its complaint and proceed to consideration of the merits in this matter. Under the particular circumstances of this case, it would be appropriate for the IRS to agree that it would honor the Estate's request and immediately disallow its claim for refund of any additional taxes paid to resolve the jurisdictional issue.

Accordingly, we respectfully suggest that the Court direct the parties to confer with Mr. Stewart and any other necessary IRS representatives to discuss these milestones and agree upon an appropriate timeline for final resolution of the jurisdictional issue.

Respectfully submitted,

s/ Judith Mather
Judith A. Mather (Attorney of Record)
Tel: (202) 776-2714
Fax: (202) 776-4714
Email: jmather@dowlohnes.com
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Ste. 800
Washington, D.C. 20036

Alex. L. Bertoldo (Of Counsel)
Tel: (202) 776-2045
Fax: (202) 776-4045
Email: abertoldo@dowlohnes.com
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Ste. 800
Washington, D.C. 20036

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing *Plaintiff's Sur-Reply to Defendant's Reply in Support of Its Motion to Dismiss* to be filed with the ECF System of the United States Court of Federal Claims this 21st day of August 2006, with Notice of Electronic Filing to be made on all case participants who are ECF filing users in compliance with the service requirements of RCFC 5 and the proof of service requirements of RCFC 5.1, as provided in United States Court of Federal Claims General Order No. 42A. I am not aware of any case participants who are not ECF filing users of this Court.

s/ Judith Mather

Judith A. Mather (Attorney of Record)
Tel: (202) 776-2714
Fax: (202) 776-4714
Email: jmather@dowlohnes.com
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Ste. 800
Washington, D.C. 20036